**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JACOB RUDOLPH, individually and on behalf of all others similarly situated, | No. |
| Plaintiff, | |
| v. | JURY TRIAL DEMANDED |
| UNITED AIRLINES HOLDINGS, INC. and UNITED AIRLINES, INC., | |
| Defendants. | |

**CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.      NATURE OF ACTION ................................................................................1

II.     JURISDICTION AND VENUE ..............................................................3

III.    PARTIES ...................................................................................................3

IV.    FACTS .......................................................................................................5

        A.     Background ..........................................................................5

        B.     The Novel Coronavirus Shutdowns And United's Resulting Flight Cancellations .......................................................................6

        C.     United's Refusal Of Passenger Refunds On Cancelled Flights ..............................8

        D.     Consumer Complaints Regarding United's Refusal To Provide Passengers Refunds For Cancelled Flights Abound ...............................10

V.      CLASS ACTION ALLEGATIONS ......................................................11

VI.    CAUSES OF ACTION ...........................................................................15

COUNT I   VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ...............................................15

COUNT II   ALTERNATIVE COUNT FOR VIOLATIONS OF STATE CONSUMER PROTECTION ACTS ..............................................................17

COUNT III   UNJUST ENRICHMENT ...................................................................21

COUNT IV   CONVERSION ..................................................................................22

COUNT V   FRAUDULENT MISREPRESENTATION ....................................23

PRAYER FOR RELIEF ...............................................................................24

JURY DEMAND ..........................................................................................24

Plaintiff, JACOB RUDOLPH, individually and on behalf of all others similarly situated, for his Class Action Complaint against Defendants UNITED AIRLINES HOLDINGS, INC. and UNITED AIRLINES, INC. (collectively "United"), based upon personal knowledge as to his own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.    NATURE OF ACTION

1.    This Class Action Complaint comes during a time of unprecedented hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, sheltering-in-place, and efforts to 'flatten the curve' have separated loved ones from their relatives, workers from their co-workers, and further isolated those already in or at risk of further isolation. It has decimated nationwide employment. Nearly 9 in 10 Americans are now subject to a travel restriction, all to protect the health and welfare of the nation during this public health emergency.

2.    The separation caused by COVID-19 and related protective efforts has particularly impacted travel, including air travel. Opportunity and ability to travel is flat-out eliminated for many Americans, both financially and physically. A trip to the grocery store or pharmacy has been deemed a necessity and permitted; a spring break trip with family or travel for a business meeting, is not.

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. In particular, they are aware of the burden this crisis places on small businesses and larger corporations alike, as well as the drain it imposes on scarce judicial resources. Plaintiff is compelled, however, to file now to preserve his rights and those of the proposed class. To minimize the burden on the Court and to reasonably accommodate Defendants, Plaintiff will work with Defendants to reach an agreeable schedule for their response to this Class Action Complaint.

010910-11/1253003 V1

3.      As a result, United has slashed its flight schedules, resulting in thousands of flight cancellations for thousands more passengers. But such passengers face additional hardship if they booked their flights with United. To add to the difficulties such passengers already face, United refuses to issue monetary refunds to passengers with canceled flights. It does so even though all airline passengers are entitled to a refund if the airline cancels a flight, regardless of the reason the airline cancels the flight. Instead, United represents it will only rebook and/or provide travel vouchers, which expire in one year from the original ticket date.

4.      The need for monetary refunds over travel vouchers is pressing now. Travel vouchers provide little security in this public crisis, particularly where many individual Americans need money now to pay for basics like food and rent, not restrictive, temporary credits towards future travel.

5.      Reflecting the need to provide individuals with such assistance, the Coronavirus Aid, Relief, and Economic Security Act ("CARES") is set to provide a bailout to the airlines, providing them about $58 billion in aid. But despite the faucet of taxpayer money that will flow its way, United refuses to comply with the law or operate in the interests of its customers.

6.      United's actions have financially damaged Plaintiff and the Class Members. Plaintiff requested a refund for three tickets on a cancelled flight and was entitled to a refund. But like so many other passengers, United denied that request. United has engaged in unfair and deceptive conduct through its policy to refuse refunds, limiting and forcing customers into a rebooked flight or travel voucher instead of returning their money. As a result, Plaintiff brings this action because Plaintiff and the Class Members did not receive refunds for United cancelled flights, lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

-2-

## II.    JURISDICTION AND VENUE

7.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen of Minnesota, whereas Defendants are citizens of Delaware and Illinois for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Illinois, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

8.     Venue is appropriate in this District because Defendants maintain their principal places of business within the Northern District of Illinois. In addition, United's largest hub (both in terms of passengers carried and the number of departures) is Chicago O'Hare International Airport, which is within the Northern District of Illinois. And on information and belief, events and transactions causing the claims herein, including United's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

## III.    PARTIES

9.     Plaintiff Jacob Rudolph is a citizen and resident of the State of Minnesota. Plaintiff is and continues to be immediately affected by the COVID-19 pandemic. As a police

officer, local officials declared a local state of emergency for his city and his department's administration cancelled all vacations (including those involving air travel), instituted modified work schedules, and additional protective health measures. In addition, Plaintiff is prohibited from being in crowds, otherwise he will be subject to quarantine restrictions, creating substantial hardship in a police department of 11 officers. Despite requesting and being entitled to a refund for his cancelled flight, United has refused to provide Plaintiff a refund.

10.     On January 23, 2020, Plaintiff purchased three tickets for domestic travel to occur on April 4, 2020 for travel from Hilton Head Island, South Carolina (HHH) to Minneapolis/St. Paul, Minnesota (MSP), with a connecting flight in Chicago, Illinois (ORD). United ultimately cancelled his flight.

11.     Plaintiff purchased the tickets directly from United though the United.com website, paying United $1,521.45 ($904.20 in tickets, $137.40 in taxes and fees, and $479.85 in additional travel options).

12.     On March 16, 2020, Plaintiff submitted a written refund request for his tickets purchased through United's website.

13.     However, between March 31, 2020 and April 1, 2020, United separately and completely denied Plaintiff's refund request for each ticket, declaring that his ticket purchases do not qualify for a refund. Instead, on March 31, 2020, United represented in writing that Plaintiff was only allowed a rebooking or ticket credit for travel within one year of the original ticket issue date. In addition, on April 2, 2020, Plaintiff spoke with a United customer service representative, who again refused Plaintiff's refund request on the same grounds.

-4-

14.     At the time of his ticket purchase, Plaintiff understood that he would be entitled to a refund if his flight was cancelled and Plaintiff was actually deceived by United regarding his right to a refund and his options following United cancelled flights.

15.     Defendant United Airlines Holdings, Inc. is a Delaware corporation authorized to do business in Illinois as a foreign corporation with a principal place of business at 233 South Wacker Drive in Chicago, Illinois.

16.     Defendant United Airlines, Inc. is a Delaware corporation authorized to do business in Illinois as a foreign corporation with a principal place of business at 233 South Wacker Drive in Chicago, Illinois.

17.     United Airlines Holdings, Inc. is a holding company and its principal, wholly-owned subsidiary is United Airlines, Inc.

18.     Collectively, Defendants are called "United."

## IV.     FACTS

**A.     Background.**

19.     In a typical service scenario, United and its regional carriers operate over 4,900 flights a day to 362 airports across six continents, with hubs at Chicago O'Hare International Airport, Newark Liberty International Airport, Denver International Airport, George Bush Intercontinental Airport, Los Angeles International Airport, A.B. Won Pat International Airport, San Francisco International Airport, and Washington Dulles International Airport.

20.     In 2019, United operated over 1.7 million flights carrying over 162 million customers, utilizing 791 mainline aircraft for hub-to-hub travel, with the airline's regional

carriers operating another 581 regional aircraft.[2] For its services, United posted $43.2 billion in operating revenue in the year ending December 31, 2019.

21.     United sells its airline seat inventory and fares through the United's direct channels (such as United's direct-to-consumer sales website, www.united.com, and the company's mobile applications) and through traditional travel agencies and online travel agencies. With each ticket sale, United collects passenger identification information, including name, address, and telephone information.

22.     But regardless of the method by which United sells its tickets, United has engaged in unfair, deceptive, and unjust conduct: it is refusing to issue refunds to passengers for coronavirus related flight cancellations.

**B.     The Novel Coronavirus Shutdowns And United's Resulting Flight Cancellations.**

23.     On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness.  Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19. By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

24.     Due to an influx of thousands of new cases in China, on January 30, 2020, the World Heath Organization officially declared COVID-19 as a "public health emergency of international concern."

---

[2] United has contracts with regional carriers to provide regional service branded as United Express, carrying traffic that connects to the company's hubs and allows flights to smaller cities that cannot be provided economically with mainline aircraft.

25.     The U.S. State Department warned travelers to avoid traveling to China and on January 31, 2020, the U.S. federal government restricted travel from China, thus beginning travel restrictions affecting passengers ticketed on domestic and international air travel to and from the United States.

26.     By February 29, 2020, COVID-19 restrictions continued to spread across the globe. As the number of global cases rose to nearly 87,000, the U.S. federal government issued its highest-level warning, known as a "do not travel" warning, for areas in Italy and South Korea that are most affected by the virus. The government also banned all travel to Iran and barred entry to any foreign citizen who had visited Iran in the previous 14 days.

27.     On March 11, 2020, the World Health Organization declared COVID-19 a pandemic. That same day, American officials announced yet another travel ban expansion, this time blocking most visitors from continental Europe to the United States.

28.     Travel restrictions domestically began on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of the drafting of this Class Action Complaint, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico are being urged to stay home.

29.     As the restrictions expanded and virus fears mounted, United cancelled flights in the United States because of the spreading impact of the coronavirus.

30.     By March 4, 2020, United made public announcements of cuts to its April and May 2020 flight schedules.

31.     On March 10, 2020, United executives announced that the company was planning for public concern about the virus to increase before it gets better and for domestic bookings to get worse in the weeks to come.

32.     And while it initially anticipated only 10–20% in flight cancellations for April and May travel, by March 15, 2020, it changed positions and increased service cuts announced just 11 days earlier, cutting its flights by 50% for April and May. That same day, United's executives also announced to investors they expected the flight cancellations would continue and extend into the summer travel period.

**C.     United's Refusal Of Passenger Refunds On Cancelled Flights.**

33.     As United announced flight cancellations (combined with decreased domestic bookings), United took a variety of steps to make it difficult, if not impossible, for consumers to receive any refund on pandemic cancelled flights. Defendants wanted to retain the money paid to Defendants, given the severe economic losses it was incurring related to pandemic flight cancellations. It does so despite consumers' right to receive a refund for unused transportation, even for non-refundable tickets.

34.     Within seven days in March 2020, United changed its refund policy four times regarding passenger rights when flights are altered, misrepresenting to passengers on United cancelled flights that such passengers were limited to rebookings or travel vouchers. United communicated its refund policy through its website, customer service representatives, and other methods.

35.     Ostensibly consistent with passenger rights, pre-pandemic, if United cancelled a flight or changed a flight time by over two hours, passengers could receive a full refund.

36.     But on March 7, 2020, the same day the World Health Organization reported there were now over 100,000 cases of COVID-19 in 94 countries, United altered its policy to require a flight time change of at least 25 hours to receive a full refund.

37.     Yet after consumers complained, it tried out two more policies, a vague March 10 policy permitting refunds only if "departure or arrival time significantly changes," followed by a March 12 policy permitting refunds only if the flight is moved by over six hours.

38.     More recently, on March 14, the company settled on its current policy of *credits, not refunds*—even with six-hour-plus changes—until a year has passed from the original date of purchase, at which time a refund may be issued.

39.     United's policy change to deny full refunds has been described by one airline travel website editor "as possibly 'the single most damaging airline policy in recent memory.'"[3]

40.     United's efforts to refuse and deny customers refunds contradicts established transportation requirements that operate for the benefit and protection of airline consumers.

41.     As the Department of Transportation advises consumers of their rights: "If your flight is cancelled and you choose to cancel your trip as a result, you are entitled to a refund for the unused transportation—even for non-refundable tickets. You are also entitled to a refund for any bag fee that you paid, and any extras you may have purchased, such as a seat assignment."[4]

42.     Put another way, "[a] passenger is entitled to a refund if the airline cancelled a flight, regardless of the reason, and the passenger chooses not to be rebooked on a new flight on that airline."[5]

---

[3] https://bringmethenews.com/minnesota-lifestyle/united-tweaks-its-flight-refund-policy-and-customers-are-not-happy

[4] https://www.transportation.gov/individuals/aviation-consumer-protection/flight-delays-cancellations

[5] https://www.transportation.gov/individuals/aviation-consumer-protection/refunds

43.     Passengers are similarly entitled to a refund if an airline makes "a significant schedule change and/or significantly delays a flight and the passenger chooses not to travel."[6]

**D.    Consumer Complaints Regarding United's Refusal To Provide Passengers Refunds For Cancelled Flights Abound.**

44.     Consistent with Plaintiff's experience, consumer complaints regarding United's unfair, deceptive, and unjust conduct are many.  A few examples follow.

45.     For example, one passenger complained on Twitter he had three flights for his family of five canceled by United Airlines. He was refused a refund and told "no other airlines are giving refunds."[7]

46.     Another passenger's wedding in Hawaii at the end of March 2020 was cancelled due to COVID-19. She does not want a future travel credit, because she can no longer afford to travel to Hawaii.[8]

47.     An increasing number of complaints has led the U.S. Department of Transportation to disclose on April 3, 2020 that it "is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed." The Department reminded carriers, including United, of their "longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight

---

[6] *Id.*

[7] Greg Leonow (@Gregleonow), Twitter (March 21, 2020) (replying to United Airlines (@United)).

[8] Dawn Eldridge (@dawnzo8), Twitter (March 20, 2020) (replying to United Airlines (@United)).

or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier."[9]

48.      Sensitive to such consumer complaints, members of the U.S. Senate have urged United in a joint letter to provide full cash refunds to passengers with cancelled flights during the pandemic:

> We write to urge your airline to issue full cash refunds to all customers who cancel their flights during the COVID-19 crisis, and to American citizens who encounter flight cancellations while stranded in countries that implemented travel restrictions. The ongoing pandemic is placing enormous financial strain on millions of Americans, and families need cash to pay for essentials such as food, housing, and medical care. In light of this pressing need and the unprecedented bailout—to the tune of $25 billion—that the airline industry just received from Congress, we believe your company has a moral responsibility to provide real refunds, not travel vouchers, to consumers, and to support State Department efforts to repatriate any American citizens trying to come home.[10]

49.      United not only has a moral responsibility to provide real refunds, it has a legal obligation to do so, particularly in light of the substantial bailout it received from American taxpayers, including Plaintiff and the Class Members.

## V.      CLASS ACTION ALLEGATIONS

50.      Plaintiff sues under Rule 23(a), (b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Class defined as follows:

> All persons in the United States that purchased tickets for travel on United Airlines flights scheduled to operate to, from, or within the United States from March 1, 2020 to the present and who sought a refund and were refused or who seek a refund in the future.

---

[9] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf

[10] Letter to Oscar Munoz, CEO of United Airlines, Inc. from U.S. Senator Edward J. Markey, et al. (March 31, 2020).

-11-

Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during this litigation.

51.     The definition of the Class is unambiguous. Plaintiff is a member of the Class he seeks to represent. Class Members can be notified of the class action through ticketing contact information and/or address lists maintained in the usual course of business by Defendants.

52.     Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class members is unknown to Plaintiff but may be ascertained from United's records. Given the thousands of flight cancellations made by United, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

53.     United has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class.

54.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members. Some of the common legal and factual questions include:

      a.     Whether Defendants engaged in the conduct alleged;

      b.     Whether Defendants have a policy and/or procedure of denying refunds to Class Members for cancelled flights;

-12-

b.    Whether Defendants' policy and/or procedure of denying refunds to passengers on cancelled flights is unfair, deceptive, and/or misleading;

c.    Whether Illinois law applies to the nationwide class;

d.    Whether Defendants violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes;

e.    Whether Defendants violated the common law of unjust enrichment;

f.    Whether Defendants converted Plaintiff and the Class Members refunds and/or rights to refunds;

g.    Whether Defendants made fraudulent misrepresentations to Plaintiff and the Class Members, and

h.    The nature and extent of damages and other remedies to which the conduct of Defendants entitles the Class Members.

55.    Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions pale by comparison to the numerous common questions that predominate.

56.    The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendants' misconduct. In each case Defendants have cancelled flights yet denied refunds to Class Members for such cancelled flights.

57.    The Class Members have been damaged by Defendants' misconduct through United's practice of cancelling flights yet denying refunds to Class Members for such cancelled flights.

58.     Plaintiff's claims are typical of the claims of the other Class Members. Plaintiff

paid for airline tickets and was actually deceived.

59.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is

familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's

interests do not conflict with the interests of the other Class Members he seeks to represent.

Plaintiff has retained counsel competent and experienced in class action litigation and intends to

prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class

actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly

and adequately protect the interests of the Class Members.

60.     The class action device is superior to other available means for the fair and

efficient adjudication of the claims of Plaintiff and the Class Members. The relief sought per

individual members of the Class is small given the burden and expense of individual prosecution

of the potentially extensive litigation necessitated by the conduct of Defendants. It would be

virtually impossible for the Class Members to seek redress individually. Even if the Class

Members themselves could afford such individual litigation, the court system could not.

61.     Individual litigation of the legal and factual issues raised by the conduct of

Defendants would increase delay and expense to all parties and to the court system. The class

action device presents far fewer management difficulties and provides the benefits of a single,

uniform adjudication, economies of scale, and comprehensive supervision by a single court.

Given the similar nature of the Class Members' claims and the absence of material differences in

the state statutes and common laws upon which the Class Members' claims are based, a

nationwide Class will be easily managed by the Court and the parties.

-14-

## VI.    CAUSES OF ACTION

## COUNT I

## VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

62.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

63.    At all times, the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act") has prohibited consumer fraud in trade or commerce:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

64.    Pursuant to the Consumer Fraud Act, Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the sale of airline tickets to Plaintiff and the proposed Class Members and in handling refunds otherwise due to Plaintiff and the Class Members.

65.    Defendants intended that Plaintiff and the proposed Class Members rely on its material statements and omissions and unfair or deceptive acts regarding its refunds of airline tickets due to the unfair or deceptive acts or practices, including Defendants' unfair conduct, misrepresentations, and omissions of material fact regarding the ticket refunds:

a.     Defendants' representations that passengers could only obtain a voucher or rebooking for a cancelled flight;

b.     Defendants' policies of limiting class members to travel vouchers and/or rebookings in lieu of refunds was deceptive, unfair, and unlawful;

c.     Defendants committed unlawful acts by promoting, advertising, and selling airline tickets in a manner that violated passengers' rights to refunds; and

d.     Defendants committed unfair and deceptive acts by promising a refund and reneging on that promise.

66.     Defendants' unfair practice, deceptive representations, and material omissions to Plaintiff and the proposed Class Members were, and are, unfair and deceptive acts and practices.

67.     Defendants' unfair and deceptive acts and practices occurred while conducting trade or commerce.

68.     Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, obtaining and retaining significant sums of money from Plaintiff and the proposed Class Members.

69.     Plaintiff and members of the Class were actually deceived by Defendants' misrepresentations and/or omissions of material fact.

70.     As a proximate result of the Defendants' misrepresentations and/or omissions of material fact, Plaintiff and the proposed Class Members were damaged and have suffered an ascertainable loss, in an amount to be determined at trial, including but not limited to amounts for tickets on United cancelled flights.

010910-11/1253003 V1

## COUNT II

### ALTERNATIVE COUNT FOR VIOLATIONS OF
### STATE CONSUMER PROTECTION ACTS

71.    Plaintiff restates and re-alleges, and incorporates herein by reference, the

preceding paragraphs as if fully set forth herein and further alleges as follows:

72.    Count II is brought by Plaintiff, individually and on behalf of all similarly situated

residents of each of the 50 states for violations of the state consumer protection acts including:[11]

a.    the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*;

b.    the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, *et seq.*;

c.    the Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

d.    the California Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.* and 17500, *et seq.*;

e.    the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

f.    the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. § 6-1-101, *et seq.*;

g.    the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. Ann. § 42-110, *et seq.*;

h.    the Delaware Consumer Fraud Act, 6 Del. Code § 2513, *et seq.*;

i.    the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.*;

---

[11] Plaintiff also places Defendant on notice that he intends to amend his complaint to seek recovery for Class Members under the following statutes: Alabama Code § 8-19-10(e); Alaska Statutes § 45.50.535; California Civil Code § 1782; Georgia Code § 10-1-399; Indiana Code § 24-5-0.5-5(a); Maine Revised Statutes, Title 5 § 50-634(g); Massachusetts General Laws Chapter 93A, § 9(3); Texas Business & Commercial Code § 17.505; West Virginia Code § 46A-6-106(b); and Wyoming Statutes § 40-12-109.

-17-

j.      the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq*.;

k.      the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390, *et seq*.;

l.      the Hawaii Unfair Competition Law, Haw. Rev. Stat. § 480-2, *et seq*.;

m.      the Idaho Consumer Protection Act, Idaho Code. Ann. § 48-601, *et seq*.;

n.      the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1, *et seq*.;

o.      the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2, *et seq*.;

p.      the Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq*.

q.      the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623, *et seq*.;

r.      the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq*.;

s.      the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq*.;

t.      the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. Tit. 5, § 207, *et seq*.;

u.      the Maryland Consumer Protection Act, Md. Code Ann. Com. Law, § 13-301, *et seq*.;

v.      the Massachusetts Regulation of Business Practices for Consumers Protection Act, Mass. Gen Laws Ann. Ch. 93A, *et seq*.;

w.      the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq*.;

x.      the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F, *et seq*.;

y.      the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407, *et seq*.;

z.      the Nebraska Consumer Protection Act, Neb. Rev. St. § 59-1601, *et seq*.;

aa.      the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600, *et seq*.;

-18-

bb.     the New Hampshire Regulation of Business Practices For Consumer Protection, N.H. Rev. Stat. § 358-A:1, *et seq*.;

cc.     the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, *et seq*.;

dd.     the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq*.;

ee.     the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, *et seq*.;

ff.     the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq*.;

gg.     the North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15, *et seq*.;

hh.     the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq*.;

ii.     the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 § 751, *et seq*.;

jj.     the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq*.;

kk.     the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.;

ll.     the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-5.2(B), *et seq*.;

mm.     the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq*.;

nn.     the South Dakota Deceptive Trade Practices and Consumer Protection, S.D. Codified Laws § 37-24-1, *et seq*.;

oo.     the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq*.;

pp.     the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Code Ann., Bus. & Con. § 17.41, *et seq*.;

qq.     the Utah Consumer Sales Practices Act, Utah Code. Ann. § 13-11-175, *et seq*.;

rr.     the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq*.;

ss.     the Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-199, *et seq*.;

-19-

tt.    the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq.*;

uu.    the West Virginia Consumer Credit And Protection Act, W. Va. Code § 46A, *et seq.*;

vv.    the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq.*; and

ww.    the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq.*

73.    The unfair and deceptive practices engaged in by Defendants described above, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes.

74.    Defendants' acts and practices were unfair and created a likelihood of confusion or misunderstanding and misled, deceived, or damaged Plaintiff and members of the Class in connection with the sale and refunds of airline tickets. Defendants' conduct also constituted the use or employment of deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services, whether or not a person has in fact been misled, deceived, or damaged in violation of each of the above-enumerated statutes.

75.    Plaintiff, on behalf of himself and the Class Members, seek monetary damages, treble damages, and such other and further relief as set forth in each of the above-enumerated statutes.

010910-11/1253003 V1

**COUNT III**

**UNJUST ENRICHMENT**

76.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

77.     At all times relevant hereto, Defendants sold Plaintiff and the members of the Class airline tickets for travel to, from, and within the United States.

78.     United has benefitted from its unlawful acts by receiving payments for the sale of tickets on cancelled flights, though United has no right to deny Plaintiff and the Class Members refunds for tickets purchased on United cancelled flights.

79.     Plaintiff and members of the Class conferred upon Defendants a benefit in the form of money for tickets on specific flights. In paying for such flights, Plaintiff and the Class Members conferred benefits that were non-gratuitous.

80.     Defendants appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

81.     Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendants' unconscionable wrongdoing, Plaintiff and members of the Class are entitled to refunds for cancelled flights. Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and members of the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

82.     Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of their Defendants' wrongful profits, ticket revenue on United cancelled flights, and benefits in a manner established by the Court.

## COUNT IV

## CONVERSION

83.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

84.     Plaintiff and the other members of the Class have an undisputed right to immediate refunds in lieu of rebookings and/or travel vouchers for their purchase of tickets on flights cancelled by United.

85.     United wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by limiting passengers on United cancelled flights to either a rebooked flight or a travel voucher. All the while Defendants have unlawfully retained the monies Plaintiff and the Class Members paid for tickets on United cancelled flights.

86.     United deprived Plaintiff and the other members of the Class the value they paid for tickets on United cancelled flights as well as their right for a refund.

87.     Plaintiff and members of the Class have requested and/or demanded that United issue refunds for United cancelled flights.

88.     This interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they purchased tickets and, as such, United has deprived Plaintiff and members of the Class of the right to their property, in this case, the amounts paid for tickets on cancelled flights.

89.     Plaintiff and members of the Class may exercise their right to full refunds of all amounts paid for tickets on United cancelled flights.

## COUNT V

## FRAUDULENT MISREPRESENTATION

90.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

91.     Defendants intentionally misrepresented to Plaintiff and the Class Members regarding their rights to a refund on United cancelled flights, including but not limited to as reflected in United's refund policies.

92.     Defendants intentionally and actively misrepresented to Plaintiff and Class Members that passengers on United cancelled flights are limited to rebookings or travel vouchers that must be used within one year of the purchase date.

93.     Defendants' representation was false. At all times relevant, Plaintiff and members of the Class are entitled to refunds on United cancelled flights, not just rebookings or travel vouchers.

94.     Defendants' misrepresentation was made fraudulently. Defendants made its representations with knowledge that Plaintiff and Class Members were entitled to refunds on United cancelled flights and also knowing that Plaintiff and Class Members were not limited to rebookings or travel vouchers for United cancelled flights.

95.     Instead, when United made the representation regarding the rights to refunds and/or post-United flight cancellation options, United intended that Plaintiff and the Class Members would rely on it.

96.     Plaintiff and the Class Members relied on Defendants' representations.

97.     The reliance by Plaintiff and the Class Members on Defendants' representations was reasonable.

010910-11/1253003 V1

98.     Defendants' representations proximately caused damage to Plaintiff and the Class Members. By misrepresenting that passengers on United cancelled flights are limited to rebookings or travel vouchers, Defendants financially damaged Plaintiff and members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or judgment against Defendants including:

A.     Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and his counsel of record as Class Counsel;

B.     Damages in the amount of unrefunded monies paid for United airline tickets;

C.     Actual damages, statutory damages, punitive or treble damages, and such other relief as provided by the statutes cited;

D.     Pre-judgment and post-judgment interest on such monetary relief;

E.     Other appropriate injunctive relief as permitted by law or equity, including an order enjoining Defendants from retaining refunds for United cancelled flights;

F.     The costs of bringing this suit, including reasonable attorney's fees; and

G.     All other relief to which Plaintiff and members of the Class may be entitled by law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on his own behalf and on behalf of Class Members.

010910-11/1253003 V1

Dated: April 6, 2020

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By  */s/ Steve W. Berman*
    Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski
Whitney K. Siehl
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

*Attorneys for Plaintiff, individually and on behalf of
all others similarly situated.*

010910-11/1253003 V1