**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JACOB RUDOPLH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIRLINES HOLDINGS, INC., and UNITED AIRLINES, INC.,<br><br>Defendants. | Case No. 1:20-cv-02142<br><br>Hon. Thomas M. Durkin<br><br>Magistrate Judge Jeffrey T. Gilbert |
| JOHN COMPO, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNITED AIRLINES, INC., and UNITED AIRLINES HOLDINGS, INC.,<br><br>Defendants. | Case No. 1:20-cv-02166<br><br>Hon. Joan H. Lefkow<br><br>Magistrate Judge Susan E. Cox |

**JOINT UNOPPOSED MOTION**
**FOR A FINDING OF RELATEDNESS AND REASSIGNMENT**

Pursuant to Local Rule 40.4, Plaintiff John Compo ("Plaintiff" or "Compo") and Defendants United Airlines, Inc. and United Airlines Holdings, Inc. ("Defendants" or "United"), by and through their attorneys, respectfully request that the action styled *Compo v. United Airlines, Inc., et al.*, No. 1:20-cv-2166, be reassigned to the Honorable Thomas M. Durkin, who is presiding over a related class action, *Rudolph v. United Airlines Holdings, Inc.,* No. 1:20-cv-2142. *Compo* and *Rudolph* are referred to collectively herein as "the Class Actions." Copies of the *Compo* and *Rudolph* complaints are attached hereto as **Exhibits A** and **B**, respectively.

1

Counsel for Compo and United have conferred and agree that (1) the Class Actions are related under Local Rule 40.4(a); and (2) *Compo* meets the criteria for reassignment under Local Rule 40.4(b), and, therefore, should be reassigned to the Honorable Thomas M. Durkin. Counsel for Compo and United also have conferred with counsel for the *Rudolph* plaintiff, who does not oppose this motion.

## **ARGUMENT**

Pursuant to the Local Rule 40.4, reassignment is appropriate if *Compo* is "related" to *Rudolph* under Local Rule 40.4(a), and the actions meet the prerequisites for reassignment set forth in Local Rule 40.4(b): (1) all cases are pending in this Court; (2) the handling of these cases by the same Judge is likely to result in a substantial saving of judicial time and effort; (3) the earlier case has not progressed to the point where designating the later filed cases as related would be likely to substantially delay the proceedings in the earlier-filed case; and (4) the cases are susceptible to disposition in a single proceeding. L.R. 40.4(b). The Class Actions meet these requirements.

**I.      *Compo* and *Rudolph* Are "Related"**

Cases are "related" under Local Rule 40.4(a) if they "involve some of the same issues of fact or law" or "grow out of the same transaction[s] or occurrence[s]." L.R. 40.4(a).  The Rule "does not require complete identity of issues in order for cases to be considered related, rather it is enough that the two cases involve some of the same issues of fact or law[.]" *Gautreaux v. Chicago Hous. Auth.,* No. 66 C 1459, 2013 WL 5567771, at *2 (N.D. Ill. Oct. 9, 2013) (citations and quotations omitted).

The Class Actions meet this standard. Both actions arise from the same transaction or occurrence: Defendants' alleged failure to issue refunds to customers for flights cancelled due to the COVID-19 pandemic. The Class Actions also raise common questions of fact or law, because

Plaintiffs in both actions bring similar statutory and common law claims, and seek certification of overlapping classes. The Class Actions undoubtedly are related.

## II. The Class Actions Meet the Criteria for Reassignment Set Forth in Local Rule 40.4(b)

Because the Class Actions are related, *Compo* should be reassigned to Judge Durkin pursuant to Local Rule 40.4(b).

*First*, both *Compo* and *Rudolph* are pending in the Northern District of Illinois. L.R. 40.4(b)(1).

*Second*, the handling of the Class Actions by one Judge is likely to result in a substantial savings of judicial time and effort, and avoid potentially inconsistent rulings. L.R. 40.4(b)(2). Indeed, both *Compo* and *Rudolph* challenge the same alleged practice and seek relief on behalf of overlapping classes. "[T]he undoubted overlap in discovery issues between the two cases will result in substantial savings in both the Court's time and effort and the parties' time and effort . . . [and] avoid the possibility for conflicting rulings . . . ." *Peery v. Chicago Hous. Auth.*, No. 13-CV-5819, 2013 WL 5408860, at *2 (N.D. Ill. Sept. 26, 2013).

*Third*, reassignment will not delay the proceedings in either *Compo* or *Rudolph*. L.R. 40.4(b)(3). *Compo* and *Rudolph* were commenced just hours apart on April 6, 2020, and only recently did Defendants' counsel appear in *Rudolph*. (Defendants' counsel have not yet appeared in *Compo*.) Moreover, on April 24, 2020, the United States District Court for the Northern District of Illinois issued a Third Amended General Order 20-0012 regarding the Coronavirus COVID-19 Public Emergency. The Third Amended General Order extends by seventy-seven (77) days all deadlines, including the responsive pleading deadline that Federal Rule of Civil Procedure 12(a) imposes on Defendants. Defendants' responses to the *Compo* and *Rudolph* complaints thus are not

due until July 14, 2020. Reassigning *Compo* to Judge Durkin will not unduly delay either proceeding.

**Fourth**, because the Class Actions involve similar issues of fact or law, and grow out of the same occurrence, *Compo* and *Rudolph* clearly are related and susceptible to disposition in a single proceeding. L.R. 40.4(b)(4).

## CONCLUSION

WHEREFORE, the parties respectfully request that this Court enter an Order finding that the Class Actions are related, and that *Compo* should be reassigned to the Honorable Thomas M. Durkin.

Dated: May 4, 2020                                    Respectfully submitted,

| | |
|---|---|
| By: /s/ *Daniel O. Herrera*<br>    Daniel O. Herrera<br>    State Bar No. 6296731<br>    Nickolas J. Hagman<br>    State Bar No. 6317689<br>    **CAFFERTY CLOBES**<br>    **MERIWETHER**<br>    **& SPRENGEL LLP**<br>    150 S. Wacker, Suite 3000<br>    Chicago, Illinois 60606<br>    Telephone: 312-782-4880<br>    Facsimile: 318-782-4485<br>    dherrera@caffertyclobes.com<br>    nhagman@caffertyclobes.com<br><br>    Bryan L. Clobes*<br>    **CAFFERTY CLOBES**<br>    **MERIWETHER**<br>    **& SPRENGEL LLP**<br>    205 N. Monroe St.<br>    Media, Pennsylvania 19063<br>    Telephone: 215-864-2800<br>    bclobes@caffertyclobes.com | By: /s/ *Sondra A. Hemeryck*<br>    Patricia Brown Holmes<br>    Sondra A. Hemeryck<br>    Lynn D. Moffa<br>    **RILEY SAFER HOLMES &**<br>    **CANCILA LLP**<br>    70 W. Madison, Suite 2900<br>    Chicago, Illinois 60602<br>    Telephone: 312-471-8700<br>    Facsimile: 312-471-8701<br>    pholmes@rshc-law.com<br>    shemeryck@rshc-law.com<br>    lmoffa@rshc-law.com |

| Joseph G. Sauder* | |
| Joseph B. Kenney* | |
| **SAUDER SCHELKOPF LLC** | |
| 1109 Lancaster Avenue | |
| Berwyn, Pennsylvania 19312 | |
| Telephone: (610) 200-0580 | |
| jgs@sstriallawyers.com | |
| jbk@sstriallawyers.com | |
| | |
| ***Counsel for Plaintiff John Compo and the Putative Class*** | |
| | |
| *Admission pro hac vice anticipated* | |

## <u>CERTIFICATE OF SERVICE</u>

I, Daniel O. Herrera, an attorney, hereby certify that on May 4, 2020, service of the ***Joint Unopposed Motion for a Finding of Relatedness and Reassignment*** was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

*s/   Daniel O. Herrera*
Daniel O. Herrera

# EXHIBIT A

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| JOHN COMPO, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>UNITED AIRLINES, INC., and<br>UNITED AIRLINES HOLDINGS, INC.,<br><br>    Defendants. | Case No.<br><br><br><br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff John Compo ("Plaintiff"), individually and on behalf of all others similarly situated, brings this action against Defendants United Airlines, Inc. and United Airlines Holdings, Inc. (collectively, "Defendants" or "United"), by and through his attorneys, and alleges as follows based on information and belief, except as to allegations specifically pertaining to Plaintiff, which are made upon personal knowledge:

## INTRODUCTION

1.      America is at war with an invisible enemy. In late December 2019, a previously undiscovered coronavirus surreptitiously spread from animals to humans in a wet market in Wuhan, the capital of China's Hubei province, and began its march across continents, rivers and oceans, infecting countless people along the way.

2.      Unlike prior coronaviruses, such as the virus that caused Middle East Respiratory Syndrome, this virus and the disease it causes—dubbed COVID-19—spreads insidiously. Due to its potentially extensive incubation period and ability to transmit itself via asymptomatic hosts, COVID-19 has wreaked unprecedented havoc across the globe. Indeed, although the virus was not

detected in the United States until mid-January 2020, it has now infected at least 300,000 people across the country.

3.      In an effort to slow the virus's spread and avoid overwhelming medical systems, beginning in late February state and local governments across the country began issuing "stay-at-home" orders that confine residents to their homes, allowing them to leave only for necessities such as medical care and food. The American economy is in tatters, and across the country millions suddenly have found themselves wondering where they will turn for income if the crisis persists.

4.      Unsurprisingly, airline travel has come to a near standstill as Americans find themselves unable to leave their homes, let alone travel domestically or internationally, and over the last month United and its competitors have had no choice but to cut schedules and cancel thousands of flights.

5.      Unfortunately for Plaintiff and the putative Class, however, United has shifted the burden of this extraordinary crisis onto its customers, who, in some cases, paid thousands of dollars for flights the COVID-19 pandemic precludes them from taking. Specifically, and unlike its competitors, United has ignored its obligation to refund to its customers monies they paid for flights they will never take, but which they may sorely need to provide for themselves and their families during this trying time.

6.      United has engaged in unfair, unlawful and unconscionable practices in order to unjustly enrich itself at the expense of its customers, and Plaintiff brings this action in order to secure refunds for each and every similarly situated consumer United has wronged by refusing to issue full refunds for flights cancelled as a direct and proximate result of the COVID-19 crisis.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332(d)(2), the Class Action Fairness Act of 2005, because: (i) there are 100 or more Class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

8.    This Court has personal jurisdiction over Defendants because they are headquartered in this judicial district.

9.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are headquartered in this district, transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district, and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

10.    Plaintiff JOHN COMPO is a resident and citizen of Vermont.

11.    Plaintiff purchased a roundtrip ticket to visit his daughter in New Zealand through United's website. Plaintiff paid $1051.95 for the ticket for a trip beginning on April 6, 2020.

12.    On April 3, 2020, United emailed Plaintiff and informed him that his flight was canceled. On April 5, 2020, Plaintiff called United to request a refund but was informed that he would only be provided with a voucher for a future flight and that he would not receive a refund for the ticket price.

13. During his April 5, 2020 call with United, Plaintiff also spoke with a United agent whose supervisor recommended that he attempt to receive a refund through www.united.com/refunds. However, when he visited that site, there was no refund option available for his ticket.

14. To date, United has not refunded Plaintiff the price of his ticket.

15. Defendant UNITED AIRLINES, INC. is a Delaware corporation with its principal place of business located at 233 S. Wacker Dr., Chicago, Illinois 60606, and is a resident of Delaware and Illinois.

16. Defendant UNITED AIRLINES HOLDINGS, INC. is a Delaware corporation with its principal place of business located at 233 S. Wacker Dr., Chicago, Illinois 60606, and is a resident of Delaware and Illinois.

## FACTUAL ALLEGATIONS

17. The current pandemic, like most health catastrophes, began silently and unexpectedly. On December 31, 2019, Chinese authorities reported that an unknown virus had begun to spread in Wuhan, the capital of China's Hubei province. The virus, which medical authorities were unable to identify, proved capable of producing a severe respiratory infection that, in some cases, required hospitalization and caused death.

18. It was not until early January 2020 that the World Health Organization ("WHO") identified the virus as a "novel," or undiscovered, coronavirus for which humans have no known immunity. The WHO would later officially name the disease the novel coronavirus produces "coronavirus disease 2019," or COVID-19.

19.     COVID-19 initially appeared contained to China and other portions of eastern Asia. But on January 20, 2020, authorities diagnosed the first official case of COVID-19 in the United States, in a 35-year-old who had recently returned from Wuhan to the State of Washington.

20.     COVID-19 spread quickly. By January 30, 2020, there were nearly 8,000 confirmed cases of COVID-19 worldwide. In response, the WHO declared COVID-19 a "Public Health Emergency of International Concern." The next day, President Trump declared a public health emergency due to COVID-19, and the U.S. State Department banned travel between the United States and China.

21.     Unfortunately for residents of the United States, the President's actions were too little, too late; COVID-19 had already proven capable of spreading silently through communities, steadily increasing its reach before its existence is detected. On February 29, 2020—the same day the U.S. government issued a "do not travel" warning and prohibited travel between the United States and several countries with COVID-19 outbreaks—the State of Washington became the first state to declare a state of emergency due to COVID-19. It would not be the last to do so.

22.     On March 11, 2020, the WHO reclassified COVID-19 as a worldwide pandemic. That same night, President Trump made a televised address from the Oval Office during which he announced a moratorium on all flights from Europe (excluding Great Britain) for 30 days. The President extended that ban to Great Britain the very next day.

23.     The President declared a "National Emergency" on March 13, 2020 and, on March 15, the Centers for Disease Control and Prevention recommended avoiding gatherings of 50 people or more. The next day, the federal government tightened those guidelines and recommended avoiding groups of 10 people or more.

24.     Despite these efforts, by March 23, 2020 the United States had reported more confirmed cases of COVID-19 than any other county in the world, and by the end of March the governors of most states had declared states of emergency due to COVID-19. State and local officials across the country also had issued stay-at-home orders that canceled public events, banned group gatherings, and closed schools, restaurants, and retail stores and prohibited unnecessary travel for weeks, if not indefinitely.

25.     As a direct and proximate result of this unprecedented crisis, in March many airlines, including United, canceled or rescheduled flights.

26.     For example, on March 4, 2020, United announced that it would reduce scheduled flights in April in the United States and Canada by 10%, and reduce international flights by 20%.

27.     On March 17, 2020, United announced a further reduction in flights scheduled for April and May, reducing flights in the United States and Canada by 42%, and internationally by 85%. By March 20, 2020, United had cancelled approximately 95% of international flights scheduled for April.  It expects to continue to cancel flights in this manner through the summer of 2020.

28.     United, like most of its competitors, undoubtedly is suffering as a result of these untenable economic conditions. But for their part, U.S. taxpayers, through the federal government, have provided substantial assistance to the airline industry in order to insulate its most critical components—the men and women in its employ—from the economic hardship the pandemic might otherwise impose upon them. In March 2020, Congress passed the Coronavirus Aid, Relief and Economic Security Act (dubbed the "CARES Act"), which, *inter alia*, provides more than $58 billion in aid to U.S. airlines, notwithstanding the fact that over the past decade the country's largest airlines have spent roughly 96% of their free cash flow on stock buybacks.

29.     Unlike most of its competitors, however, in the face this crisis and concern from travelers, United changed its refund policies to the detriment of its customers and the benefit of its shareholders.

30.     Prior to the COVID-19 pandemic, United's uniform policy provided that when a flight was delayed by 2 hours or more, United would refund the passenger the price of the ticket. But on March 7, 2020, United unilaterally changed its refund policy: only flights delayed 25 hours or more were eligible for cash refunds, and United applied the policy retroactively to all previously booked fares.

31.     Consumers immediately began to complain, likely due in no small part to the immense financial pressure COVID-19 imposed on all Americans. So, on March 10, 2020, only days after it changed its policy, United changed course yet again. United's new policy—its third in several days—provided that it would issue cash refunds, but only on a case-by-case basis.

32.     United's illusory efforts did little to alleviate its customers' concerns since it still presented a marked shift from its original refund policy, thus, four days later, on March 14, 2020, United adopted its fourth cancelation and refund policy, which remains in effect today.

33.     The March 14th policy provides that a delay of 6 hours or more constitutes a cancellation, but instead of issuing a cash refund United will now provide passengers only a credit for the value of the ticket and any optional fees paid, such as baggage fees, meals, or seat upgrades. Customers also must use the credit within 12 months of the originally scheduled flight.

34.     Only if the canceled-ticket credit is not used within 12 months of the originally scheduled flight is the passenger eligible for a cash refund. However, the passenger is required to request a refund from United, and United will deduct a cancelation fee from the value of the credit. United also retroactively applied the March 14th policy to previously purchased tickets.

7

35.     United's March 14th policy thus provides that when *United* cancels a flight, its passengers are ineligible for a cash refund (net of cancellation fees) until more than a year has passed. In other words, rather than make its customers whole in this time of need by refunding them monies they paid for flights they will never take, United has elected to force its customers to provide it with a one-year, interest free loan, one for which United's customers ultimately will pay a fee.

36.     United describes the changes to its policies and its refusal to provide cash refunds for canceled flights as "accomodat[ing] customers by offering more options to rebook their flights."

37.     United's fourth iteration of its cancelation policy in March 2020 was not well-received. One well-known travel website described United's policy as "simply deplorable," and tantamount to "expecting customers to provide [United] a 12 month interest free loan."[1]

38.     Indeed, few consumers will be able to actually use the credit for a canceled flight, as the vast majority of airline passengers fly only once each year.[2]

39.     In response to United's new policy, a group of nine United States Senators issued a public letter castigating United for its conduct and insisting that United refund customer fares. The letter states, in pertinent part:

> We write to urge your airline to issue full cash refunds to all customers who cancel their flights during the COVID-19 crisis, and to American citizens who encounter flight cancelations while stranded in countries that implemented travel restrictions. The ongoing pandemic is placing enormous financial strain on millions of Americans, and families need cash to pay for essentials such as food, housing, and medical care. In light of this pressing need and the unprecedented bailout—to the tune of $25 billion—that the

---

[1] *See United Will Refund You in a Year for Canceled Flight*, ONE MILE AT A TIME, *www. https://onemileatatime.com/united-airlines-refund-one-year/* (last accessed Apr. 6, 20202).

[2] *See* JT Genter, *American Airlines Dropped Some Amazing Stats at its Media Day*, The Points Guy (Sept. 28, 2017), https://thepointsguy.com/2017/09/american-airlines-amazing-stats/ (noting that American Airlines stated that 87% of its passengers fly only once per year).

airline industry just received from Congress, we believe your company has a moral responsibility to provide real refunds, not travel vouchers, to consumers, and to support State Department efforts to repatriate any American citizens trying to come home.

*       *       *

It would be unacceptable to us for your company to hold onto travelers' payments for canceled flights instead of refunding them, especially in light of the $25 billion bailout that the airline industry just received from Congress.

40.     On April 3, 2020, in response to United's and other airlines' refusals to issue refunds to passengers for canceled flights, the United States Department of Transportation issued an Enforcement Notice Regarding Refunds By Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency On Air Travel" (the "Enforcement Notice").[3] The Enforcement Notice states that:

Carries have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's scheduled flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions).

41.     Moreover, the requirement to provide a "prompt refund" applies to passengers who purchased "non-refundable tickets" and applies to any optional fee charged for services a passenger is unable to use, such as baggage fees, meals, and seat upgrades.

42.     The Enforcement Notice also states that this obligation "does not cease when the flight disruptions are outside of the carrier's control (e.g., a result of government restrictions)." Instead, airlines are to offer refunds whenever passengers are not at fault for the cancellation, regardless of whether the cancellation is within or outside the carrier's control.

---

[3] Available at: https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf (last visited Apr. 6, 2020).

43.     The "longstanding obligation" regarding refunds is set forth in the Code of Federal Regulation. Specifically, consumers are entitled to refunds whenever their carrier cancels their flight. 76 Fed. Reg. 23110-01, at 23129 (Apr. 25, 2011) ("Since at least the time of an Industry Letter of July 15, 1996 . . . the Department's Aviation Enforcement Office has advised carriers that refusing to refund a non-refundable fare when a flight is canceled and the passenger wishes to cancel is a violation of 49 U.S.C. 41712 (unfair or deceptive practices) and would subject a carrier to enforcement action.").

44.     Despite the significant backlash regarding United's cancelation and refund policy, United continues to refuse to provide a cash refund to passengers for flights that United canceled.

## CLASS ALLEGATIONS

45.     Plaintiff brings this action, individually and, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and/or 23(b)(3), on behalf of a Nationwide Class defined as follows:

> All persons in the United States who purchased airline tickets through United Airlines, or for flights on United Airlines, to, from or within the States, and sought to cancel their flights, or had their flights cancelled, on or after February 29, 2020.

46.     In the alternative, Plaintiff brings this class action on behalf of the following State Subclass:

> **The Vermont Class**:
>
> All persons in Vermont who purchased airline tickets through United Airlines, or for flights on United Airlines, to, from or within the States, and sought to cancel their flights, or had their flights cancelled, on or after February 29, 2020.

Excluded from the Class are: (a) Defendants; (b) Defendants' affiliates, agents, employees, officers and directors; and (c) the judge assigned to this matter, the judge's staff, and any member of the judge's immediate family.

10

47.   **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identity of individual members of the Class are unknown at this time, such information being in the sole possession of United and obtainable by Plaintiff only through the discovery process. Plaintiff believes, and on that basis allege, that the Class consists of hundreds of thousands of people. The number of Class members can be determined based on United's records.

48.   **Commonality**: Common questions of law and fact exist as to all members of each Class. These questions predominate over questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

    a.   Whether federal regulations require United to provide passengers a refund when United cancels the passenger's flight;

    b.   Whether United committed common law fraud;

    c.   Whether United was unjustly enriched by its conduct; and

    d.   Whether United violated the Vermont Consumer Fraud Act.

49.   **Typicality**: Plaintiff has the same interest in this matter as all Class members, and Plaintiff's claims arise out of the same set of facts and conduct as the claims of all Class members. Plaintiff's and Class members' claims all arise out United's uniform conduct, statements, and unlawful, unfair, and deceptive acts and practices.

50.   **Adequacy**: Plaintiff has no interest that conflicts with the interests of the Class, and is committed to pursuing this action vigorously. Plaintiff has retained counsel competent and experienced in complex consumer class action litigation. Accordingly, Plaintiff and his counsel will fairly and adequately protect the interests of the Class.

51.   **Superiority**: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiff and members of the Class. The injury suffered by

each individual Class member is relatively small compared to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by United's conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of this case. Individualized rulings and judgments could result in inconsistent relief for similarly-situated individuals. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

52.     United has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief and corresponding declaratory relief with respect to the Class as a whole.

### COUNT I
### VIOLATIONS OF THE ILLINOIS CONSUMER
### FRAUD AND DECEPTIVE PRACTICES ACT
### (on behalf of the Nationwide Class)

53.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

54.     Illinois's Consumer Fraud and Deceptive Business Practices Act prohibits unfair or deceptive acts or practices in the conduct of any trade or commerce, including among others, "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, … whether any person has in fact been misled, deceived, or damaged thereby."  815 ILCS 505/2. The Act also prohibits suppliers from representing that their goods are of a particular quality or grade that they are not.

55.     Airline tickets are "merchandise" as defined in 815 ILCS 505/1(b). United is a

12

"person" as defined in 815 ILCS 505/1(c). Plaintiff and the other Class members are "consumers" as defined in 815 ILCS 505/1(e).

56.    In the course of United's business, it knowingly and intentionally failed to provide refunds to consumers, such as Plaintiff, when Defendant cancelled their flights.

57.    United had actual knowledge of the Enforcement Notice and consumers' right to a refund as described herein, but refused to provide refunds to consumers.

58.    Upon being contacted by consumers, such as Plaintiff, United engaged in unfair and deceptive acts and practices by stating consumers were only able to obtain a voucher and not a refund.

59.    United's unfair and deceptive practices were done to enrich its bottom line to the detriment of Plaintiff and the Class.

60.    The injuries suffered by Plaintiff and the Class are greatly outweighed by any potential countervailing benefit to consumers or to competition, nor are they injuries that Plaintiff and the Class should have reasonably avoided.

61.    Plaintiff's and the other Class members' injuries were proximately caused by Defendant's fraudulent and deceptive business practices.

62.    United's conduct in this regard was wanton, willful, outrageous, and in reckless indifference to the rights of Plaintiff and the other Class members and, as such, warrants the imposition of punitive damages.

## COUNT II
## COMMON LAW FRAUD
### (on behalf of the Nationwide Class or, alternatively, the Vermont Class)

63.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

64.     United made material misrepresentations and/or omissions concerning the ability of Plaintiff and Class members to receive refunds for cancelled flights. For example, United falsely represented that Plaintiff and the Class members were only able to receive travel vouchers United did not fully and truthfully disclose to its customers that they were entitled to receive refunds. As a result, Plaintiff and the other Class members were fraudulently induced to purchase airline tickets and were unable to pursue refunds of amounts paid for tickets.

65.     United had a duty to disclose that Plaintiff and the Class members were entitled to refunds when Plaintiff and the Class members contacted United seeking refunds.

66.     These misrepresentations and omissions were made by United with knowledge of their falsity, and with the intent that Plaintiff and Class members rely upon them.

67.     Plaintiff and Class members reasonably relied on these omissions, and suffered damages as a result.

### COUNT III
### UNJUST ENRICHMENT
**(on behalf of the Nationwide Class or, alternatively, the Vermont Class)**

68.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

69.     Plaintiff and the Class conferred a direct benefit on United by purchasing airline tickets.

70.     United knowingly and willingly accepted and enjoyed the benefits conferred on it by Plaintiff and the Class.

71.     United's retention of these benefits in unjust and inequitable due to the conduct described herein.

72.     As a direct and proximate cause of United's unjust enrichment, Plaintiff and the Class are entitled to an accounting, restitution, attorneys' fees, costs and interest.

## COUNT IV
## VIOLATIONS OF THE VERMONT CONSUMER FRAUD ACT
### (on behalf of the Vermont Class)

73.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

74.     The Vermont Consumer Fraud Act ("VCPA") makes it unlawful to commit "Unfair methods of competition in commerce, and unfair or deceptive acts or practices in commerce." 9 V.S.A. § 2453(a). The VCPA provides a private right of action for "[a]ny consumer who contracts for goods or services in reliance upon false or fraudulent representations or practices … or who sustains damages or injury as a result of any false or fraudulent representations or practices" prohibited by the VCPA. ." 9 V.S.A. § 2461(b).

75.     Plaintiff is a "consumer" as defined by 9 V.S.A. § 2451a(a).

76.     United is a "seller" of "goods" or "services" as defined by 9 V.S.A. § 2451a(b)-(c).

77.     In the course of United's business, it knowingly and intentionally failed to provide refunds to consumers, such as Plaintiff, when United cancelled their flights.

78.     United had actual knowledge of the Enforcement Notice and consumers' right to a refund as described herein, but refused to provide refunds to consumers.

79.     Upon being contacted by consumers, such as Plaintiff, United engaged in unfair and deceptive acts and practices by stating consumers were only able to obtain a voucher and not a refund.

80.     United's unfair and deceptive practices were done to enrich its bottom line to the detriment of Plaintiff and the Class.

81.     As set forth above, United's actions occurred in the conduct of trade or commerce and constitutes unfair and/or deceptive trade practices under the VCPA.

82.     Plaintiff and the Class relied upon and were deceived by United's unfair and deceptive misrepresentations of material fact in deciding to purchase airline tickets from United.

83.     Plaintiff and the Class were injured as a result of United's conduct, and suffered ascertainable monetary loss. Plaintiff and the class members and did not receive the benefit of their bargain.

84.     Plaintiff seeks an award of actual damages, treble damages, attorney's fees and costs as permitted by the VCPA. 9 V.S.A. § 2461(b).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that this Court:

A.      Determine that the claims alleged herein may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and issue an order certifying the Class(es) as defined above;

B.      Appoint Plaintiff as the representative of the Class and his counsel as Class Counsel;

C.      Award all actual, general, special, incidental, statutory, punitive, and consequential damages to which Plaintiff and Class members are entitled;

D.      Award pre-judgment and post-judgment interest on such monetary relief;

E.      Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires United to issue refunds of ticket prices to any member of the class who requests a refund;

F.      Award reasonable attorney's fees and costs; and

G.      Grant such further relief that this Court deems appropriate.

## JURY DEMAND

Plaintiff, on behalf of himself and the putative Class, demands a trial by jury on all issues so triable.

Dated: April 6, 2020                    Respectfully submitted,

*/s/* Daniel O. Herrera

Daniel O. Herrera
State Bar No. 6296731
Nickolas J. Hagman
State Bar No. 6317689
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
150 S. Wacker, Suite 3000
Chicago, Illinois 60606
Telephone: 312-782-4880
Facsimile: 318-782-4485
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

Bryan L. Clobes*
**CAFFERTY CLOBES MERIWETHER
& SPRENGEL LLP**
205 N. Monroe St.
Media, Pennsylvania 19063
Telephone: 215-864-2800
bclobes@caffertyclobes.com

Joseph G. Sauder*
Joseph B. Kenney*
**SAUDER SCHELKOPF LLC**
1109 Lancaster Avenue
Berwyn, Pennsylvania 19312
Telephone: (610) 200-0580
jgs@sstriallawyers.com
jbk@sstriallawyers.com

***Attorneys for the Plaintiff and the Putative Class***

*\*Admission pro hac vice anticipated*

17

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JACOB RUDOLPH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>  v.<br><br>UNITED AIRLINES HOLDINGS, INC. and UNITED AIRLINES, INC.,<br><br>Defendants. | No.<br><br><br>JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

**Page**

I.     NATURE OF ACTION ...................................................................................................1

II.    JURISDICTION AND VENUE .....................................................................................3

III.   PARTIES ........................................................................................................................3

IV.    FACTS ............................................................................................................................5

       A.     Background ..........................................................................................................5

       B.     The Novel Coronavirus Shutdowns And United's Resulting
              Flight Cancellations ...........................................................................................6

       C.     United's Refusal Of Passenger Refunds On Cancelled Flights ............................8

       D.     Consumer Complaints Regarding United's Refusal To Provide Passengers
              Refunds For Cancelled Flights Abound...............................................................10

V.     CLASS ACTION ALLEGATIONS .............................................................................11

VI.    CAUSES OF ACTION .................................................................................................15

COUNT I  VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE
       BUSINESS PRACTICES ACT ..........................................................................15

COUNT II  ALTERNATIVE COUNT FOR VIOLATIONS OF STATE CONSUMER
       PROTECTION ACTS ........................................................................................17

COUNT III  UNJUST ENRICHMENT.............................................................................21

COUNT IV  CONVERSION..............................................................................................22

COUNT V  FRAUDULENT MISREPRESENTATION ....................................................23

PRAYER FOR RELIEF .........................................................................................................24

JURY DEMAND ....................................................................................................................24

Plaintiff, JACOB RUDOLPH, individually and on behalf of all others similarly situated, for his Class Action Complaint against Defendants UNITED AIRLINES HOLDINGS, INC. and UNITED AIRLINES, INC. (collectively "United"), based upon personal knowledge as to his own actions and based upon the investigation of counsel regarding all other matters, complains as follows:

## I.    NATURE OF ACTION

1.    This Class Action Complaint comes during a time of unprecedented hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19.[1] Social distancing, sheltering-in-place, and efforts to 'flatten the curve' have separated loved ones from their relatives, workers from their co-workers, and further isolated those already in or at risk of further isolation. It has decimated nationwide employment. Nearly 9 in 10 Americans are now subject to a travel restriction, all to protect the health and welfare of the nation during this public health emergency.

2.    The separation caused by COVID-19 and related protective efforts has particularly impacted travel, including air travel. Opportunity and ability to travel is flat-out eliminated for many Americans, both financially and physically. A trip to the grocery store or pharmacy has been deemed a necessity and permitted; a spring break trip with family or travel for a business meeting, is not.

---

[1] Plaintiff and Plaintiff's counsel are mindful of the severe impact of the coronavirus on all aspects of society. In particular, they are aware of the burden this crisis places on small businesses and larger corporations alike, as well as the drain it imposes on scarce judicial resources. Plaintiff is compelled, however, to file now to preserve his rights and those of the proposed class. To minimize the burden on the Court and to reasonably accommodate Defendants, Plaintiff will work with Defendants to reach an agreeable schedule for their response to this Class Action Complaint.

010910-11/1253003 V1

3.    As a result, United has slashed its flight schedules, resulting in thousands of flight cancellations for thousands more passengers. But such passengers face additional hardship if they booked their flights with United. To add to the difficulties such passengers already face, United refuses to issue monetary refunds to passengers with canceled flights. It does so even though all airline passengers are entitled to a refund if the airline cancels a flight, regardless of the reason the airline cancels the flight. Instead, United represents it will only rebook and/or provide travel vouchers, which expire in one year from the original ticket date.

4.    The need for monetary refunds over travel vouchers is pressing now. Travel vouchers provide little security in this public crisis, particularly where many individual Americans need money now to pay for basics like food and rent, not restrictive, temporary credits towards future travel.

5.    Reflecting the need to provide individuals with such assistance, the Coronavirus Aid, Relief, and Economic Security Act ("CARES") is set to provide a bailout to the airlines, providing them about $58 billion in aid. But despite the faucet of taxpayer money that will flow its way, United refuses to comply with the law or operate in the interests of its customers.

6.    United's actions have financially damaged Plaintiff and the Class Members. Plaintiff requested a refund for three tickets on a cancelled flight and was entitled to a refund. But like so many other passengers, United denied that request. United has engaged in unfair and deceptive conduct through its policy to refuse refunds, limiting and forcing customers into a rebooked flight or travel voucher instead of returning their money. As a result, Plaintiff brings this action because Plaintiff and the Class Members did not receive refunds for United cancelled flights, lost the benefit of their bargain and/or suffered out-of-pocket loss, and are entitled to recover compensatory damages, trebling where permitted, and attorney's fees and costs.

-2-

## II.    JURISDICTION AND VENUE

7.    This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiff alleges that the total claims of individual Class members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Plaintiff is a citizen of Minnesota, whereas Defendants are citizens of Delaware and Illinois for purposes of diversity. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiff alleges that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Illinois, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

8.    Venue is appropriate in this District because Defendants maintain their principal places of business within the Northern District of Illinois. In addition, United's largest hub (both in terms of passengers carried and the number of departures) is Chicago O'Hare International Airport, which is within the Northern District of Illinois. And on information and belief, events and transactions causing the claims herein, including United's decision-making regarding its refund policy challenged in this lawsuit, has occurred within this judicial district.

### III.    PARTIES

9.    Plaintiff Jacob Rudolph is a citizen and resident of the State of Minnesota. Plaintiff is and continues to be immediately affected by the COVID-19 pandemic. As a police

-3-

officer, local officials declared a local state of emergency for his city and his department's
administration cancelled all vacations (including those involving air travel), instituted modified
work schedules, and additional protective health measures. In addition, Plaintiff is prohibited
from being in crowds, otherwise he will be subject to quarantine restrictions, creating substantial
hardship in a police department of 11 officers. Despite requesting and being entitled to a refund
for his cancelled flight, United has refused to provide Plaintiff a refund.

10.     On January 23, 2020, Plaintiff purchased three tickets for domestic travel to occur
on April 4, 2020 for travel from Hilton Head Island, South Carolina (HHH) to Minneapolis/St.
Paul, Minnesota (MSP), with a connecting flight in Chicago, Illinois (ORD). United ultimately
cancelled his flight.

11.     Plaintiff purchased the tickets directly from United though the United.com
website, paying United $1,521.45 ($904.20 in tickets, $137.40 in taxes and fees, and $479.85 in
additional travel options).

12.     On March 16, 2020, Plaintiff submitted a written refund request for his tickets
purchased through United's website.

13.     However, between March 31, 2020 and April 1, 2020, United separately and
completely denied Plaintiff's refund request for each ticket, declaring that his ticket purchases do
not qualify for a refund. Instead, on March 31, 2020, United represented in writing that Plaintiff
was only allowed a rebooking or ticket credit for travel within one year of the original ticket
issue date. In addition, on April 2, 2020, Plaintiff spoke with a United customer service
representative, who again refused Plaintiff's refund request on the same grounds.

-4-

14. At the time of his ticket purchase, Plaintiff understood that he would be entitled to a refund if his flight was cancelled and Plaintiff was actually deceived by United regarding his right to a refund and his options following United cancelled flights.

15. Defendant United Airlines Holdings, Inc. is a Delaware corporation authorized to do business in Illinois as a foreign corporation with a principal place of business at 233 South Wacker Drive in Chicago, Illinois.

16. Defendant United Airlines, Inc. is a Delaware corporation authorized to do business in Illinois as a foreign corporation with a principal place of business at 233 South Wacker Drive in Chicago, Illinois.

17. United Airlines Holdings, Inc. is a holding company and its principal, wholly-owned subsidiary is United Airlines, Inc.

18. Collectively, Defendants are called "United."

### IV.    FACTS

**A.    Background.**

19. In a typical service scenario, United and its regional carriers operate over 4,900 flights a day to 362 airports across six continents, with hubs at Chicago O'Hare International Airport, Newark Liberty International Airport, Denver International Airport, George Bush Intercontinental Airport, Los Angeles International Airport, A.B. Won Pat International Airport, San Francisco International Airport, and Washington Dulles International Airport.

20. In 2019, United operated over 1.7 million flights carrying over 162 million customers, utilizing 791 mainline aircraft for hub-to-hub travel, with the airline's regional

carriers operating another 581 regional aircraft.[2] For its services, United posted $43.2 billion in operating revenue in the year ending December 31, 2019.

21. United sells its airline seat inventory and fares through the United's direct channels (such as United's direct-to-consumer sales website, www.united.com, and the company's mobile applications) and through traditional travel agencies and online travel agencies. With each ticket sale, United collects passenger identification information, including name, address, and telephone information.

22. But regardless of the method by which United sells its tickets, United has engaged in unfair, deceptive, and unjust conduct: it is refusing to issue refunds to passengers for coronavirus related flight cancellations.

**B.      The Novel Coronavirus Shutdowns And United's Resulting Flight Cancellations.**

23. On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness.  Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently identified and referred to as the novel coronavirus, or COVID-19. By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

24. Due to an influx of thousands of new cases in China, on January 30, 2020, the World Heath Organization officially declared COVID-19 as a "public health emergency of international concern."

---

[2] United has contracts with regional carriers to provide regional service branded as United Express, carrying traffic that connects to the company's hubs and allows flights to smaller cities that cannot be provided economically with mainline aircraft.

25.     The U.S. State Department warned travelers to avoid traveling to China and on January 31, 2020, the U.S. federal government restricted travel from China, thus beginning travel restrictions affecting passengers ticketed on domestic and international air travel to and from the United States.

26.     By February 29, 2020, COVID-19 restrictions continued to spread across the globe. As the number of global cases rose to nearly 87,000, the U.S. federal government issued its highest-level warning, known as a "do not travel" warning, for areas in Italy and South Korea that are most affected by the virus. The government also banned all travel to Iran and barred entry to any foreign citizen who had visited Iran in the previous 14 days.

27.     On March 11, 2020, the World Health Organization declared COVID-19 a pandemic. That same day, American officials announced yet another travel ban expansion, this time blocking most visitors from continental Europe to the United States.

28.     Travel restrictions domestically began on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and as of the drafting of this Class Action Complaint, 297 million people in at least 38 states, 48 counties, 14 cities, the District of Columbia, and Puerto Rico are being urged to stay home.

29.     As the restrictions expanded and virus fears mounted, United cancelled flights in the United States because of the spreading impact of the coronavirus.

30.     By March 4, 2020, United made public announcements of cuts to its April and May 2020 flight schedules.

31.     On March 10, 2020, United executives announced that the company was planning for public concern about the virus to increase before it gets better and for domestic bookings to get worse in the weeks to come.

32.     And while it initially anticipated only 10–20% in flight cancellations for April and May travel, by March 15, 2020, it changed positions and increased service cuts announced just 11 days earlier, cutting its flights by 50% for April and May. That same day, United's executives also announced to investors they expected the flight cancellations would continue and extend into the summer travel period.

**C.      United's Refusal Of Passenger Refunds On Cancelled Flights.**

33.     As United announced flight cancellations (combined with decreased domestic bookings), United took a variety of steps to make it difficult, if not impossible, for consumers to receive any refund on pandemic cancelled flights. Defendants wanted to retain the money paid to Defendants, given the severe economic losses it was incurring related to pandemic flight cancellations. It does so despite consumers' right to receive a refund for unused transportation, even for non-refundable tickets.

34.     Within seven days in March 2020, United changed its refund policy four times regarding passenger rights when flights are altered, misrepresenting to passengers on United cancelled flights that such passengers were limited to rebookings or travel vouchers. United communicated its refund policy through its website, customer service representatives, and other methods.

35.     Ostensibly consistent with passenger rights, pre-pandemic, if United cancelled a flight or changed a flight time by over two hours, passengers could receive a full refund.

36.     But on March 7, 2020, the same day the World Health Organization reported there were now over 100,000 cases of COVID-19 in 94 countries, United altered its policy to require a flight time change of at least 25 hours to receive a full refund.

37.     Yet after consumers complained, it tried out two more policies, a vague March 10 policy permitting refunds only if "departure or arrival time significantly changes," followed by a March 12 policy permitting refunds only if the flight is moved by over six hours.

38.     More recently, on March 14, the company settled on its current policy of *credits, not refunds*—even with six-hour-plus changes—until a year has passed from the original date of purchase, at which time a refund may be issued.

39.     United's policy change to deny full refunds has been described by one airline travel website editor "as possibly 'the single most damaging airline policy in recent memory.'"[3]

40.     United's efforts to refuse and deny customers refunds contradicts established transportation requirements that operate for the benefit and protection of airline consumers.

41.     As the Department of Transportation advises consumers of their rights: "If your flight is cancelled and you choose to cancel your trip as a result, you are entitled to a refund for the unused transportation—even for non-refundable tickets. You are also entitled to a refund for any bag fee that you paid, and any extras you may have purchased, such as a seat assignment."[4]

42.     Put another way, "[a] passenger is entitled to a refund if the airline cancelled a flight, regardless of the reason, and the passenger chooses not to be rebooked on a new flight on that airline."[5]

---

[3] https://bringmethenews.com/minnesota-lifestyle/united-tweaks-its-flight-refund-policy-and-customers-are-not-happy

[4] https://www.transportation.gov/individuals/aviation-consumer-protection/flight-delays-cancellations

[5] https://www.transportation.gov/individuals/aviation-consumer-protection/refunds

-9-

43.     Passengers are similarly entitled to a refund if an airline makes "a significant schedule change and/or significantly delays a flight and the passenger chooses not to travel."[6]

**D.     Consumer Complaints Regarding United's Refusal To Provide Passengers Refunds For Cancelled Flights Abound.**

44.     Consistent with Plaintiff's experience, consumer complaints regarding United's unfair, deceptive, and unjust conduct are many.  A few examples follow.

45.     For example, one passenger complained on Twitter he had three flights for his family of five canceled by United Airlines. He was refused a refund and told "no other airlines are giving refunds."[7]

46.     Another passenger's wedding in Hawaii at the end of March 2020 was cancelled due to COVID-19. She does not want a future travel credit, because she can no longer afford to travel to Hawaii.[8]

47.     An increasing number of complaints has led the U.S. Department of Transportation to disclose on April 3, 2020 that it "is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed." The Department reminded carriers, including United, of their "longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight

---

[6] *Id.*

[7] Greg Leonow (@Gregleonow), Twitter (March 21, 2020) (replying to United Airlines (@United)).

[8] Dawn Eldridge (@dawnzo8), Twitter (March 20, 2020) (replying to United Airlines (@United)).

-10-

or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier."[9]

48.     Sensitive to such consumer complaints, members of the U.S. Senate have urged United in a joint letter to provide full cash refunds to passengers with cancelled flights during the pandemic:

> We write to urge your airline to issue full cash refunds to all customers who cancel their flights during the COVID-19 crisis, and to American citizens who encounter flight cancellations while stranded in countries that implemented travel restrictions. The ongoing pandemic is placing enormous financial strain on millions of Americans, and families need cash to pay for essentials such as food, housing, and medical care. In light of this pressing need and the unprecedented bailout—to the tune of $25 billion—that the airline industry just received from Congress, we believe your company has a moral responsibility to provide real refunds, not travel vouchers, to consumers, and to support State Department efforts to repatriate any American citizens trying to come home.[10]

49.     United not only has a moral responsibility to provide real refunds, it has a legal obligation to do so, particularly in light of the substantial bailout it received from American taxpayers, including Plaintiff and the Class Members.

## V.     CLASS ACTION ALLEGATIONS

50.     Plaintiff sues under Rule 23(a), (b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of himself and a Class defined as follows:

> All persons in the United States that purchased tickets for travel on United Airlines flights scheduled to operate to, from, or within the United States from March 1, 2020 to the present and who sought a refund and were refused or who seek a refund in the future.

---

[9] https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020_0.pdf

[10] Letter to Oscar Munoz, CEO of United Airlines, Inc. from U.S. Senator Edward J. Markey, et al. (March 31, 2020).

-11-

Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest, and Defendants' legal representatives, predecessors, successors, assigns, and employees. Further excluded from the Class is this Court and its employees. Plaintiff reserves the right to modify or amend the Class definition, as appropriate, during this litigation.

51.     The definition of the Class is unambiguous. Plaintiff is a member of the Class he seeks to represent. Class Members can be notified of the class action through ticketing contact information and/or address lists maintained in the usual course of business by Defendants.

52.     Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class members is unknown to Plaintiff but may be ascertained from United's records. Given the thousands of flight cancellations made by United, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

53.     United has acted or refused to act on grounds generally applicable to Plaintiff and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class.

54.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members. Some of the common legal and factual questions include:

      a.     Whether Defendants engaged in the conduct alleged;

      b.     Whether Defendants have a policy and/or procedure of denying refunds to Class Members for cancelled flights;

-12-

b. Whether Defendants' policy and/or procedure of denying refunds to passengers on cancelled flights is unfair, deceptive, and/or misleading;

c. Whether Illinois law applies to the nationwide class;

d. Whether Defendants violated consumer protection statutes and/or false advertising statutes and/or state deceptive business practices statutes;

e. Whether Defendants violated the common law of unjust enrichment;

f. Whether Defendants converted Plaintiff and the Class Members refunds and/or rights to refunds;

g. Whether Defendants made fraudulent misrepresentations to Plaintiff and the Class Members, and

h. The nature and extent of damages and other remedies to which the conduct of Defendants entitles the Class Members.

55. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by the Class Members. Similar or identical statutory and common law violations and deceptive business practices are involved. Individual questions pale by comparison to the numerous common questions that predominate.

56. The injuries sustained by the Class Members flow, in each instance, from a common nucleus of operative facts—Defendants' misconduct. In each case Defendants have cancelled flights yet denied refunds to Class Members for such cancelled flights.

57. The Class Members have been damaged by Defendants' misconduct through United's practice of cancelling flights yet denying refunds to Class Members for such cancelled flights.

-13-

58.     Plaintiff's claims are typical of the claims of the other Class Members. Plaintiff paid for airline tickets and was actually deceived.

59.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff is familiar with the basic facts that form the bases of the Class Members' claims. Plaintiff's interests do not conflict with the interests of the other Class Members he seeks to represent. Plaintiff has retained counsel competent and experienced in class action litigation and intends to prosecute this action vigorously. Plaintiff's counsel has successfully prosecuted complex class actions, including consumer protection class actions. Plaintiff and Plaintiff's counsel will fairly and adequately protect the interests of the Class Members.

60.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members. The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendants. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

61.     Individual litigation of the legal and factual issues raised by the conduct of Defendants would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court. Given the similar nature of the Class Members' claims and the absence of material differences in the state statutes and common laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties.

010910-11/1253003 V1

## VI.    CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT

62.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

63.    At all times, the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act") has prohibited consumer fraud in trade or commerce:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

64.    Pursuant to the Consumer Fraud Act, Defendants had a statutory duty to refrain from unfair or deceptive acts or practices in the sale of airline tickets to Plaintiff and the proposed Class Members and in handling refunds otherwise due to Plaintiff and the Class Members.

65.    Defendants intended that Plaintiff and the proposed Class Members rely on its material statements and omissions and unfair or deceptive acts regarding its refunds of airline tickets due to the unfair or deceptive acts or practices, including Defendants' unfair conduct, misrepresentations, and omissions of material fact regarding the ticket refunds:

-15-

a. Defendants' representations that passengers could only obtain a voucher or rebooking for a cancelled flight;

b. Defendants' policies of limiting class members to travel vouchers and/or rebookings in lieu of refunds was deceptive, unfair, and unlawful;

c. Defendants committed unlawful acts by promoting, advertising, and selling airline tickets in a manner that violated passengers' rights to refunds; and

d. Defendants committed unfair and deceptive acts by promising a refund and reneging on that promise.

66. Defendants' unfair practice, deceptive representations, and material omissions to Plaintiff and the proposed Class Members were, and are, unfair and deceptive acts and practices.

67. Defendants' unfair and deceptive acts and practices occurred while conducting trade or commerce.

68. Defendants engaged in wrongful conduct while at the same time obtaining, under false pretenses, obtaining and retaining significant sums of money from Plaintiff and the proposed Class Members.

69. Plaintiff and members of the Class were actually deceived by Defendants' misrepresentations and/or omissions of material fact.

70. As a proximate result of the Defendants' misrepresentations and/or omissions of material fact, Plaintiff and the proposed Class Members were damaged and have suffered an ascertainable loss, in an amount to be determined at trial, including but not limited to amounts for tickets on United cancelled flights.

-16-

## COUNT II

### ALTERNATIVE COUNT FOR VIOLATIONS OF
### STATE CONSUMER PROTECTION ACTS

71.     Plaintiff restates and re-alleges, and incorporates herein by reference, the

preceding paragraphs as if fully set forth herein and further alleges as follows:

72.     Count II is brought by Plaintiff, individually and on behalf of all similarly situated

residents of each of the 50 states for violations of the state consumer protection acts including:[11]

      a.      the Alaska Unfair Trade Practices and Consumer Protection Act, Alaska Stat. § 45.50.471, *et seq.*;

      b.      the Arizona Consumer Fraud Act, Ariz. Rev. Stat. §§ 44-1521, *et seq.*;

      c.      the Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

      d.      the California Unfair Competition Law, Bus. & Prof. Code §§ 17200, *et seq.* and 17500, *et seq.*;

      e.      the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*;

      f.      the Colorado Consumer Protection Act, Colo. Rev. Stat. Ann. § 6-1-101, *et seq.*;

      g.      the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. Ann. § 42-110, *et seq.*;

      h.      the Delaware Consumer Fraud Act, 6 Del. Code § 2513, *et seq.*;

      i.      the D.C. Consumer Protection Procedures Act, D.C. Code § 28-3901, *et seq.*;

---

[11] Plaintiff also places Defendant on notice that he intends to amend his complaint to seek recovery for Class Members under the following statutes: Alabama Code § 8-19-10(e); Alaska Statutes § 45.50.535; California Civil Code § 1782; Georgia Code § 10-1-399; Indiana Code § 24-5-0.5-5(a); Maine Revised Statutes, Title 5 § 50-634(g); Massachusetts General Laws Chapter 93A, § 9(3); Texas Business & Commercial Code § 17.505; West Virginia Code § 46A-6-106(b); and Wyoming Statutes § 40-12-109.

-17-

j.      the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq*.;

k.      the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390, *et seq*.;

l.      the Hawaii Unfair Competition Law, Haw. Rev. Stat. § 480-2, *et seq*.;

m.      the Idaho Consumer Protection Act, Idaho Code. Ann. § 48-601, *et seq*.;

n.      the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 501/1, *et seq*.;

o.      the Indiana Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-2, *et seq*.;

p.      the Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq*.

q.      the Kansas Consumer Protection Act, Kan. Stat. Ann. § 50-623, *et seq*.;

r.      the Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq*.;

s.      the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq*.;

t.      the Maine Unfair Trade Practices Act, Me. Rev. Stat. Ann. Tit. 5, § 207, *et seq*.;

u.      the Maryland Consumer Protection Act, Md. Code Ann. Com. Law, § 13-301, *et seq*.;

v.      the Massachusetts Regulation of Business Practices for Consumers Protection Act, Mass. Gen Laws Ann. Ch. 93A, *et seq*.;

w.      the Michigan Consumer Protection Act, Mich. Comp. Laws Ann. § 445.901, *et seq*.;

x.      the Minnesota Prevention of Consumer Fraud Act, Minn. Stat. § 325F, *et seq*.;

y.      the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407, *et seq*.;

z.      the Nebraska Consumer Protection Act, Neb. Rev. St. § 59-1601, *et seq*.;

aa.      the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 41.600, *et seq*.;

bb.    the New Hampshire Regulation of Business Practices For Consumer Protection, N.H. Rev. Stat. § 358-A:1, *et seq*.;

cc.    the New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8, *et seq*.;

dd.    the New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1, *et seq*.;

ee.    the New York Consumer Protection from Deceptive Acts and Practices, N.Y. Gen. Bus. Law § 349, *et seq*.;

ff.    the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen Stat. § 75-1.1, *et seq*.;

gg.    the North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15, *et seq*.;

hh.    the Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.01, *et seq*.;

ii.    the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 § 751, *et seq*.;

jj.    the Oregon Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq*.;

kk.    the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.;

ll.    the Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-5.2(B), *et seq*.;

mm.    the South Carolina Unfair Trade Practices Act, S.C. Code Ann. §§ 39-5-10, *et seq*.;

nn.    the South Dakota Deceptive Trade Practices and Consumer Protection, S.D. Codified Laws § 37-24-1, *et seq*.;

oo.    the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq*.;

pp.    the Texas Deceptive Trade Practices-Consumer Protection Act, Tex. Code Ann., Bus. & Con. § 17.41, *et seq*.;

qq.    the Utah Consumer Sales Practices Act, Utah Code. Ann. § 13-11-175, *et seq*.;

rr.    the Vermont Consumer Fraud Act, 9 V.S.A. § 2451, *et seq*.;

ss.    the Virginia Consumer Protection Act of 1977, Va. Code Ann. § 59.1-199, *et seq*.;

-19-

tt. the Washington Consumer Protection Act, Wash. Rev. Code § 19.86.010, *et seq*.;

uu. the West Virginia Consumer Credit And Protection Act, W. Va. Code § 46A, *et seq*.;

vv. the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18, *et seq*.; and

ww. the Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-101, *et seq*.

73. The unfair and deceptive practices engaged in by Defendants described above, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes.

74. Defendants' acts and practices were unfair and created a likelihood of confusion or misunderstanding and misled, deceived, or damaged Plaintiff and members of the Class in connection with the sale and refunds of airline tickets. Defendants' conduct also constituted the use or employment of deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of a material fact with intent that others rely upon the concealment, suppression, or omission in connection with the sale or advertisement of goods or services, whether or not a person has in fact been misled, deceived, or damaged in violation of each of the above-enumerated statutes.

75. Plaintiff, on behalf of himself and the Class Members, seek monetary damages, treble damages, and such other and further relief as set forth in each of the above-enumerated statutes.

010910-11/1253003 V1

## COUNT III

## UNJUST ENRICHMENT

76.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

77.     At all times relevant hereto, Defendants sold Plaintiff and the members of the Class airline tickets for travel to, from, and within the United States.

78.     United has benefitted from its unlawful acts by receiving payments for the sale of tickets on cancelled flights, though United has no right to deny Plaintiff and the Class Members refunds for tickets purchased on United cancelled flights.

79.     Plaintiff and members of the Class conferred upon Defendants a benefit in the form of money for tickets on specific flights. In paying for such flights, Plaintiff and the Class Members conferred benefits that were non-gratuitous.

80.     Defendants appreciated or knew of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

81.     Defendants accepted or retained the non-gratuitous benefits conferred by Plaintiff and members of the Class, with full knowledge and awareness that, because of Defendants' unconscionable wrongdoing, Plaintiff and members of the Class are entitled to refunds for cancelled flights. Retaining the non-gratuitous benefits conferred upon Defendants by Plaintiff and members of the Class under these circumstances made Defendants' retention of the non-gratuitous benefits unjust and inequitable.

82.     Because Defendants' retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Plaintiff and members of the Class are entitled to, and seek disgorgement and restitution of their Defendants' wrongful profits, ticket revenue on United cancelled flights, and benefits in a manner established by the Court.

-21-

## COUNT IV

## CONVERSION

83.     Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

84.     Plaintiff and the other members of the Class have an undisputed right to immediate refunds in lieu of rebookings and/or travel vouchers for their purchase of tickets on flights cancelled by United.

85.     United wrongfully exercised control over and/or intentionally interfered with the rights of Plaintiff and members of the Class by limiting passengers on United cancelled flights to either a rebooked flight or a travel voucher. All the while Defendants have unlawfully retained the monies Plaintiff and the Class Members paid for tickets on United cancelled flights.

86.     United deprived Plaintiff and the other members of the Class the value they paid for tickets on United cancelled flights as well as their right for a refund.

87.     Plaintiff and members of the Class have requested and/or demanded that United issue refunds for United cancelled flights.

88.     This interference with the rights and services for which Plaintiff and members of the Class paid damaged Plaintiff and the members of the Class, in that they purchased tickets and, as such, United has deprived Plaintiff and members of the Class of the right to their property, in this case, the amounts paid for tickets on cancelled flights.

89.     Plaintiff and members of the Class may exercise their right to full refunds of all amounts paid for tickets on United cancelled flights.

010910-11/1253003 V1

## COUNT V

### FRAUDULENT MISREPRESENTATION

90. Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein.

91. Defendants intentionally misrepresented to Plaintiff and the Class Members regarding their rights to a refund on United cancelled flights, including but not limited to as reflected in United's refund policies.

92. Defendants intentionally and actively misrepresented to Plaintiff and Class Members that passengers on United cancelled flights are limited to rebookings or travel vouchers that must be used within one year of the purchase date.

93. Defendants' representation was false. At all times relevant, Plaintiff and members of the Class are entitled to refunds on United cancelled flights, not just rebookings or travel vouchers.

94. Defendants' misrepresentation was made fraudulently. Defendants made its representations with knowledge that Plaintiff and Class Members were entitled to refunds on United cancelled flights and also knowing that Plaintiff and Class Members were not limited to rebookings or travel vouchers for United cancelled flights.

95. Instead, when United made the representation regarding the rights to refunds and/or post-United flight cancellation options, United intended that Plaintiff and the Class Members would rely on it.

96. Plaintiff and the Class Members relied on Defendants' representations.

97. The reliance by Plaintiff and the Class Members on Defendants' representations was reasonable.

-23-

98.     Defendants' representations proximately caused damage to Plaintiff and the Class
Members. By misrepresenting that passengers on United cancelled flights are limited to
rebookings or travel vouchers, Defendants financially damaged Plaintiff and members of the
Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and Class Members request that the Court enter an order or
judgment against Defendants including:

A.      Certification of the action as a Class Action under Rules 23(b)(2) and 23(b)(3) of
the Federal Rules of Civil Procedure, and appointment of Plaintiff as Class Representative and
his counsel of record as Class Counsel;

B.      Damages in the amount of unrefunded monies paid for United airline tickets;

C.      Actual damages, statutory damages, punitive or treble damages, and such other
relief as provided by the statutes cited;

D.      Pre-judgment and post-judgment interest on such monetary relief;

E.      Other appropriate injunctive relief as permitted by law or equity, including an
order enjoining Defendants from retaining refunds for United cancelled flights;

F.      The costs of bringing this suit, including reasonable attorney's fees; and

G.      All other relief to which Plaintiff and members of the Class may be entitled by
law or in equity.

## JURY DEMAND

Plaintiff demands trial by jury on his own behalf and on behalf of Class Members.

010910-11/1253003 V1

Dated: April 6, 2020

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By  */s/ Steve W. Berman*
    Steve W. Berman
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski
Whitney K. Siehl
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

*Attorneys for Plaintiff, individually and on behalf of
all others similarly situated.*