**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| MARK HANSEN and JASON BUFFER, | |
| Plaintiffs, | No. 1:20-cv-02142 |
| v. | Hon. Thomas M. Durkin |
| UNITED AIRLINES, INC., | Magistrate Judge Jeffrey T. Gilbert |
| Defendant. | |

**DEFENDANT'S AMENDED ANSWER AND ADDITIONAL DEFENSES**

Defendant United Airlines, Inc. ("United") hereby answers Plaintiffs' Consolidated Class Action Complaint ("Complaint," Dkt. 41) as follows.

## I.    NATURE OF ACTION

1.    This Consolidated Class Action Complaint comes during a time of unprecedented hardship for so many Americans, with each day bringing different news regarding the novel coronavirus COVID-19. Social distancing, sheltering-in-place, and efforts to "flatten the curve" have separated loved ones from their relatives, closed many businesses, and further isolated those already in or at risk of further isolation. It has decimated nationwide employment. Nearly 9 in 10 Americans are or have been subject to a travel restriction, all to protect the health and welfare of the nation during this public health emergency.

**ANSWER**:  United admits that the COVID-19 pandemic has been described as an unprecedented global crisis, that the U.S. Department of Health and Human Services has declared COVID-19 a "public health emergency," that the pandemic has impacted businesses and employment nationwide, that many states have issued and implemented mandatory stay-at-home orders, and that virtually all Americans are or have been subject to travel restrictions as a result of the pandemic.  United is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 1.

2.      The separation caused by COVID-19 and related protective efforts have particularly impacted travel, including air travel. Opportunity and ability to travel is flat-out eliminated for many Americans, both financially and physically. A trip to the grocery store or pharmacy has been deemed a necessity and permitted; a spring break trip with family or travel for a business meeting is not.

**ANSWER**:  United admits that the COVID-19 pandemic and related protective efforts have impacted air travel, and that virtually all Americans are or have been subject to travel restrictions as a result of the pandemic. United is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 2.

3.      As a result, airlines, including United, slashed flight schedules in an effort to reduce expenses and protect their profits, resulting in thousands of flight cancellations for thousands more passengers. But such passengers face additional hardship if they booked their flights with United. To add to the difficulties such passengers already face, United refuses to issue monetary refunds to passengers with cancelled flights. It does so even though all airline passengers are entitled to a refund if the airline cancels a flight, regardless of the reason the airline cancels the flight. Instead, United represents it will only rebook and/or provide travel vouchers.

**ANSWER**:  United admits that the COVID-19 pandemic and related protective efforts caused United to reduce its flight schedules such that flights were cancelled for thousands of passengers. United is without knowledge or information sufficient to form a belief as to the conduct of other airlines. United denies all remaining allegations contained in Paragraph 3. United further states that Plaintiffs Hansen and Buffer have been fully refunded for their flights alleged in the Complaint.

4.      The need for monetary refunds over travel vouchers remains pressing. Travel vouchers provide little security in this public crisis, particularly where many individual Americans need money now to pay for basics, such as food and rent, and not restrictive, temporary credits towards future travel.

**ANSWER**:  United is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 4 and, in particular, whether any individual passenger whose United flight was cancelled due to COVID-19 and related protective measures has a "pressing need" or preference for a monetary refund over a travel voucher.

5.     Reflecting the need to provide individuals with such assistance, the Coronavirus Aid, Relief, and Economic Security Act ("CARES") is a bailout to the airlines, providing them about $58 billion in aid, including approximately $5 billion to United alone. But despite the faucet of taxpayer money that has and will flow its way, United refuses to comply with the law, comply with its own contracts, or operate in the interests of its customers.

**ANSWER**: United is without knowledge or information sufficient to form a belief as to the truth of the allegations that the CARES Act "reflect[s] the need to provide individuals with such assistance," or "is a bailout to the airlines, providing them about $58 billion in aid[.]" United admits that it received a total of approximately $5.0 billion from the federal government through the Payroll Support Program under the CARES Act to pay the salaries and benefits of tens of thousands of United Airlines employees. United denies all remaining allegations in Paragraph 5.

6.     United's actions financially damaged Plaintiffs and the Class Members. Plaintiffs requested a refund for tickets on one or more cancelled flights and they were entitled to a refund. But like so many other passengers, United denied those requests. As a result, United breached its contracts with Plaintiffs and Class Members, limiting and forcing customers into a rebooked flight or travel voucher instead of returning their money.

**ANSWER**: United denies the allegations in Paragraph 6.

7.     As a result, Plaintiffs bring this action to enforce United's contractual obligations because Plaintiffs and Class Members did not receive refunds for United cancelled flights, lost the benefit of their bargain, and/or suffered out-of-pocket loss and are entitled to recover compensatory damages, and attorney's fees and costs.

**ANSWER**: United admits that Plaintiffs Hansen and Buffer purport to bring a breach of contract action on behalf of themselves and a putative class as defined in Paragraph 85 of the Complaint. United denies that the proposed Class or any other class could properly be certified under Federal Rule of Civil Procedure 23, and denies all remaining allegations in Paragraph 7. United further states that Plaintiffs Hansen and Buffer have been fully refunded for their flights alleged in the Complaint.

## II.    JURISDICTION, VENUE, AND CHOICE OF LAW

8.     This Court has jurisdiction over the subject matter presented by this consolidated complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the Class is a citizen of a State different from any Defendant, and in which the matter in controversy exceeds in the aggregate sum of $5,000,000.00, exclusive of interest and costs. Plaintiffs allege that the total claims of individual Class Members in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. §§ 1332(d)(2) and (6). Defendants are citizens of Delaware and Illinois for purposes of diversity, whereas Plaintiffs are citizens of different states from Defendants. Therefore, diversity of citizenship exists under CAFA as required by 28 U.S.C. § 1332(d)(2)(A). Furthermore, Plaintiffs allege that more than two-thirds of all of the members of the proposed Class in the aggregate are citizens of a state other than Illinois, where this action is originally being filed, and that the total number of members of the proposed Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

**ANSWER**:  United admits this Court has jurisdiction over this action and that the action involves citizens of different states. United denies that the Class defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23.

9.     Venue is appropriate in this District because Defendants maintain their principal places of business, transact business, and are subject to personal jurisdiction in the Northern District of Illinois.

**ANSWER**:  United admits that venue is appropriate in this District.

10.     In addition, United's largest hub (both in terms of passengers carried and the number of departures) is Chicago O'Hare International Airport, which is also located within the Northern District of Illinois. And on information and belief, events and transactions causing the claims herein, including United's decision-making regarding its refund policy challenged in this lawsuit, occurred within this judicial district.

**ANSWER**:  United admits that its "largest hub," as defined by Plaintiffs in Paragraph 10, is Chicago O'Hare International Airport, which is located within the Northern District of Illinois. United further admits that its headquarters are located in Chicago, Illinois, which is within the Northern District of Illinois. United denies all remaining allegations in Paragraph 10.

11.     Furthermore, for those Plaintiffs and Class Members who purchased a ticket on United.com, Plaintiffs, the Class Members, and Defendants agreed to a choice of law provision. See Exhibit A, https://www.united.com/ual/en/us/fly/legal.html (last visited July 29, 2020) ("This Agreement is governed by the laws of the State of Illinois, U.S.A., without reference to conflicts of laws provisions. User consents to the exclusive jurisdiction and venue of courts in Cook County, Illinois, U.S.A., in all disputes arising out of or relating to the use of this website.").

**ANSWER**:  United admits that its Terms, Conditions and Legal Notices for united.com, United's website, are located at the URL provided in Paragraph 11, and that those Terms, Conditions and Legal Notices include the choice of law provision quoted in Paragraph 11. United denies that this choice of law provision applies to the breach of contract claim asserted here, and denies all remaining allegations in Paragraph 11.

### III.     PARTIES

#### A.     Plaintiff Jacob Rudolph

12.     Plaintiff Jacob Rudolph is a citizen and resident of the State of Minnesota.

**ANSWER**:  Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Mr. Rudolph was entirely dismissed from this case, and thus no response is required to the allegations in Paragraph 12.

13.     On January 23, 2020, Plaintiff Rudolph purchased three tickets for domestic travel to occur on April 4, 2020, for travel to and from Hilton Head Island, South Carolina (HHH) to Minneapolis/St. Paul, Minnesota (MSP), with connecting flights in Chicago, Illinois (ORD).

**ANSWER**:  Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Mr. Rudolph was entirely dismissed from this case, and thus no response is required to the allegations in Paragraph 13.

14.     Plaintiff paid $1,521.45 for the April 4, 2020 tickets.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Mr. Rudolph was entirely dismissed from this case, and thus no response is required to the allegations in Paragraph 14.

15. On March 16, 2020, due to concerns with the COVID-19 pandemic, Plaintiff Rudolph submitted a written refund request for his tickets purchased through United's website.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Mr. Rudolph was entirely dismissed from this case, and thus no response is required to the allegations in Paragraph 15.

16. However, between March 31, 2020 and April 1, 2020, United separately and completely denied Plaintiff Rudolph's refund request for each ticket, declaring that his ticket purchase does not qualify for a refund. Instead, on March 31, 2020, United represented in writing that Plaintiff Rudolph was only allowed a rebooking or ticket credit for travel within one year of the original ticket issue date. In addition, on April 2, 2020, Plaintiff Rudolph spoke with a United customer service representative, who again refused Plaintiff Rudolph's refund request on the same grounds.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Mr. Rudolph was entirely dismissed from this case, and thus no response is required to the allegations in Paragraph 16.

17. One or more segments of Plaintiff Rudolph's itinerary never occurred because the flights were cancelled by United.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Mr. Rudolph was entirely dismissed from this case, and thus no response is required to the allegations in Paragraph 17.

18. To date, United has not refunded Plaintiff Rudolph the price of his tickets and so Plaintiff Rudolph seeks to enforce his right to a refund.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Mr. Rudolph was entirely dismissed from this case, and thus no response is required to the allegations in Paragraph 18.

19.     Furthermore, at no time did United advise Plaintiff Rudolph that the U.S. Department of Transportation on April 3, 2020 mandated prompt refunds.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Mr. Rudolph was entirely dismissed from this case, and thus no response is required to the allegations in Paragraph 19.

20.     At the time of his ticket purchase, Plaintiff Rudolph understood that he would be entitled to a refund if his flight was cancelled.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Mr. Rudolph was entirely dismissed from this case, and thus no response is required to the allegations in Paragraph 20.

**B.     Plaintiff Mark Hansen**

21.     Plaintiff Mark Hansen is a citizen and resident of the State of Washington.

**ANSWER**: United is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 21.

22.     On or about March 4, 2020, Plaintiff Hansen purchased four roundtrip tickets for travel from Vancouver, British Columbia to Liberia, Costa Rica, connecting via Houston, through United's agent Expedia. Plaintiff Hansen paid $1,483.40 for the tickets for a trip beginning on March 28, 2020.

**ANSWER**: United denies that Expedia is United's "agent." United admits the remaining allegations in Paragraph 22.

23.     United changed Plaintiff Hansen's itinerary several times, cancelling flight legs. Initially, United cancelled Plaintiff Hansen's flight legs from Houston to Costa Rica, which would have left Plaintiff Hansen and his family stranded in Houston. Then, United cancelled the flight to Houston, re-routing him to Houston via LAX. United's cancellations whittled Plaintiff Hansen's trip down to the only flight left on the itinerary and then, two days before the scheduled departure date,

United informed him that his whole itinerary was cancelled and issued him a flight credit.

**ANSWER**: United admits that Plaintiff Hansen's itinerary was changed several times, including the cancellation of his flight from Houston to Costa Rica, the addition of a stopover in Los Angeles, and the ultimate cancellation of his whole itinerary. However, pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Mr. Hansen's claim relating to his flights to and from Costa Rica was dismissed from this case. United admits that it initially issued Hansen a flight credit but states that Hansen has since been fully refunded. United denies all remaining allegations contained in Paragraph 23.

24. Following United's cancellations, Plaintiff Hansen contacted not only United but also United's agent, Expedia. On or about March 25, 2020, Plaintiff Hansen called United to request a refund but United's agent told him to contact Expedia. As directed, he reached out to Expedia in his efforts to obtain a refund, but to no avail.

**ANSWER**: United is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24 relating to Hansen's communications with Expedia. United denies the remaining allegations in Paragraph 24.

25. United has not refunded Plaintiff Hansen the price of his ticket and so Plaintiff Hansen seeks to enforce his right to a refund.

**ANSWER**: United admits that Plaintiff Hansen purports to bring this action seeking a refund but denies that Plaintiff Hansen had a "right to a refund" at the time the Complaint was filed and denies that United has not refunded Plaintiff Hansen the price of his ticket.

26. Furthermore, at no time did United advise Plaintiff Hansen that the U.S. Department of Transportation on April 3, 2020 mandated prompt refunds.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), the U.S. Department of Transportation Notices and Regulation on which Plaintiffs rely "do not factor into the evaluation of Plaintiffs' contract claims," and thus no response is required

to the allegations in Paragraph 26. To the extent a response is required, United denies the characterization of the U.S. Department of Transportation's April 3, 2020 Notice and denies the implicit allegation that United had a duty to "advise" Plaintiff Hansen of that Notice.

27.     At the time of his ticket purchase, Plaintiff Hansen understood that he would be entitled to a refund if his flight was cancelled.

**ANSWER**:  United is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 concerning what Plaintiff Hansen "understood," denies that Plaintiff Hansen was entitled to a refund if his flight was cancelled and denies the remaining allegations in Paragraph 27.

**C.     Plaintiff Jason Buffer**

28.     Plaintiff Jason Buffer is currently a citizen and resident of Hawaii but was a citizen and resident of New York State at the time of his relevant purchase of tickets from United.

**ANSWER**:  United is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28.

29.     On or about August 22, 2019, Plaintiff Buffer purchased two roundtrip tickets for travel from New York, New York to Athens, Greece, via Frankfurt, Germany, through United's website. Plaintiff Buffer paid $668.00 for the tickets for a trip beginning on March 19, 2020.

**ANSWER**:  United admits that on or about August 22, 2019, Plaintiff Buffer purchased through United's website two roundtrip tickets for travel from New York, New York to Athens, Greece, via Frankfurt, Germany beginning on March 19, 2020 and scheduled to return on March 27, 2020. United denies that Plaintiff Buffer paid $668.00 for the tickets and further states that according to United's records, he paid $622.86 for the tickets.

30.     Approximately four days prior to his scheduled departure, Plaintiff Buffer received a call from a United customer service agent, informing him that at least one leg of his trip was cancelled, offering him only two choices: (1) a rebooking, or (2) a cancellation of the rest of the trip with flight credits. He rejected the flight credits and said that he wanted a refund, but United would not provide a refund.

**ANSWER**: United admits that at least one leg of Plaintiff Buffer's trip was cancelled, and that Buffer spoke with a United customer service agent. United denies the remaining allegations contained in Paragraph 30.

      31.    United has not refunded Plaintiff Buffer the price of his tickets and so Plaintiff Buffer seeks to enforce his right to a refund.

**ANSWER**: United admits that Plaintiff Buffer purports to bring this action seeking a refund but denies that Plaintiff Buffer had a "right to a refund" at the time the Complaint was filed and denies that United has not refunded Plaintiff Buffer the price of his tickets.

      32.    Furthermore, at no time did United advise Plaintiff Buffer that the U.S. Department of Transportation on April 3, 2020 mandated prompt refunds.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), the U.S. Department of Transportation Notices and Regulation on which Plaintiffs rely "do not factor into the evaluation of Plaintiffs' contract claims," and thus no response is required to the allegations in Paragraph 32. To the extent a response is required, United denies the characterization of the U.S. Department of Transportation's April 3, 2020 Notice and denies the implicit allegation that United had a duty to "advise" Plaintiff Buffer of that Notice.

      33.    At the time of his ticket purchase, Plaintiff Buffer understood that he would be entitled to a refund if his flight was cancelled.

**ANSWER**: United is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 33 concerning what Plaintiff Buffer "understood," denies that Plaintiff Buffer was entitled to a refund if his flight was cancelled, and denies the remaining allegations in Paragraph 33.

**D.**    **Defendants**

      34.    Defendant United Airlines Holdings, Inc. is a Delaware corporation authorized to do business in Illinois as a foreign corporation with a principal place of business located at 233 South Wacker Drive in Chicago, Illinois.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case and thus no response is required to the allegations in Paragraph 34.

> 35. Defendant United Airlines, Inc. is a Delaware corporation authorized to do business in Illinois as a foreign corporation with a principal place of business located at 233 South Wacker Drive in Chicago, Illinois.

**ANSWER**: Admitted.

> 36. United Airlines Holdings, Inc. is a holding company and its principal, wholly-owned subsidiary is United Airlines, Inc.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case and thus no response is required to the allegations in Paragraph 36.

> 37. Collectively, Defendants are referred to as "United."

**ANSWER**: Paragraph 37 is merely an explanation of an abbreviation used by Plaintiffs in the Complaint, to which no response is required. United further states that pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case, and thus the only remaining defendant is United Airlines, Inc.

## IV. FACTS

### A. Background

> 38. In a typical service scenario, United and its regional carriers operate over 4,900 flights a day to 362 airports across six continents, with hubs at Chicago O'Hare International Airport, Newark Liberty International Airport, Denver International Airport, George Bush Intercontinental Airport, Los Angeles International Airport, A.B. Won Pat International Airport, San Francisco International Airport, and Washington Dulles International Airport.

**ANSWER**: United admits that, prior to the COVID-19 pandemic, United and its regional carriers operated over 4,900 flights a day to 362 airports across six continents, and that United

has hubs at Chicago O'Hare International Airport, Newark Liberty International Airport, Denver

International Airport, George Bush Intercontinental Airport, Los Angeles International Airport,

A.B. Won Pat International Airport, San Francisco International Airport, and Washington Dulles

International Airport. United denies the remaining allegations in Paragraph 38.

> 39. In 2019, United operated over 1.7 million flights carrying over 162 million customers, utilizing 791 mainline aircraft for hub-to-hub travel, with the airline's regional carriers operating another 581 regional aircraft. For its services, United posted $43.2 billion in operating revenue in the year ending December 31, 2019.

**ANSWER**: Admitted.

> 40. United sells its airline seat inventory and fares through United's direct channels (such as United's direct-to-consumer sales website, www.united.com, and the company's mobile applications) and through traditional travel agencies and online travel agencies. With each ticket sale, United collects passenger identification information, including name, address, and telephone information.

**ANSWER**: United admits that it sells tickets through direct channels, traditional travel agencies,

and online travel agencies. United denies the remaining allegations in Paragraph 40.

> 41. But regardless of the method by which United sells its tickets, United has breached its Contract of Carriage through its refusal to issue refunds to passengers for coronavirus-related flight cancellations.

**ANSWER**: Denied.

### B. The Novel Coronavirus Shutdowns And United's Resulting Flight Cancellations

> 42. On December 31, 2019, governmental entities in Wuhan, China confirmed that health authorities were treating dozens of cases of a mysterious, pneumonia-like illness. Days later, researchers in China identified a new virus that had infected dozens of people in Asia, subsequently referred to as the novel coronavirus, or COVID-19. By January 21, 2020, officials in the United States were confirming the first known domestic infections of COVID-19.

**ANSWER**: United admits on information and belief that on December 31, 2019, the World Health

Organization China Country Office was informed of cases of pneumonia of unknown cause

detected in Wuhan City, Hubei Province of China; that from December 31, 2019 through January

3, 2020, a total of 44 case-patients with pneumonia of unknown cause were reported to the World

Health Organization by the national authorities in China; and that on January 21, 2020, the United

States Centers for Disease Control and Prevention confirmed the first domestic case of the 2019

novel coronavirus. United is without knowledge or information sufficient to form a belief as to the

truth of the remaining allegations in Paragraph 42.

> 43.     Due to an influx of thousands of new cases in China, on January 30, 2020,
> the World Health Organization officially declared COVID-19 as a "public health
> emergency of international concern."

**ANSWER**:  United admits on information and belief that on January 30, 2020, the Director-

General of the World Health Organization declared the novel coronavirus outbreak a public health

emergency of international concern. United is without knowledge or information sufficient to form

a belief as to the truth of the remaining allegations in Paragraph 43.

> 44.     The U.S. State Department warned travelers to avoid traveling to China and
> on January 31, 2020, the U.S. federal government restricted travel from China, thus
> beginning travel restrictions affecting passengers ticketed on domestic and
> international air travel to and from the United States.

**ANSWER**:  United admits on information and belief that on January 31, 2020, then-President

Trump signed a proclamation suspending entry into the United States of aliens who were

physically present in the People's Republic of China, excluding the Special Administrative

Regions of Hong Kong and Macau, within the 14 days preceding entry or attempted entry into the

United States, and that the proclamation took effect on February 2, 2020. United is without

knowledge or information sufficient to form a belief as to the truth of the remaining allegations in

Paragraph 44.

> 45.     That same day, January 31, 2020, the U.S. Health and Human Services
> Secretary "determine[d] that a public health emergency exists and has existed since
> January 27, 2020, nationwide."

**ANSWER**:  Admitted on information and belief.

46.     By February 29, 2020, COVID-19 restrictions continued to spread across the globe. As the number of global cases rose to nearly 87,000, the U.S. federal government issued its highest-level warning, known as a "do not travel" warning, for areas in Italy and South Korea that are most affected by the virus. The government also banned all travel to Iran and barred entry to any foreign citizen who had visited Iran in the previous 14 days.

**ANSWER**:  United admits on information and belief that at a White House news conference on February 29, 2020, then-Vice President Mike Pence said that the administration was issuing its highest-level warning, known as a "do not travel" warning, to areas of Italy and South Korea most affected by the coronavirus; that on February 29, 2020, then-President Trump signed a proclamation suspending entry into the United States of aliens who were physically present in Iran within the 14 days preceding entry or attempted entry into the United States; and that this proclamation took effect on March 2, 2021. United is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 46.

47.     On March 11, 2020, the World Health Organization declared COVID-19 a pandemic. That same day, American officials announced yet another travel ban expansion, this time blocking most visitors from continental Europe to the United States.

**ANSWER**:  United admits on information and belief that on March 11, 2020, the Director-General of the World Health Organization stated at a COVID-19 media briefing that COVID-19 could be characterized as a pandemic; that on March 11, 2020, then-President Trump signed a Presidential Proclamation suspending the entry of most foreign nationals who have been physically present in the Schengen Area in Europe within 14 days before their attempted entry; and that this proclamation took effect on March 13, 2020. United is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 47.

48.     On March 13, 2020, the President of the United States of America issued the Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak ("Proclamation"), proclaiming that the COVID-19 outbreak constituted a national emergency in the United States, beginning March 1, 2020.

**ANSWER**:  Admitted on information and belief.

49.    Domestic travel restrictions began on March 16, 2020, with seven counties in the San Francisco, California area announcing shelter-in-place orders. Other states, counties, and municipalities have followed the shelter-in-place orders and, as of April 7, 2020, 316 million people in at least 42 states, 3 counties, 9 cities, the District of Columbia, and Puerto Rico were urged to stay home.

**ANSWER**:  Admitted on information and belief.

50.    Various states, including Plaintiffs' home states and destinations, issued and implemented mandatory Stay-At-Home Orders. They are:

- Alabama, effective April 3, 2020
- Alaska, effective March 28, 2020
- Arizona, effective March 31, 2020
- California, effective March 19, 2020
- Colorado, effective March 26, 2020
- Connecticut, effective March 23, 2020
- Delaware, effective March 24, 2020
- District of Columbia, effective March 30, 2020
- Florida, effective April 3, 2020
- Georgia, effective April 3, 2020
- Hawaii, effective March 25, 2020
- Idaho, effective March 25, 2020
- Illinois, effective March 21, 2020
- Indiana, effective March 24, 2020
- Kansas, effective March 30, 2020
- Kentucky, effective March 26, 2020
- Louisiana, effective March 23, 2020
- Maine, effective April 2, 2020
- Maryland, effective March 30, 2020
- Massachusetts, effective March 24, 2020
- Michigan, effective March 24, 2020
- Minnesota, effective March 27, 2020
- Mississippi, effective April 3, 2020
- Missouri, effective April 3, 2020
- Montana, effective March 28, 2020
- Nevada, effective April 1, 2020
- New Hampshire, effective March 27, 2020
- New Jersey, effective March 21, 2020

- New Mexico, effective March 24, 2020
- New York, effective March 22, 2020
- North Carolina, effective March 30, 2020
- Ohio, effective, March 23, 2020
- Oklahoma, effective March 24, 2020
- Oregon, effective March 23, 2020
- Pennsylvania, effective April 1, 2020
- Rhode Island, effective March 28, 2020
- Tennessee, effective April 2, 2020
- Texas, effective April 2, 2020
- Virginia, effective March 30, 2020
- Vermont, effective March 25, 2020
- Washington, effective March 23, 2020
- West Virginia, effective March 24, 2020
- Wisconsin, effective March 25, 2020

**ANSWER**: United admits on information and belief that the following states, cities, and counties issued stay at home, healthy at home, shelter in place, or curfew orders on the following dates:

- Alabama, effective April 4, 2020
- Alaska, effective March 28, 2020
- Arizona, effective March 31, 2020
- California, effective March 19, 2020
- Colorado, effective March 26, 2020
- Connecticut, effective March 23, 2020
- Delaware, effective March 24, 2020
- District of Columbia, effective April 1, 2020
- Florida, effective April 3, 2020
- Georgia, effective April 3, 2020
- Hawaii, effective March 25, 2020
- Idaho, effective March 25, 2020
- Illinois, effective March 21, 2020
- Indiana, effective March 24, 2020
- Kansas, effective March 30, 2020
- Kentucky, effective March 26, 2020
- Louisiana, effective March 23, 2020
- Maine, effective April 2, 2020
- Maryland, effective March 30, 2020

16

- Massachusetts, effective March 24, 2020
- Michigan, effective March 24, 2020
- Minnesota, effective March 27, 2020
- Mississippi, effective April 3, 2020
- Missouri, effective April 6, 2020
- Montana, effective March 28, 2020
- Nevada, effective April 1, 2020
- New Hampshire, effective March 27, 2020
- New Jersey, effective March 21, 2020
- New Mexico, effective March 24, 2020
- New York, effective March 22, 2020
- North Carolina, effective March 30, 2020
- Ohio, effective March 23, 2020
- Oklahoma: Ardmore, effective April 6, 2020; Claremore, effective April 6, 2020; Edmond, effective Mach 30, 2020; Moore, effective April 4, 2020; Norman, effective March 25, 2020; Oklahoma City, effective March 28, 2020; Sallisaw, effective April 4, 2020; Stillwater, effective March 30, 2020; Tulsa, effective March 28, 2020.
- Oregon, effective March 23, 2020
- Pennsylvania, effective April 1, 2020
- Rhode Island, effective March 28, 2020
- South Carolina, effective April 7, 2020
- Tennessee, effective March 31, 2020
- Texas, effective April 2, 2020
- Utah: Davis County, effective April 1, 2020; Salt Lake County, effective March 30, 2020; Summit County, effective March 27, 2020
- Vermont, effective March 25, 2020
- Virginia, effective March 30, 2020
- Washington, effective March 23, 2020
- West Virginia, effective March 24, 2020
- Wisconsin, effective March 25, 2020
- Wyoming: Jackson County, effective March 28, 2020

United further admits that Plaintiff Hansen has alleged that he is a citizen and resident of Washington, and Plaintiff Buffer has alleged that he was a citizen and resident of New York at the time that he purchased his tickets from United. United is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 50.

17

51.     On March 29, 2020, the President of the United States of America announced the extension of social distancing guidelines until April 30, 2020.

**ANSWER**:  Admitted on information and belief.

52.     On March 31, 2020, the United States Department of State issued a Global Level 4 Health Advisory not to travel.

**ANSWER**:  United admits on information and belief that on March 19, 2020, the U.S. Department of State issued a Level 4 Global Travel Advisory recommending U.S. citizens avoid all international travel due to the global impact of COVID-19. United denies the remaining allegations in Paragraph 52.

53.     Circumstances have not improved materially in the ensuing months. COVID-19 transmission has spiked across the United States as both the country and its constituent States have reported record infection and hospitalization rates since late June 2020. As a result, numerous states have imposed travel restrictions and mandatory quarantines on out-of-state travelers. By way of example, California has once again imposed stay at home orders on all residents, and Chicago, New York and New Jersey have imposed 14-day quarantines on visitors from many states, all of which will further depress domestic travel.

**ANSWER**:  United admits that the July 14, 2020 NBC News article linked by Plaintiffs in footnote 7 of the Complaint states that "[t]he coronavirus is spreading across the United States faster than at any point in the pandemic, and the number of new cases has accelerated in July," and that "22 states and two territories have set a daily coronavirus record since July 1." United admits on information and belief that several states and cities, including California, Chicago, New York and New Jersey, imposed stay-home orders, travel restrictions and quarantines on out-of-state visitors, and that these restrictions impacted travel. United is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 53.

C.      **United's Flight Cancellations Mount**

54.      As the restrictions expanded and virus fears mounted, United cancelled flights in the United States because of a desire to save on operating expenses.

**ANSWER**:  United admits that it cancelled flights due to expanded national and international restrictions relating to the COVID-19 pandemic. United denies the remaining allegations in Paragraph 54.

55.      By March 4, 2020, United made public announcements of cuts to its April and May 2020 flight schedules.

**ANSWER**:  Denied.

56.      On March 10, 2020, United announced that the company was planning for public concern about the virus to increase and for domestic bookings to decrease in the weeks to come.

**ANSWER**:  United admits that on March 10, 2020 it filed with the Securities Exchange Commission a Form 8-K stating that United had experienced "a material decline in demand for both international and domestic travel, as well as an increase in trip cancellations, resulting from the spread of coronavirus," and that it "plans to proactively evaluate and cancel flights on a rolling 90-day basis." United denies the remaining allegations in Paragraph 56.

57.      And while United initially anticipated only 10–20% in flight cancellations for April and May, by March 15, 2020, it changed position and increased service cuts from the level it announced just 11 days earlier, cutting its flights by 50% for April and May. That same day, United's executives also informed investors they expected the flight cancellations would continue and extend into the summer travel period.

**ANSWER**:  United admits that as of March 4, 2020, it anticipated scheduled reductions for April and May of 10-20% and that by mid-March, 2020 it had revised those forecasts and expected an capacity reduction of approximately 50% for April and May. United denies the remaining allegations in Paragraph 57.

58.      United's concerns have proved prescient. In May and June 2020, United decreased its flight capacity by approximately 90% from 2019 levels. The service

cuts resulted in United flying roughly 525 daily flights in June, a 10% decrease year-over-year.

**ANSWER**: United admits that it experienced an 87.8 percent decrease in capacity in second quarter 2020 compared to second quarter 2019. United denies the remaining allegations in Paragraph 58.

> 59. United signaled that it expected demand would increase substantially in the late Summer, announcing on July 1, 2020, nearly 25,000 new and reinstated flights for August. Its hopes proved overly optimistic, however, as in a recent filing with the Securities Exchange Commission it said "it anticipates August capacity to be 65% lower than the same month a year ago, 'which includes certain adjustments that the company plans to make to the schedule previously announced on July 1, 2020, resulting from reduced demand to destinations experiencing increases in Covid-19 cases and/or new quarantine requirements or other restrictions on travel.'"

**ANSWER**: United admits that on July 1, 2020, it announced its intent to add nearly 25,000 domestic and international flights to its August 2020 schedule compared to July 2020, and that on July 6, 2020, it filed with the Securities Exchange Commission a Form 8-K report stating that "consolidated capacity for August 2020 is expected to be down approximately 65% year-over-year," and that United plans to make "certain adjustments … to the schedule previously announced on July 1, 2020, resulting from reduced demand to destinations experiencing increases in COVID-19 cases and/or new quarantine requirements or other restrictions on travel." United denies that the allegations in Paragraph 59 fully and accurately summarize United's July 6, 2020 Form 8-K, denies any characterization or description that is inconsistent with that document, and denies the remaining allegations in Paragraph 59.

> 60. United went on to concede in that same SEC filing that it "plans to continue to proactively evaluate and cancel flights on a rolling 60-day basis until it sees signs of a recovery in demand, and expects demand to remain suppressed until a widely accepted treatment and/or vaccine for Covid-19 is available."

**ANSWER**: United admits that the quoted statement appears in United's July 6, 2020 Form 8-K report, but denies that the allegations in Paragraph 60 fully and accurately summarize that

document, denies any characterization or description that is inconsistent with that document, and denies the remaining allegations in Paragraph 60.

> 61.     Such future cancellations appear likely in light of COVID's resurgence both globally and in wide swaths of the continental United States. And, unfortunately for United's customers, they will remain subject to United's refusal to meet its contractual obligations.

**ANSWER**: United denies that it has refused to meet its contractual obligations with respect to its customers. United is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 61.

**D.     United Refuses Passenger Refunds For Cancelled Flights**

> 62.     As United announced flight cancellations (combined with decreased domestic bookings), United took a variety of steps to make it difficult, if not impossible, for consumers to receive any refund on pandemic cancelled flights.

**ANSWER**:  Denied.

> 63.     United wanted to retain the money paid to it given the severe economic losses it was incurring related to pandemic flight cancellations.

**ANSWER**:     United admits that it incurred severe economic losses from pandemic flight cancellations. United denies that it unlawfully withheld refunds from any customers entitled to such refunds and denies the remaining allegations in Paragraph 63.

> 64.     Yet, United refuses to provide refunds for cancelled flights despite passengers' right to receive refunds for unused transportation, even for non-refundable tickets.

**ANSWER**:  Denied.

> 65.     Prior to June 2020, United's Contract of Carriage provided that passengers were entitled to refunds when:
>
>> a)     A passenger's ticket is affected by a Schedule Change that modifies the original departure and/or arrival time by 30 minutes or more and the passenger is not transported on alternative transportation within 7 days of the original flight and does not accept a voucher for future travel within one year; or

21

       b)      A passenger's flight is affected by an Irregular Operation and the passenger is not transported on another flight to the destination.

**ANSWER**: United denies that the allegations in Paragraph 65 fully and accurately summarize the terms of its Contract of Carriage relating to ticket refunds prior to June of 2020, denies any characterization or description that is inconsistent with those terms, and denies the remaining allegations in Paragraph 65.

66.     The Contract of Carriage obligates United to refund the entire amount of the Ticket for entirely unused tickets, or a prorated amount for partially used Tickets. Further, the Contract of Carriage does not permit United to deduct any cancellation fee from the amount refunded to passengers for cancelled flights, and similarly requires United to refund all baggage, upgrade, and/or service fees paid in connection with a cancelled flight.

**ANSWER**: United denies that the allegations in Paragraph 66 fully and accurately summarize the terms of its Contract of Carriage relating to ticket refunds prior to June of 2020, denies any characterization or description that is inconsistent with those terms, and denies the remaining allegations in Paragraph 66.

67.     In the midst of a worldwide pandemic, however, United chose to breach its contractual duty to issue refunds in connection with flight cancellations. During March 2020, United announced on four separate occasions that it had altered its refund practices, ultimately announcing on March 14 that it would only provide credits where its Contract of Carriage required refunds. But United did not actually amend its Contract of Carriage to reflect these changes at the time, it merely announced these policies publicly, likely in an effort to dissuade Plaintiffs and the Class Members from pursuing the refunds to which they were entitled.

**ANSWER**: Denied.

68.     United's effort to deny full refunds was described by one airline travel website editor "as possibly 'the single most damaging airline policy in recent memory.'"

**ANSWER**: United admits that Paragraph 68 purports to quote an alleged March 8, 2020 tweet by @ZachHonig and otherwise denies the allegations in Paragraph 68.

**E.** **The Department Of Transportation Repeatedly Reminds Airlines Regarding Their Refund Obligations**

69.    Furthermore, United's practice to refuse customers refunds for cancelled flights contradicts established transportation requirements that operate for the benefit and protection of airline consumers.

**ANSWER**: Denied.

70.    Prior to the pandemic, the United States Department of Transportation ("DOT") advised consumers of their right to a refund for a cancelled flight: "If your flight is cancelled and you choose to cancel your trip as a result, you are entitled to a refund for the unused transportation—even for non-refundable tickets. You are also entitled to a refund for any bag fee that you paid, and any extras you may have purchased, such as a seat assignment."

**ANSWER**:    Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), the U.S. Department of Transportation Notices and Regulation on which Plaintiffs rely "do not factor into the evaluation of Plaintiffs' contract claims," and thus no response is required to the allegations in Paragraph 70. To the extent a response is required, United denies that the allegations in Paragraph 70 fully and accurately summarize the Department of Transportation's pre-pandemic guidance, denies any characterization or description that is inconsistent with that guidance, and denies the remaining allegations in Paragraph 70.

71.    Such rights did not change with the pandemic. Rather, on April 3, 2020, the DOT issued the Enforcement Notice Regarding Refunds By Carriers Given The Unprecedented Impact Of The COVID-19 Public Health Emergency On Air Travel ("Notice") reiterating that airlines, including United, are obligated to issue prompt refunds to customers whose flights are/were cancelled or changed significantly during the COVID-19 crisis.

**ANSWER**:    Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), the U.S. Department of Transportation Notices and Regulation on which Plaintiffs rely "do not factor into the evaluation of Plaintiffs' contract claims," and thus no response is required to the allegations in Paragraph 71. To the extent a response is required, United denies that the allegations in Paragraph 71 fully and accurately summarize the Department of Transportation's

April 3, 2020 Notice, denies any characterization or description that is inconsistent with that Notice, and denies the remaining allegations in Paragraph 71.

> 72.     The Notice states, in part, as follows:

>> The Department is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non- refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed. In many of these cases, the passengers stated that the carrier informed them that they would receive vouchers or credits for future travel. But many airlines are dramatically reducing their travel schedules in the wake of the COVID-19 public health emergency. As a result, passengers are left with cancelled or significantly delayed flights and vouchers and credits for future travel that are not readily usable.

>> Carriers have a longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier. The longstanding obligation of carriers to provide refunds for flights that carriers cancel or significantly delay does not cease when the flight disruptions are outside the carrier's control (e.g. a result of government restrictions). The focus is not whether the flight disruptions are within or outside the carrier's control, but rather on the fact that the cancellation is through no fault of the passenger.

**ANSWER**:   Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), the U.S. Department of Transportation Notices and Regulation on which Plaintiffs rely "do not factor into the evaluation of Plaintiffs' contract claims," and thus no response is required to the allegations in Paragraph 72. To the extent a response is required, United denies that the allegations in Paragraph 72 fully and accurately summarize the Department of Transportation's April 3, 2020 Notice, denies any characterization or description that is inconsistent with that Notice, and denies the remaining allegations in Paragraph 72.

> 73.     Put another way, "[a] passenger is entitled to a refund if the airline cancelled a flight, regardless of the reason, and the passenger chooses not to be rebooked on a new flight on that airline."

**ANSWER**:   Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), the U.S. Department of Transportation Notices and Regulation on which Plaintiffs rely

"do not factor into the evaluation of Plaintiffs' contract claims," and thus no response is required to the allegations in Paragraph 73. To the extent a response is required, United denies that the allegations in Paragraph 73 fully and accurately summarize the Department of Transportation's April 3, 2020 Notice, denies any characterization or description that is inconsistent with that Notice, and denies the remaining allegations in Paragraph 73.

> 74. Passengers are similarly entitled to a refund if an airline makes "a significant schedule change and/or significantly delays a flight and the passenger chooses not to travel."

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), the U.S. Department of Transportation Notices and Regulation on which Plaintiffs rely "do not factor into the evaluation of Plaintiffs' contract claims," and thus no response is required to the allegations in Paragraph 74. To the extent a response is required, United denies that the allegations in Paragraph 74 fully and accurately summarize the Department of Transportation's April 3, 2020 Notice, denies any characterization or description that is inconsistent with that Notice, and denies the remaining allegations in Paragraph 74.

> 75. Moreover, continued failures to provide refunds by United and other airlines resulted in the release of a second DOT enforcement notice.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), the U.S. Department of Transportation Notices and Regulation on which Plaintiffs rely "do not factor into the evaluation of Plaintiffs' contract claims," and thus no response is required to the allegations in Paragraph 75. To the extent a response is required, United admits that the Department of Transportation issued an Enforcement Notice on May 12, 2020 and denies the remaining allegations in Paragraph 75.

> 76. Under that notice, the DOT restated that "airlines have an obligation to provide a refund to a ticketed passenger when the carrier cancels or significantly

changes the passenger's flight, and the passenger chooses not to accept an alternative offered by the carrier."

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), the U.S. Department of Transportation Notices and Regulation on which Plaintiffs rely "do not factor into the evaluation of Plaintiffs' contract claims," and thus no response is required to the allegations in Paragraph 76. To the extent a response is required, United denies that the allegations in Paragraph 76 fully and accurately summarize the Department of Transportation's May 12, 2020 Notice, denies any characterization or description that is inconsistent with that Notice, and denies the remaining allegations in Paragraph 76.

77.     Not only is United refusing to refund passengers for cancelled flights, United is misleading passengers about their rights, including their rights under the Contract of Carriage, by making it difficult to locate information about refunds, refusing refunds, unilaterally providing travel vouchers if a passenger is unable to contact a United customer service representative, and waiting until the last minute to cancel flights to induce passengers to cancel their flights.

**ANSWER**:  Denied.

### F.     Consumer Complaints Regarding United's Refusal To Provide Passengers Refunds For Cancelled Flights Abound, Confirming United's Failure To Act In Good Faith And Deal Fairly With Its Passengers

78.     Consistent with Plaintiffs' experience, many consumers have complained regarding United's conduct. A few examples follow.

**ANSWER**:  United is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 78.

79.     For example, one passenger complained on Twitter that he had three flights for his family of five cancelled by United. He was refused a refund and falsely told "no other airlines are giving refunds."

**ANSWER**:  United admits that that Paragraph 79 purports to quote an alleged March 21, 2020 tweet by @Gregleonow and otherwise denies the allegations in Paragraph 79.

80.     Another passenger's trip to Hawaii at the end of March 2020 to attend a wedding was cancelled due to COVID-19. She does not want a future travel credit, because she can no longer afford to travel to Hawaii.

**ANSWER**:  United is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 80.  United admits that Paragraph 80 purports to quote an alleged a March 20, 2020 tweet by @dawnzo8 and otherwise denies the allegations in Paragraph 80.

81.     Sensitive to such consumer complaints, members of the U.S. Senate issued a joint letter to United urging it to provide full cash refunds to passengers with flights cancelled during the pandemic:

> We write to urge your airline to issue full cash refunds to all customers who cancel their flights during the COVID-19 crisis, and to American citizens who encounter flight cancellations while stranded in countries that implemented travel restrictions. The ongoing pandemic is placing enormous financial strain on millions of Americans, and families need cash to pay for essentials such as food, housing, and medical care. In light of this pressing need and the unprecedented bailout—to the tune of $25 billion—that the airline industry just received from Congress, we believe your company has a moral responsibility to provide real refunds, not travel vouchers, to consumers, and to support State Department efforts to repatriate any American citizens trying to come home.

**ANSWER**:  United admits that Paragraph 81 quotes a portion of a March 31, 2020 letter signed by nine U.S. senators and addressed to Oscar Munoz, United's Chief Executive Officer, and that identical letters were sent to the chief executives of Alaska Airlines, Allegiant Air, American Airlines, Delta Air Lines, Frontier Airlines, Hawaiian Airlines, JetBlue Airways, Southwest Airlines, Spirit Airlines, and Sun Country Airlines. United denies that the allegations in Paragraph 81 fully and accurately summarize the quoted letter, denies any characterization or description that is inconsistent with the letter, and denies the remaining allegations in Paragraph 81.

82.     United not only has a moral responsibility to provide real refunds, it has a legal obligation to do so, particularly in light of the substantial bailout it received from American taxpayers, including Plaintiffs and Class Members.

**ANSWER**:  Denied.

83.     Indeed, U.S. taxpayers, through the federal government, provided substantial assistance to the airline industry in order to insulate its most critical components—the men and women in its employ—from the economic hardship the pandemic might otherwise impose upon them. In March 2020, Congress passed the CARES Act, which, inter alia, provides more than $58 billion in aid to U.S. airlines, notwithstanding the fact that over the past decade the country's largest airlines have spent roughly 96% of their free cash flow on stock buybacks.

**ANSWER**:  United admits that in March 2020, Congress passed the CARES Act.  United denies that the allegations in Paragraph 83 fully and accurately summarize the provisions of CARES Act, denies any characterization or description that is inconsistent with those provisions, and is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 83.

84.     United alone received $5 billion dollars under the CARES Act.

**ANSWER**:  United admits that it received a total of approximately $5.0 billion from the federal government through the Payroll Support Program under the CARES Act to protect the jobs of tens of thousands of United employees by covering a portion of  their salaries and benefits.

## V.     CLASS ACTION ALLEGATIONS

85.     Plaintiffs sue under Rule 23(a), (b)(2), and Rule 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of themselves and a Class defined as follows:

> All persons in the United States that purchased tickets for travel on United Airlines flights scheduled to operate to, from, or within the United States from March 1, 2020, to the date of class certification and who were not issued a refund for cancelled and/or significantly changed flights on which the passenger did not travel.

In the alternative, Plaintiffs also assert subclass claims on behalf of Class Members in their respective home states. Excluded from any Class or Subclass are Defendants, any entity in which Defendants have a controlling interest, and Defendants' legal representatives, predecessors, successors, assigns, and

employees. Further excluded from any Class or Subclass is this Court and its employees. Plaintiffs reserve the right to modify or amend the Class definition, as appropriate, during this litigation.

**ANSWER**:  United admits that Plaintiffs purports to bring this case on behalf of a proposed Class

as defined in Paragraph 85.  United denies that the proposed Class or any other class could properly

be certified under Federal Rule of Civil Procedure 23.

> 86.     The definition of the Class is unambiguous. Plaintiffs are members of the Class they seek to represent. Class Members can be notified of the class action through ticketing contact information and/or address lists maintained in the usual course of business by Defendants.

**ANSWER**:  United denies that the Class defined in Paragraph 85 or any other class could properly

be certified under Federal Rule of Civil Procedure 23, and accordingly denies the allegations in

Paragraph 86.

> 87.     Class Members are so numerous and geographically dispersed that their individual joinder of all Class Members is impracticable. The precise number of Class Members is unknown to Plaintiffs but may be ascertained from Defendants' records. Given the thousands of flight cancellations made by Defendants, that number greatly exceeds the number to make joinder possible. Class Members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

**ANSWER**:  United denies that the Class defined in Paragraph 85 or any other class could properly

be certified under Federal Rule of Civil Procedure 23, and accordingly denies the allegations in

Paragraph 87.

> 88.     Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the Class Members, making appropriate final injunctive relief and declaratory relief regarding the Class under Rule 23(b)(2), particularly those aspects of injunctive relief that require Defendants to adhere to their voluntary undertakings and agreements with Plaintiffs and the Class Members.

**ANSWER**:  Denied.

89.     Additionally, common questions of law and fact predominate over the questions affecting only individual Class Members. Some of the common legal and factual questions include:

a.     Whether Defendants formed contracts with Plaintiffs and Class Members through the act of selling them tickets for air travel, including under the Contract of Carriage;

b.     Whether Defendants have denied refunds to Class Members for cancelled and/or significantly delayed flights;

c.     Whether Defendants' conduct breached one or more terms of Defendants' contracts with Plaintiffs and Class Members;

d.     Whether Defendants acted in good faith and dealt fairly with passengers under their contracts;

e.     Whether Defendants owe refunds to Plaintiffs and Class Members for cancelled and/or significantly delayed flights, rather than a credit on a future flight;

f.     Whether Illinois law applies to the nationwide Class; and

g.     The nature and extent of damages, equitable relief, and other remedies to which Defendants' conduct entitles Plaintiffs and Class Members.

**ANSWER**:  Denied.

90.     Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Class Members. Similar or identical common law breach of contract violations are involved. Individual questions pale by comparison to the numerous common questions that predominate.

**ANSWER**:  Denied.

91.     The injuries sustained by Plaintiffs and the Class Members flow, in each instance, from a common nucleus of operative facts under Rule 23(a)(2)— Defendants' breaches of an identical contract and identical breach. In each case, Defendants cancelled and/or significantly delayed flights yet denied refunds to Class Members for such cancelled and/or significantly delayed flights.

**ANSWER**:  Denied.

92.     Plaintiffs and Class Members have been damaged by Defendants' contractual breaches through Defendants' practice of cancelling flights yet denying refunds to Class Members for such cancelled flights.

**ANSWER**:  Denied.

93.     Plaintiffs' claims are typical of the claims of the other Class Members. Plaintiffs paid for airline tickets but did not receive a refund for cancelled and/or substantially delayed flights.

**ANSWER**:  Denied.

94.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs are familiar with the basic facts that form the bases of the Class Members' claims. Plaintiffs' interests do not conflict with the interests of the other Class Members they seek to represent. Plaintiffs have retained counsel competent and experienced in class action litigation and intend to prosecute this action vigorously. Plaintiffs' counsel has successfully prosecuted complex class actions, including breach of contract and consumer protection class actions. Plaintiffs and Plaintiffs' counsel will fairly and adequately protect the interests of the Class Members.

**ANSWER**:  United denies that the Class defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23, and accordingly denies the allegations in Paragraph 94.

95.     The class action device is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class Members. The relief sought per individual members of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for the Class Members to seek redress individually. Even if the Class Members themselves could afford such individual litigation, the court system could not.

**ANSWER**:  Denied.

96.     Individual litigation of the legal and factual issues raised by Defendants' conduct would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court. Given the similar nature of the Class Members' claims and the absence of material differences in breach of contract laws upon which the Class Members' claims are based, a nationwide Class will be easily managed by the Court and the parties.

**ANSWER**:  Denied.

## VI.    CAUSE OF ACTION COUNT I - BREACH OF CONTRACT

97.    Plaintiffs restate, re-allege, and incorporate herein by reference the preceding paragraphs as if fully set forth herein.

**ANSWER**:   United repeats and incorporates its Answers to Paragraphs 1 through 96 of the Complaint as if fully set forth herein.

98.    A contract existed between Plaintiffs and Class Members as reflected in Defendants' Contract of Carriage (see Exhibit B).

**ANSWER**:   Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. Notwithstanding its objection to Plaintiffs' allegations as to "Defendants[]," United admits that it entered into a contractual relationship with Plaintiffs and other individuals who purchased tickets for travel on United Airlines flights from March 1, 2020 to the present. United states that the Contract of Carriage attached as Exhibit B to the Complaint represents the contractual agreement between United and Plaintiff Hansen, but that an earlier version of the Contract of Carriage was in effect on August 22, 2019, when Plaintiff Buffer purchased his tickets. United denies that the Class as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23 and denies the remaining allegations in Paragraph 98.

99.    The Contract of Carriage reflects obligations voluntarily undertaken by Defendants.

**ANSWER**:   Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. Notwithstanding its objection to Plaintiffs' allegations as to "Defendants," United admits that its Contract of Carriage attached as Exhibit B to the Complaint reflects obligations voluntarily undertaken by United.

100.    Moreover, Plaintiffs and Class Members did not draft the terms of the Contract of Carriage. Rather Defendants (and/or Defendants' agents at Defendants' direction) drafted the Contract of Carriage.

**ANSWER**:    Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. Notwithstanding its objection to Plaintiffs' allegations as to "Defendants," United admits that it drafted the Contract of Carriage attached as Exhibit B to the Complaint, but denies that the Class as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23 and denies the remaining allegations in Paragraph 100.

101.    Defendants made offers to Plaintiffs and Class Members to enter into a contract for United to provide transportation services to Plaintiffs and Class Members through passenger tickets for air travel between specific locations, on specific flight numbers, on specific dates, at specific prices.

**ANSWER**:    Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. Notwithstanding its objection to Plaintiffs' allegations as to "Defendants," United admits that it made offers to Plaintiffs and other members of the public to provide transportation services through passenger tickets for air travel, subject to the terms and conditions set forth within its Contract of Carriage, which states among other things that "Schedules are Subject To Change Without Notice," that "Times shown on tickets, timetables, published schedules or elsewhere […] are not guaranteed and form no part of this contract," and that United "may substitute alternate carriers or aircraft, delay or cancel flights, and alter or omit stopping places or connections shown on the ticket at any time." United denies that the Class as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23 and denies the remaining allegations in Paragraph 101.

102.    Defendants' offer to provide transportation services to Plaintiffs and Class Members also included Defendants' term that it would refund Plaintiffs and Class Members for all cancellations and/or significantly changed flights.

**ANSWER**:    Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. Notwithstanding its objection to Plaintiffs' allegations as to "Defendants[]," United admits that its offers to provide transportation services to Plaintiffs and other members of the public are subject to the terms and conditions set forth in its Contract of Carriage, which includes provisions governing the circumstances under which passengers may be entitled to a refund for cancelled or significantly changed flights. United denies that the allegations in Paragraph 102 fully and accurately summarize the terms and conditions of its Contract of Carriage, denies any characterization or description that is inconsistent with the terms and conditions of the Contract of Carriage, denies that the Class as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23, and denies the remaining allegations in Paragraph 102.

103.    At all times relevant, Defendants' offer and terms were specifically identified in writing in Defendants' Contract of Carriage entered into between Plaintiffs and Class Members on one hand, and Defendants on the other, at the time of ticket purchases.

**ANSWER**:    Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. Notwithstanding its objection to Plaintiffs' allegations as to "Defendants," United admits that the terms and conditions of its Contract of Carriage govern its transportation of passengers and baggage, including the tickets purchased by Plaintiffs. United denies that the Class as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23 and denies the remaining allegations in Paragraph 103.

104.    Defendants' offer reflected a definite promise, showing a willingness to make an agreement for transportations services with passengers.

**ANSWER**:  Paragraph 104 states legal conclusions to which no response is required. Moreover, pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. To the extent a response is required, and notwithstanding its objection to Plaintiffs' allegations as to "Defendants[]," United admits that it made offers to Plaintiffs and other members of the public to provide transportation services through passenger tickets for air travel, subject to the terms and conditions set forth within its Contract of Carriage, which states among other things that "Schedules are Subject To Change Without Notice," that "Times shown on tickets, timetables, published schedules or elsewhere […] are not guaranteed and form no part of this contract," and that United "may substitute alternate carriers or aircraft, delay or cancel flights, and alter or omit stopping places or connections shown on the ticket at any time." United denies all remaining allegations contained in Paragraph 104.

105.    Defendants' offer provided Plaintiffs and Class Members the power to agree to its terms through the act of purchasing one or more tickets for travel with Defendants.

**ANSWER**:  Paragraph 105 states legal conclusions to which no response is required. Moreover, pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. To the extent a response is required, and notwithstanding its objection to Plaintiffs' allegations as to "Defendants," United admits that it made offers to Plaintiffs and other members of the public to provide transportation services through passenger tickets for air travel, subject to the terms and conditions set forth within its Contract of Carriage, which states among other things that "Schedules are Subject To Change Without Notice," that "Times shown on tickets, timetables, published schedules or elsewhere […] are not guaranteed and form no part of this contract," and that United "may substitute alternate

carriers or aircraft, delay or cancel flights, and alter or omit stopping places or connections shown on the ticket at any time." United further admits that those offers could be accepted by purchasing tickets. United denies that the Class as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23 and denies the remaining allegations in Paragraph 105.

> 106.    Defendants made such offers in writing through United's direct channels (such as United's direct-to-consumer sales website, www.united.com, and the company's mobile applications), traditional travel agencies, and online travel agencies.

**ANSWER**:  Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. Notwithstanding its objection to Plaintiffs' allegations as to "Defendants," United admits that United sells tickets for air transportation through United's website (www.united.com), its mobile applications, traditional travel agencies, and online travel agencies. United denies the remaining allegations in Paragraph 106.

> 107.    Numerous sections of the Contract of Carriage applicable at the time Plaintiffs and Class Members purchased their tickets confirm passengers' contractual rights to refunds for tickets and fees where a flight has been cancelled and/or significantly changed, regardless of the reason for a cancellation or delay.

**ANSWER**: Paragraph 107 states legal conclusions to which no response is required. To the extent a response is required, United admits that its Contract of Carriage includes provisions governing the circumstances under which passengers may be entitled to a refund for cancelled or significantly changed flights. United denies that the allegations in Paragraph 107 fully and accurately summarize the terms and conditions of its Contract of Carriage, denies any characterization or description that is inconsistent with the terms and conditions of the Contract of Carriage, denies that the Class as defined in Paragraph 85 or any other class could properly be certified under

Federal Rule of Civil Procedure 23, and denies the remaining allegations contained in Paragraph

107.

> 108.    To wit, the terms of United's Contract of Carriage provides that when United cancels a flight due to Irregular Operations or a Schedule Change, United will refund the full fare and any charges paid for a ticket unused in its entirety, and in the case of partially used fares, at minimum, the prorated value of the unused segment (if not more). See Exhibit B at Rule 27.

**ANSWER**:  Denied.

> 109.    The Contract of Carriage also provides that if a passenger does not travel as a result of a "flight cancellation, Schedule Change, or Irregular Operations," United shall refund any baggage fees, upgrade fees, and other service fees, such as those relating to seating selection. See Exhibit B at Rule 27.

**ANSWER**:  Denied.

> 110.    The foregoing applies with equal force to all United tickets, regardless of whether they were deemed "refundable" or "non-refundable."

**ANSWER**:  United is without knowledge or information sufficient to form a belief as to what

Plaintiffs intend by "[t]he foregoing" in Paragraph 110. Because the use of that term renders

Paragraph 110 unintelligible, no response is required. To the extent a response is required, denied.

> 111.    Furthermore, United's Contract of Carriage also incorporates Plaintiffs' and Class Members' rights to refunds as required under applicable laws, regulations, rules, or security directives, such as DOT rules applicable to passenger refunds:
>
>> This Contract of Carriage is subject to applicable laws, regulations, rules, and security directives imposed by governmental agencies, including but not limited to those imposed during or as a result of a national emergency, war, civil unrest or terrorist activities. In the event of a conflict between the Rules contained herein and such government laws, regulations, rules, security directives and their corresponding effects on UA's operation, the latter shall prevail.
>
> See Exhibit B at Rule 3.

**ANSWER**:  United admits that Paragraph 111 quotes a portion of United's Contract of Carriage,

but denies that the quoted language "incorporates" any "applicable laws, regulations, rules, or

security directives, such as DOT rules applicable to passenger refunds." United denies the remaining allegations in Paragraph 111.

> 112. The terms of Defendants' offer to provide transportation services contained a definite promise by Defendants and gave Plaintiffs and Class Members the power to agree to the terms of Defendants' offer to provide transportation services through, including but not limited to, the act of purchasing a ticket or accepting transportation on Defendants' aircraft.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. Notwithstanding its objection to Plaintiffs' allegations as to "Defendants," United states that the allegation as to a "definite promise" is a legal conclusion to which no response is required. To the extent that a response is required, United admits that its offers to provide transportation services through passenger tickets for air travel, subject to the terms and conditions set forth within its Contract of Carriage, could be accepted by purchasing tickets. United denies that the Class as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23 and denies the remaining allegations contained in Paragraph 112.

> 113. Plaintiffs and Class Members accepted Defendants' offer to provide transportation services, agreeing to the material terms contained in Defendants' offer.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. Notwithstanding its objection to Plaintiffs' allegations as to "Defendants[]," United admits that Plaintiffs Buffer and Hansen purchased tickets for travel on United flights (although Hansen purchased his tickets from Expedia, not United), and that by doing so they agreed to be bound by the controlling terms of United's Contract of Carriage. United denies that the Class as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23 and denies the remaining allegations in Paragraph 113.

114. Plaintiffs and Class Members communicated their acceptance of Defendants' offer by purchasing one or more tickets thereby booking transportation services with Defendants.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. Notwithstanding its objection to Plaintiffs' allegations as to "Defendants[]," United admits that Plaintiffs Buffer and Hansen purchased tickets for travel on United flights (although Hansen purchased his tickets from Expedia, not United), and that by doing so they agreed to be bound by the controlling terms of United's Contract of Carriage. United denies that the Class as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23 and denies the remaining allegations in Paragraph 114.

115. The agreement between Plaintiffs, the Class Members, and Defendants included an exchange of promises or value, i.e., consideration. Here, Plaintiffs and Class Members provided Defendants with consideration in the form of amounts equal to the monetary value of the fare and all charges and taxes paid. In turn, Defendants issued tickets, promising and/or agreeing to provide transportation services to Plaintiffs and Class Members under the terms of the Contract of Carriage.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. Notwithstanding its objection to Plaintiffs' allegations as to "Defendants," United states that the allegation concerning "consideration" is a legal conclusion to which no response is required. To the extent that a response is required, United admits that Plaintiff Buffer provided United with consideration for the tickets he purchased in the form of the amounts paid for the fare and all applicable charges and taxes, but denies that Hansen provided any consideration to United for the tickets that he purchased through Expedia. United admits that it issued tickets for transportation services, subject to the terms and conditions of United's Contract of Carriage, to Plaintiffs Buffer and Hansen. United denies that the Class as defined in Paragraph 85 or any other class could

properly be certified under Federal Rule of Civil Procedure 23 and denies the remaining allegations

in Paragraph 115.

> 116.    Plaintiffs and Class Members performed all obligations and conditions
> required and expected of them and/or had a valid excuse for not performing any
> such obligations due to the COVID-19 pandemic. Defendants, on the other hand,
> failed to perform their obligations imposed under its agreements with Plaintiffs and
> Class Members as they did not transport Plaintiffs and Class Members and they
> failed to provide refunds where refunds are due.

**ANSWER**:   Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order

(Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case.

Notwithstanding its objection to Plaintiffs' allegations as to "Defendants," United denies the

allegations of Paragraph 116 as they pertain to Plaintiffs Buffer and Hansen, denies that the Class

as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of

Civil Procedure 23 and denies the remaining allegations in Paragraph 116.

> 117.    Moreover, the various national and state guidelines, laws, rules, and
> regulations related to the pandemic have frustrated Plaintiffs' and Class Members'
> ability to benefit from the Contract of Carriage and ability to travel, thus making
> their domestic and/or foreign air travel impossible, or at a minimum, impracticable.

**ANSWER**:  United admits that various national and state guidelines, laws, rules, and regulations

related to the COVID-19 pandemic have made domestic and/or foreign air travel impossible or

impracticable for some passengers, but is without knowledge or information sufficient to form a

belief as to the truth of those allegations with respect to Plaintiffs Buffer and Hansen at the present

time.  United denies that the Class as defined in Paragraph 85 or any other class could properly be

certified under Federal Rule of Civil Procedure 23 and denies the remaining allegations in

Paragraph 117.

118.    Defendants cancelled and/or significantly changed Plaintiffs' and Class
Members' flights.

**ANSWER**:    Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order

(Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case.

Notwithstanding its objection to Plaintiffs' allegations as to "Defendants," United admits that

Plaintiff Hansen's itinerary was changed several times, and ultimately cancelled in its entirety, and

that Plaintiff Buffer's March 19, 2020 flight from New York, New York to Athens, Greece was

cancelled. United further states that it has fully refunded Hansen's and Buffer's tickets. United

denies that the Class as defined in Paragraph 85 or any other class could properly be certified under

Federal Rule of Civil Procedure 23 and denies the remaining allegations contained in

Paragraph 118.

119.    Defendants failed to provide and/or outright refused refunds to Plaintiffs
and Class Members for such cancelled and/or significantly changed flights for
which Plaintiffs and Class Members did not accept alternative transportation.

**ANSWER**:    Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order

(Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case.

Notwithstanding its objection to Plaintiffs' allegations as to "Defendants," United denies that it

refused to provide refunds to Plaintiffs Buffer and Hansen, denies that the Class as defined in

Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure

23 and denies the remaining allegations contained in Paragraph 119.

120.    Defendants did so even though Defendants were contractually obligated to
provide refunds to Plaintiffs and Class Members in such circumstances.

**ANSWER**:  Paragraph 120 states legal conclusions to which no response is required. Moreover,

pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant

United Airlines Holdings, Inc. was dismissed from this case. To the extent a response is required,

and notwithstanding its objection to Plaintiffs' allegations as to "Defendants," United denies that

it was contractually obligated to provide refunds to Plaintiffs Buffer and Hansen, denies that the Class as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23 and denies the remaining allegations contained in Paragraph 120.

> 121. To the extent that Defendants attempted to change their refund policy, as well as Defendants' attempts to apply any revised policies retroactively, to avoid providing refunds to Plaintiffs and Class Members, such attempts are void and unenforceable against Plaintiffs and Class Members and are contrary to both the Contract of Carriage and public policy, including as evidenced by enforcement notices issued by the DOT.

**ANSWER**: Paragraph 121 states legal conclusions to which no response is required. Moreover, pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. To the extent a response is required, and notwithstanding its objection to Plaintiffs' allegations as to "Defendants," United denies that it made any changes to its refund policy to avoid providing refunds to Plaintiffs Buffer and Hansen, and further states that pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), the U.S. Department of Transportation Notices and Regulation on which Plaintiffs rely "do not factor into the evaluation of Plaintiffs' contract claims." United denies that the Class as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23 and denies the remaining allegations in Paragraph 121.

> 122. Defendants have failed to perform its obligations according to the terms of the contracts and have materially breached their contracts with Plaintiffs and Class Members.

**ANSWER**: Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. Notwithstanding its objection to Plaintiffs' allegations as to "Defendants," United denies the allegations in Paragraph 122, and further denies that the Class as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23.

123.    Because of Defendants' failure to perform under the contracts, Plaintiffs and Class Members have been damaged and/or did not receive the refunds, benefits, payment, and/or performance to which they were entitled under the contract.

**ANSWER**:    Pursuant to the Court's February 12, 2021 Memorandum Opinion and Order (Dkt. 65), Defendant United Airlines Holdings, Inc. was dismissed from this case. Notwithstanding its objection to Plaintiffs' allegations as to "Defendants[]," United denies the allegations in Paragraph 123, and further denies that the Class as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23.

124.    As a result, Plaintiffs and Class Members have sustained monetary damages and are entitled to fair compensation in the form of complete refunds for all fares, charges, and taxes paid.

**ANSWER**:    United denies the allegations in Paragraph 124, and further denies that the Class as defined in Paragraph 85 or any other class could properly be certified under Federal Rule of Civil Procedure 23.

## ADDITIONAL DEFENSES

United sets forth the following Additional Defenses to Plaintiffs' claims:

### FIRST ADDITIONAL DEFENSE

The claims of some or all of the putative Class Members are barred in whole or in part under the force majeure provision of United's Contract of Carriage due to the impact of the global COVID-19 pandemic and related protective efforts by local, state, federal and international governments.

### SECOND ADDITIONAL DEFENSE

The claims of Plaintiffs and some or all of the putative Class Members are barred in whole or in part due to the doctrines of frustration, impossibility, or impracticability given the global

COVID-19 pandemic and related protective efforts by local, state, federal and international governments.

### THIRD ADDITIONAL DEFENSE

Plaintiffs Buffer and Hansen lack Article III standing to pursue the claim they assert on behalf of themselves and the Class defined in Paragraph 85 because they had no right to a refund under United's Contract of Carriage at the time the Complaint was filed.

### FOURTH ADDITIONAL DEFENSE

Plaintiff Buffer lacks Article III standing to pursue the claim he asserts on behalf of himself and the Class as defined in Paragraph 85 because he made and received payment on a claim under an AIG Travel Guard travel insurance policy for the tickets alleged in the Complaint.

### FIFTH ADDITIONAL DEFENSE

Plaintiffs' and the putative Class Members' damages are limited or excluded in accordance with United's Contract of Carriage and all terms and conditions directly and indirectly referenced therein.

### SIXTH ADDITIONAL DEFENSE

United does not owe a refund under its Contract of Carriage to any putative Class Member who failed to request one.

### SEVENTH ADDITIONAL DEFENSE

The claims of Plaintiffs and any putative Class Members who previously received a refund for their cancelled or significantly changed flights are barred by that prior payment.

### EIGHTH ADDITIONAL DEFENSE

Any recovery received by Plaintiffs and any putative Class Member should be set off against the amount of any refunds they received.

## NINTH ADDITIONAL DEFENSE

The claims of Plaintiffs and putative Class Members claims are preempted, in whole or in part, by federal law, including the Federal Aviation Act of 1958 as amended (P.L. 85-726, 72 Stat. 731, formerly codified at 49 U.S.C. §§ 1301, *et seq.*), and the Airline Deregulation Act of 1978 (codified as amended at 49 U.S.C. § 40101).

## TENTH ADDITIONAL DEFENSE

Plaintiffs and some or all of the putative Class Members have failed to mitigate their damages.

## ELEVENTH ADDITIONAL DEFENSE

The claims of Plaintiffs and some or all of the putative Class Members are barred by the equitable doctrines of laches, estoppel, waiver, or ratification.

## **JURY DEMAND**

United requests trial by jury on all issues so triable.


Respectfully submitted,

Dated:  March 29, 2021

*/s/ Sondra A. Hemeryck*
Patricia B. Holmes
Sondra A. Hemeryck
Valerie Brummel
RILEY SAFER HOLMES & CANCILA, LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
(312) 471-8700
pholmes@rshc-law.com
shemeryck@rshc-law.com
vbrummel@rshc-law.com

*Attorneys for Defendant United Airlines, Inc.*

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on March 29, 2021, I caused a true and correct copy of the foregoing to be filed electronically by CM/ECF, which caused notice to be sent to all counsel of record.


*/s/ Sondra A. Hemeryck*
Sondra A. Hemeryck