**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARK HANSEN AND JASON BUFFER, | |
| Plaintiffs, | No. 20 cv 2142 |
| v. | Judge Thomas M. Durkin |
| UNITED AIRLINES, INC., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Mark Hansen and Jacob Buffer filed this putative nationwide class action alleging breach of contract by defendant United Airlines, Inc. ("United") for failure to refund travel fares in the wake of the COVID-19 pandemic. Now before the Court is United's motion to strike the putative class allegations, R. 73. For the following reasons, the motion is denied.

## Background

This case arises out of the numerous United flight cancellations during the COVID-19 pandemic. Plaintiffs allege they sought refunds from United for cancelled travel plans but were offered only credits for future travel. Plaintiffs allege United's refusal to extend refunds constitutes a breach of its Contract of Carriage ("COC").[1]

---

[1] Additional background information is set forth in the Court's February 12, 2021 Memorandum Opinion and Order. R. 65.

**United's Contract of Carriage**

The COC groups cancellations into two categories: "Voluntary" cancellations and "Involuntary" cancellations. R. 41-2 at 82-87. For a "Voluntary" cancellation of a refundable ticket, the COC allows for a refund. However, there is no refund for a "Voluntary" cancellation of a non-refundable ticket. *Id.* at 86-87. Instead, the COC provides that United may allow part of the non-refundable fare to be applied to purchases of future travel, like a travel credit. *Id.* at 87. An "Involuntary" cancellation—a cancellation initiated by United—falls into one of three categories: (1) a "Force Majeure Event;" (2) a "Schedule Change;" or (3) "Irregular Operations." If United cancels a flight due to a Force Majeure Event, ticketed passengers are entitled to travel credit but no refund. *Id.* at 73-74. But if a cancellation is due to a Schedule Change or Irregular Operations, where affected passengers are not rebooked on another flight within the contractually required timeframe, United must issue a refund "upon request." *Id.*

The COC defines a "Force Majeure Event" as:

a. Any condition beyond [United's] control including, but not limited to, meteorological or geological conditions, acts of God, riots, terrorist activities, civil commotions, embargoes, wars, hostilities, disturbances, or unsettled international conditions, either actual, anticipated, threatened or reported, or any delay, demand, circumstances, or requirement due directly or indirectly to such condition;

b. Any strike, work stoppage, slowdown, lockout, or any other labor- related dispute involving or affecting [United's] services;

c. Any governmental regulation, demand or requirement;

d. Any shortage of labor, fuel, or facilities of [United] or others;

e. Damage to [United's] Aircraft or equipment caused by another party;

f. Any emergency situation requiring immediate care or protection for a person or property; or

g. Any event not reasonably foreseen, anticipated, or predicted by [United].

*Id.* at 72. A "Schedule Change" is defined as:

> [A]n advance change in [United's] schedule (including a change in operating carrier or itinerary) that is not a unique event such as Irregular Operations or Force Majeure Event.

*Id.* at 71. Finally, "Irregular Operations" are:

> [A]ny of the following irregularities:
>     a. Delay in scheduled departure or arrival of a carrier's flight resulting in a Misconnection;
>     b. Flight or service cancellation, omission of a scheduled stop, or any other delay or interruption in the scheduled operation of a carrier's flight;
>     c. Substitution of aircraft type that provides different classes of service or different seat configurations;
>     d. Schedule changes which require Rerouting of Passengers at departure time of the original flight; or
>     e. Cancellation of a reservation by [United] pursuant to Rule 5.

*Id.* at 72-73.

## **Proposed Class Definition**

Plaintiffs' complaint alleges a breach of contract and seeks refunds on behalf of a proposed class. The proposed class definition is currently as follows:

> All persons in the United States that purchased tickets for travel on United Airlines flights scheduled to operate to, from, or within the United States from March 1, 2020, to the date of class certification and who were not issued a refund for cancelled and/or significantly changed flights on which the passenger does not travel. R. 41 at ¶ 85.

In the alternative, Plaintiffs assert subclass claims on behalf of class members in their respective home states. *Id*.

## **Plaintiff Buffer's Claim**

Mr. Buffer purchased two roundtrip tickets for travel beginning on March 19, 2020, from New York City to Athens, Greece via Frankfurt, Germany. R. 41 at 6, ¶ 29. His tickets cost $668.00. *Id*. About four days before his departure, a United

3

representative informed Mr. Buffer that at least one leg of his trip was cancelled and offered him a rebooking or cancellation of the remainder of his trip with flight credits. *Id.* at ¶ 30. Mr. Buffer alleges he declined the offer for credits, and United denied his request for a refund. *Id.*

**Plaintiff Hansen's Claim**

Mr. Hansen, through travel booking website Expedia, purchased four roundtrip United tickets for travel on March 28, 2020, from Vancouver, British Columbia, to Liberia, Costa Rica, with a connecting flight in Houston, Texas. *Id.* at 5, ¶¶ 21-22. Mr. Hansen paid $1,483.40 for his tickets. *Id.* at ¶ 22. In the days leading up to the trip, United changed Mr. Hansen's itinerary several times. United then cancelled a portion of his itinerary, and ultimately cancelled the remainder of his trip two days before departure. *Id.* at ¶ 23. United issued Mr. Hansen a flight credit. *Id.* Mr. Hansen contacted both Expedia and United for a refund, to no avail. *Id.* at 6, ¶ 24.

**United's Motion to Dismiss**

On February 12, 2021, the Court granted in part and denied in part United's motion to dismiss the complaint. R. 65. The Court dismissed former Plaintiff Rudolph's claim, as well as Plaintiff Hansen's claim to the extent he sought a refund for the portions of his itinerary that involved an arrival in or departure from Costa Rica. *Id.* at 21. The Court gave Plaintiffs a chance to amend the aspects of their complaint that were dismissed without prejudice. *Id.* In a telephone status hearing

on February 16, 2021, Plaintiffs indicated they would not be amending the complaint. R. 66. On March 12, 2021, United filed the instant motion to strike.[2] R. 73.

## Legal Standard

To obtain class certification under Rule 23(a), one or more members of a class may sue or be sued as representative parties only if:

> "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (2) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

Fed. R. Civ. P. 23(a). In addition to satisfying Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation, class allegations must also satisfy one subsection of Rule 23(b). *See Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009). Here, Plaintiffs seek certification under Rule 23(b)(3), which provides that a class action may be maintained if:[3]

> [T]he court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Predominance under Rule 23(b) requires a qualitative decision as to whether "common questions represent a significant aspect of [a] case and … can be resolved

---

[2] Ten days after filing the instant motion to strike, United also filed a motion to stay discovery pending a ruling on the motion to strike. R. 76. Nine days after that, United filed a motion for summary judgment. R. 80. The motion for summary judgment has not yet been fully briefed, and the motion to stay discovery is denied as moot in light of this ruling.

[3] The complaint alleged that certification was proper under Fed. R. Civ. P. 23(b)(2) as well, but neither Plaintiffs nor United addressed it in connection with the motion to strike. R. 41 at 20.

for all members of [a] class in a single adjudication." *Messner* v. *Northshore University HealthSystem,* 669 F.3d at 815.

Rule 23(c)(1)(A) provides that at "an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Although typically it will not be practicable for the court to do so at the pleading stage, there are times when the complaint makes it clear that class certification is inappropriate. *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829-33 (N.D. Ill. 2013); *see also Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) (consistent with Rule 23(c)(1)(A), "a court may deny class certification even before the plaintiff files a motion requesting certification."). Because the plaintiffs in such instances have not had the benefit of discovery, a motion to strike class allegations at the pleading stage will only be granted where the plaintiffs' class allegations are facially and inherently deficient. *See Bohn*, 2013 WL 3975126, at *5 (collecting cases). If the dispute concerning class certification is factual in nature, a pre-discovery motion to strike is premature. *See Wright v. Family Dollar, Inc.*, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010) (collecting cases).

Plaintiffs have not yet filed a motion for class certification. Accordingly, this Court's review is limited to whether the class allegations in the complaint, R. 41, are facially and inherently defective to establish a class action.

## Analysis

As a preliminary matter, Plaintiffs argue that Fed. R. Civ. P. 12(f), which allows the Court to strike "any insufficient defense or any redundant, immaterial,

impertinent, or scandalous matter," governs United's motion to strike, and that United has waived any objections to the class allegations for failure to move to strike contemporaneously with its motion to dismiss. R. 83 at 5. Plaintiffs are incorrect. Courts in this District evaluate motions to strike class allegations under Rule 23, not Rule 12(f).[4] The Court therefore declines to deny United's motion on this basis.

United makes three principal arguments in support of its motion to strike. First, United argues the proposed class definition is improper. R. 74 at 7. Second, United contends the complaint lacks questions of law or fact common to the class as required by Rule 23(a). *Id*. at 8. Third, United argues that any common questions of law or fact do not predominate over individual questions and that a class action is not superior to other available methods of adjudicating the controversy under Rule 23(b)(3). *Id*. at 11. The Court addresses these arguments in turn.

## I.     Plaintiffs' Proposed Class Definition

United argues at the outset that Plaintiffs' proposed class definition is overly broad. As discussed, the proposed definition includes:

> All persons in the United States that purchased tickets for travel on United Airlines flights scheduled to operate to, from, or within the United States from March 1, 2020, to the date of class certification and who were not issued a refund for cancelled and/or significantly changed flights on which the passenger does not travel.

---

[4] See, e.g., *Buonomo v. Optimum Outcome, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829-33 (N.D. Ill. 2013); *Bohn v. Boiron, Inc.*, 2013 WL 3975126, at *5 (N.D. Ill. Aug. 1, 2013); *Valentine v. WideOpen West Fin., LLC*, 288 F.R.D. 407, 414 (N.D. Ill. 2012).

R. 41 at ¶ 85. United points out that the proposed definition does not reflect several key COC provisions governing refund eligibility. First, the proposed definition is not limited to passengers affected by involuntary cancellations despite the COC's express provision that there are no refunds in the event of a voluntary cancellation. R. 74 at 7-8. Second, the proposed definition is not limited to involuntary cancellations due to a Schedule Change or Irregular Operations, and as a result includes cancellations caused by a Force Majeure Event, despite the fact that the COC does not provide a refund for such passengers. *Id.* at 8. Based on these arguments, United contends Plaintiffs have not identified a properly defined class. *Id.* United cites *Vann v. Dolly, Inc.*, 2020 WL 902831 at *5 (N.D. Ill. Feb. 25, 2020) in urging the Court to strike the class allegations.

United's reliance on *Vann* is not persuasive as the defendant there asserted that the plaintiffs' class allegations lacked the third element of Rule 23(a)—typicality—because of the allegations' overbreadth. *Id.* at *5. Further, the case relied on in *Vann* to support the court's conclusion involved a clear example of class allegations which were facially defective and illustrated the impossibility of stating a class claim. *See Miles v. Am. Honda Motor Co., Inc.*, 2017 WL 4742193, *5 (N.D. Ill. 2017) (striking class allegations where litigation would involve determining warranty, unjust enrichment, and misrepresentation laws of all 50 states).

The Court does not view Plaintiffs' proposed class to be so unmanageable as it would be appropriate to strike the allegations at the pleading stage. In addition, United filed the instant motion at an early stage of the case, before the Court had

ruled on its motion to dismiss, before discovery, and before Plaintiffs have moved for class certification. While United's arguments may have some merit, it is more appropriate to address the class definition at a later stage in the case.

Furthermore, if United is correct and the Court later determines that Plaintiffs' proposed class definition needs modification, the Court will have broad discretion to address such modifications. *In re Motorola Securities Litigation*, 644 F.3d 511, 518 (7th Cir. 2011); *see also Murray v. E*Trade Financial Corp.*, 2006 WL 3354039 (N.D. Ill. Nov. 20, 2006) (After certifying a class, a court retains broad power to modify the definition if it believes the definition is inadequate). The Court will not, at this early stage, strike the Plaintiffs' class allegations because of the proposed definition's alleged overbreadth.

## II.     Commonality under Rule 23(a)

United argues that the class allegations fail to meet Rule 23(a)'s commonality requirement. Specifically, United argues that Plaintiffs' list of common legal and factual questions, R. 41 at ¶ 89, do not address an issue central to the validity of each one of the claims, nor do they allow for class-wide resolution.

Commonality requires a plaintiff to show that "questions of law or fact common to the class" exist. Fed. R. Civ. P. 23(a)(2). To establish commonality, a plaintiff must do more than merely raise "common questions—even in droves." *Wal-Mart Inc, v. Dukes*, 564 U.S. 388, 350 (2011) (internal quotations omitted). Rather, Plaintiffs must show that a class-wide proceeding will "generate common answers apt to drive the resolution of the litigation." *Id*. If the members of a proposed class will need to present

evidence that varies from member to member, then it is an individual question. *Messner,* 669 F.3d at 815. If the same evidence is sufficient for each member to make a prima facie showing, then it becomes a common question. *Id.*

United takes issue with a number of Plaintiffs' list of common legal and factual questions, arguing they fall short of the standard set forth in *Dukes*. R. 74 at 9. Specifically, United challenges the following questions, arguing that none address the central issues in this case: "[w]hether Defendants formed contracts with Plaintiffs and Class Members through that act of selling them tickets for air travel," "[w]hether Defendants acted in good faith and dealt fairly with passengers under their contracts," and "[w]hether Illinois law applies to the nationwide Class." *Id.* at 10. United next argues that the remaining questions cannot be answered by common proof, contending that just because the answers to the questions may be in United's records, the analysis is still an individualized one. *Id.* United makes this argument as to the following questions: "[w]hether Defendants have denied refunds to Class members for canceled and/or significantly delayed flights," "[w]hether Defendants' conduct breached one or more terms of Defendants' contracts," "[w]hether Defendants owe refunds to Plaintiffs and Class Members for cancelled and/or significantly delayed flights rather than a credit on a future flight," and "[t]he nature and extent of damages, equitable relief, and other remedies to which Defendants' conduct entitles Plaintiffs and Class Members." *Id.*

Deciding the issue of whether these are questions of law or fact common to the class is premature. United fails to present any specific evidence—as opposed to mere

speculation—that there is no commonality among the class allegations. *Buonomo*, 301 F.R.D. at 298. This is unsurprising, given that United has resisted class discovery while its motion to strike is pending. *See id.* Indeed, in a similar case in this district involving cancelled flights during the pandemic, the court held that even where a defendant produced extrinsic evidence to support its argument against the existence of a discoverable class, such a conclusion is better to be made at the class certification stage. *See Levey v. Concesionaria Vuela Compania de Aviacion, S.A.P.I. de. C.V.*, 2021 WL 112702 at \*6 (N.D. Ill. Mar. 29, 2021).

Finally, courts generally have denied motions to strike similar Rule 23(a) class allegations before certification. *See, e.g.*, *Dowding v. Nationwide Mutual Insurance Company*, 490 F. Supp. 3d 1291 (N.D. Ill. Sep. 29, 2020) (denying a motion to strike class allegations, even while noting "some doubt" about whether allegations could satisfy the commonality requirement, noting the high burden the defendant faced and plaintiff had not "yet had the benefit of class discovery by which she may be able to refine her allegations"); *Bombin v. Southwest Airlines, Co.* 2021 WL 1174561 at \*8 (E.D. Pa. Mar. 29, 2021) (denying motion to strike COVID-19 refund class allegations, albeit on ascertainability, to give the parties a chance to litigate the issue during the certification stage); *Herrera v. Cathay Pacific Airlines Ltd.*, 2021 WL 673448, at \*13 (N.D. Cal. Feb. 21, 2021) (concluding that challenges to a COVID-19 refund class were more appropriately addressed at the certification stage, as the case was not "one of the rare cases in which it is appropriate to test class allegations at the pleading stage."). The same is true here. The question of commonality is better addressed at

the certification stage after the parties have had the benefit of discovery. United has not shown that the class allegations in the complaint are so facially and inherently defective as to prevent a class claim, and the motion will not be granted on this basis. United may re-raise the issue at the class certification stage.

## III.    Predominance under Rule 23(b)(3)

United argues Plaintiffs cannot show that common questions of law or fact predominate over any questions affecting only individual class members. Fed. R. Civ. P. 23(b)(3). There is no mathematical or mechanical test for predominance. *Messner*, 669 F.3d at 814. The Supreme Court has discussed predominance in broad terms, explaining that the Rule 23(b)(3) "inquiry trains on the legal or factual questions that qualify each class member's case as a genuine controversy," the purpose being to determine whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). Rule 23(b)(3)'s predominance requirement is satisfied when common questions represent a significant aspect of a case and can be resolved for all members of a class in a single adjudication. *Messner*, 669 F.3d 802 at 815. Therefore, while similar to Rule 23(a)'s commonality requirement, the predominance criterion is far more demanding. *Amchem*, 521 U.S. 591 at 624 (1997). Indeed, "Plaintiffs bear the burden of showing that a proposed class satisfies the Rule 23 requirements," *Messner*, 669 F.3d at 811, and must do so "through evidentiary proof." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Predominance fails where "affirmative defenses will require a person-by-person evaluation of conduct to determine whether [a defense] precludes individual

recovery." *Clark v. Experian Info., Inc.*, 233 F.R.D. 508, 512 (N.D. Ill. 2005), *aff'd sub nom. Clark v. Experian Info. Sols., Inc.*, 256 F. App'x 818 (7th Cir. 2007).

United argues that at the motion to dismiss stage, the Court had to examine the complaint's particularized factual allegations about each plaintiff to determine whether they had sufficiently pled a valid breach of contract claim. R. 74 at 12. United restates much of the Court's analysis in its order on the motion to dismiss, R. 65, to support its argument that each plaintiff's claim contained individualized, fact-intensive inquiries. R. 74 at 13. But the need to examine the particular facts of the case in order to analyze predominance demonstrates why United's motion to strike is premature. *See Figueroa*, 454 F. Supp. 3d at 790; *see Murdock-Alexander v. Tempsnow Emp't & Placement Servs., LLC*, 2016 WL 6833961 at *5 (N.D. Ill. Nov. 21, 2016) ("[W]hen a court considers predominance, it may venture into the territory of a claim's merits and evaluate the nature of the evidence. In most cases, some level of discovery is essential to such an evaluation."). At most, those questions may warrant further narrowing of the class definition at the certification stage once discovery sheds light on whether any putative class members are affected by those questions. *See id*; *Messner*, 669 F.3d at 825 ("Defining a class as to avoid . . . being over-inclusive . . . is more of an art than a science . . . [and] can and often should be solved by refining the class definition rather than flatly denying class certification on that basis.").

Finally, United argues its affirmative defenses demonstrate that the claims of each putative class member will need to be assessed individually to determine

13

whether the member has already been compensated for the cancelled flights through other means—such as successfully disputing the credit card charge or receiving a travel insurance settlement. R. 74 at 14. United *cites In re NCAA Student-Athlete Concussion Inj. Litig.*, 314 F.R.D. 580, 593 (N.D. Ill. 2016), to support its claim, but that case was before the court at the certification stage (and therefore, with the benefit of discovery). Additionally, the affirmative defenses in *In re NCAA* were raised because the operative law governing the defenses (comparative negligence and assumption of risk) may have varied materially from state to state. *Id*. at 595. United makes no such argument here, and simply reiterates its argument that the individual claims of each class member will need to be assessed.[5] The Court has addressed this same contention when discussing United's commonality and predominance arguments. As such, the Court remains unconvinced that the complaint is so defective as to warrant striking the class action claims at the pleading stage.

---

[5] United raises an affirmative defense of individualized damages, but that is not a reason to deny certification of a class. *See Gomez v. PNC Bank*, 306 F.R.D. 156, 169-70 (N.D. Ill. 2014), *aff'd sub nom. Bell v. PNC Bank*, 800 F.3d 360, 379-80 (7th Cir. 2015) ("it is well established … that the presence of individualized questions regarding damages does not prevent certification") (citing *Messner*, 669 F.3d at 815).

## Conclusion

For the foregoing reasons, United's motion to strike class allegations from the First Amended Complaint, R. 73, is denied without prejudice to it re-raising these issues at the certification stage.

ENTERED:

Honorable Thomas M. Durkin
United States District Judge

Dated: October 5, 2021