**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARK HANSEN, and JASON BUFFER individually and on behalf of all others similarly situated, | Case No. 1:20-cv-02142 |
| Plaintiffs, | Hon. Thomas M. Durkin |
| v. | Magistrate Judge Jeffrey T. Gilbert |
| UNITED AIRLINES, INC., | |
| Defendant. | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO COMPEL

In their Motion to Compel, Plaintiffs established that the requests at issue—Request for Production Nos. 4-13 and 23—seek documents and data relevant to both merits and class certification issues, and are proportional to the needs of the case. United Airlines, Inc.'s ("United") arguments to the contrary miss the mark. *See* United's Opp. Pl.'s Mot. to Compel ("Response"), ECF 116. Neither United's unsubstantiated claims of burden nor its narrow and self-serving interpretation of pertinent case law and the legal and factual questions at issue provide grounds on which to withhold the highly probative evidence Plaintiffs seek. Plaintiffs' proposed time period for discovery is eminently reasonable, and United has not established that the documents Plaintiffs seek—financial analyses and communications concerning, *inter alia*, United's interpretation of its Contract of Carriage and changes to relevant policies and practices—do not concern the issues central to the case. Plaintiffs respectfully request the Court grant their motion.

**A.      Plaintiffs' Proposed Relevant Time Period for Purposes of Discovery Is Reasonable**

As Plaintiffs explained in their opening brief, they seek pre-March 1, 2020 discovery only regarding a handful of requests, namely, those that seek documents concerning: United's

understanding of its refund obligations and its Contract of Carriage before March 2020 (RFP Nos. 3 and 5); communications between United's officers and directors regarding United's refund policies (RFP Nos. 5-6); internal communications regarding customer complaints about refunds (RFP No. 4); and whether United changed its customer service policies after the onset of the pandemic (RFP Nos. 15-16). Plaintiffs do so because there is no guarantee that United discussed these relevant matters in a non-privileged context only after the pandemic impacted its business operations in March 2020.

Allowing pre-pandemic discovery concerning these matters is needed to afford Plaintiffs a full and fair opportunity to explore United's policies and practices *before* the pandemic, and assess (consistent with Plaintiffs' allegations) if and how United changed those policies and practices *after* the pandemic began to avoid its contractual obligations and benefit its bottom line. Documents that merely "evidenc[e] its refund policies and procedures that were in effect as of March 1, 2020" will not suffice. Response at p.5. Plaintiffs seek, and are entitled to, more: responsive documents created from January 1, 2019 through the present.

United nevertheless continues to refuse to produce documents outside of a limited 9-month window on grounds that Plaintiffs' proposed time period is unduly burdensome. But United's claims are unavailing. The objecting party bears the burden of showing why discovery is improper, *Trading Techs. Int'l, Inc. v. eSpeed Inc.,* No. 04C5312, 2005 WLS 1300778, at *1 (N.D. Ill. April 28, 2005), and "[a] party claiming undue burden must do more than intone the phrase." *Jenkins v. White Castle Mgmt. Co*., No. 12-cv-7273, 2014 WL 3809763, at *2 (N.D. Ill. Aug. 4, 2014). Such claims require "a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *Id.* (citations omitted). United's bald assertions fail to meet its burden.

The only request for which United makes any effort to substantiate its burden claims concerns structured data, and comes in a single footnote in which United asserts that it would be burdened if required to produce 44 million rows of data. Response at p.7, fn.3. Yet, United makes no effort to "indicate[] how large the files are, why it would be difficult to gather the . . . records, what expense would be incurred by responding to Plaintiff's request, or why Defendant's resources are so limited that reviewing [this data] . . . would be oppressive." *Cusic v. Glass Mountain Capital LLC*, 2013 WL 10209048, at *2 (N.D. Ill. June 26, 2013) (rejecting undue burden argument). United likely did not because it cannot, whether with respect to that request or any of the others at issue.

Indeed, the "burden" associated with reviewing and producing responsive documents and data in this case—efforts limited to a scant few custodians and requests, and a targeted time period—pales in comparison to those to which defendants in complex class actions routinely are subjected. *See, e.g., In re Brand Name Prescription Drugs Antitrust Litigation*, 123 F.3d 599, 614 (7th Cir. 1997) (discovery involved more than 1,000 depositions and over fifty million pages of documents); *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 351, 360–61 (N.D. Ill. 2005); *In re Linerboard Antitrust Litigation,* 296 F. Supp. 2d 568, 577 (E.D. Pa. 2003) (discovery required production of millions of pages of documents); *In re Fine Paper Antitrust Litigation*, 685 F.2d 810, 818 (3rd Cir. 1982) (court permitted taking of 270 depositions and production of nearly two million documents in complex, nationwide antitrust claim). Producing pre-pandemic documents identified in central repositories or via search terms in response to a small subset of Plaintiffs' requests would impose little burden on United.

Likewise, Plaintiffs' request that discovery extend to the present is reasonable and does not unduly burden United, a position for which United yet again fails to marshal factual or legal

support. The foregoing is particularly true regarding structured data concerning flights booked before June 2020 but scheduled to depart up to a year later. Those purchases would have been subject to the same Contract of Carriage in place in March 1, 2020; those flights would have been equally susceptible to COVID-related cancellations; and entities typically can compile structured data with minimal effort. Accordingly, Plaintiffs respectfully request the Court compel discovery for the relevant time period from January 1, 2019 to the present.

**B.      RFP No. 23 Requests Documents that Identify the Types of Contact Information that United Collects Regarding Passengers**

Instead of addressing RFP No. 23 *as written*, United focuses on Plaintiffs' offer to compromise on the scope of RFP No. 23 in order to avoid motion practice. United asserts that because Plaintiffs' offered to accept less than a complete production in response to RFP No. 23, Plaintiffs somehow conceded its impropriety. Plaintiffs' offer of compromise was just that: a compromise. That Plaintiffs offered United an easier path to respond to RFP No. 23 does not change the scope of the Request or render it objectionable.[1]

Even now, after Plaintiffs explained RFP No. 23 in multiple meet and confer conferences, letters, and in their written submission to the Court, United fails to recognize the difference between what RFP No. 23 seeks, and what United objects to providing. United wrongly asserts that RFP No. 23 requests individual class members' actual contact information, ignoring that RFP No. 23, by its very wording, seeks documents "sufficient to identify" information that United maintains regarding passengers on canceled or delayed flights.

Instead of addressing the wording of RPF No. 23, United ignores "sufficient to identify" and narrowly interprets "contact information," to simply (and wrongfully) assert that RFP No. 23

---

[1] Regardless, United rejected Plaintiffs' offer. As a result, Plaintiffs now request the Court to compel production of the full scope of documents and data sought by RFP No. 23.

seeks only individual contact information, and that any other information is an attempt to "rewrite" the Request. However, the mere fact that United does not have to provide certain documents—here, Class members' individual contact information—does not relieve United of its obligation to respond to the remainder of the request. *See* Fed. R. Civ. P. 34(b)(2)(C) ("An objection to part of a request must specify the part and permit inspection of the rest.").

Indeed, in opposing Plaintiffs' motion, United instead ignores the phrase "sufficient to identify," failing to so much as mention it in its brief. *See generally* Response at pp.8-10. As Plaintiffs have repeatedly noted, RFP No. 23 requests documents "sufficient to identify" contact information for a specific group of passengers: the types of contact information that United maintains about its passengers. And although producing documents that "identify" the types of contact information available may require United to produce documents (*i.e.*, data) reflecting that information, Plaintiffs have offered United several ways to balance its confidentiality concerns while still producing the information to which Plaintiffs are entitled. For example, if United maintains telephone numbers for its passengers, it can redact or withhold those fields when producing documents "sufficient to show" the types of data it possesses. Or, as Plaintiffs proposed, United could simply produce a document reflecting the fields it maintains in relevant databases.

United's own Response also undermines its claim that documents responsive to RFP No. 23 are irrelevant. In opposing Plaintiffs' motion, United asserts that Plaintiffs' proposed Class is not identifiable through United's records. *See* Response at p.8, n.4. United has raised this assertion multiple times. *See* Motion to Strike, ECF 74, p.10; Reply to Motion to Strike, ECF 91, pp.8-9. However, United undoubtedly tracks data concerning cancelled and delayed flights, the flights on which passengers are booked, and whether passengers requested or received refunds or credits from United—data sets that presumably can be married. Documents sufficient to identify the types

of contact information United maintains regarding passengers on flights that United cancelled thus will aide Plaintiffs in reconciling those various data sets and probing the veracity of United's anticipated class certification defense.[2]

RFP No. 23 does not seek the contract information of individual passengers. It requests United produce documents that are "sufficient to identify"—that is, the types of—contact information that United collects. Not only are those documents relevant to class certification issues such as the feasibility of identifying and providing notice to Class members, but also whether United even records when an individual requests that United issue a refund because United canceled or delayed the individual's flight. The Court should overrule United's objection and compel it to produce documents responsive to RFP No. 23.

## C.     The Court Should Compel Production of Communications Concerning United's Refund Policies When it Cancels or Significant Delays Flights

First, in support of its blanket refusal to produce internal communications concerning the development, interpretation, and implementation of the policies it has agreed to produce, United argues that extrinsic evidence of contractual terms can be considered only if the contract is ambiguous. Response at p.11. United's sole support—*Lewitton v. ITA Software*, Inc., 585 F.3d 377, 380 (7th Cir. 2009)—is inapposite. In *Lewitton*, one party asserted that a term should be defined based on "the negotiations that preceded the contract." *Id.* at 380-81. The Seventh Circuit rejected that argument and held that the integration clause superseded those negotiations, meaning the term was given "its ordinary meaning." *Id.* at 380.

---

[2] Likewise United does not contest that its remaining objections to RFP No. 23 (overbreadth, relevance, and proportionality) are boilerplate. It thereby waived those objections. *Belcastro v. United Airlines, Inc.*, No. 17-cv-1682, 2019 WL 1651709, *5 (N.D. Ill. Apr. 17, 2019) (defendant waived a discovery objection by failing to address the issue in its response brief).

Here, as the Court recognized, United's attempt to read "Force Majeure Event too broadly could gut the Schedule Change and Irregular Operations provisions." Order, ECF No. 65, at p.15. Plaintiffs seek documents and ESI that will rebut United's anticipated defense that it routinely altered its schedule to the detriment of its passengers due to Force Majeure Events rather than financial reasons. As the Court recognized, a Force Majeure Event "must have directly and proximately caused the [flight] cancellations." *Id.* at p.16. The communications that Plaintiffs seek in response to RFP Nos. 5 and 6 directly relate those issues.

For example, if before the pandemic, United's directors discussed whether it was required to issue refunds when Untied cancels flights due to a lack of demand, those communications are highly relevant to whether United is required to issue refunds when United canceled flights during the pandemic for the same reasons. Similarly, if United's officers discussed the financial impact of undersold flights and whether it is required to issue refunds if United cancels those flights, those communications also go to the heart of Plaintiffs' claims. *See Kobelco Metal Powder of Am., Inc. v. The Energy Co-op., Inc.*, No. IP 01-0051-CHK, 2001 WL 1397311, at *4 (S.D. Ind. Oct. 30, 2001) (compelling defendant to produce documents related defendant's "suggestion, proposal, intention, or action to discontinue or alter the term or terms of sales contracts" because they "go to the heart of [defendant]'s *force majeure* defense"). The same is true concerning United's prior view of the amount it could delay a flight before a passenger is eligible for a full refund. Internal communications regarding United's past and present understanding of its refund obligations under the Contract of Carriage are relevant to the parties' claims and defenses, and therefore are discoverable.

Second, the motives underlying United's scheduling decisions, and whether those decisions may have entitled passengers to refunds, are plainly relevant to whether it breached the

Contract. As Plaintiffs explained in their opening brief, "if United weighed the benefits of offering only credits when passengers may have been entitled to refunds, those deliberations would help establish that United intentionally mischaracterized cancellations in order to avoid its contractual duties." Motion, ECF No. 111, at p.13.

*A H Guys, LLC v. Halal Guys Franchise, Inc.*, No. 19 C 4974, 2020 WL 3578026 (N.D. Ill. July 1, 2020) is instructive. There, the court observed that internal communications "are often replete with unrehearsed, spontaneous statements that surpass in simplicity and frankness and ease of understanding other more complicated bits of evidence." *Id.* at *2. Here, too, communications between United employees "provide the proverbial 'smoking gun'" for Plaintiffs' breach of contract claims. *Id.* Communications concerning the financial impact of changing schedules and/or providing refunds, and how and why United characterizes cancellations or delays, and the meaning of United's Contract of Carriage could confirm its schedule changes were not, as United claims, Force Majeure Events. *Id.* United admits as much elsewhere in its brief: "United does not dispute that documents relating to analyses of costs that could be saved by cancelling or rescheduling flights as a result of the coronavirus pandemic are relevant and discoverable." Response at p.15. If documents concerning financial analyses are relevant and discoverable, so too is the discovery these Requests seek; discovery Judge Durkin noted would answer the question of whether the cancellations at issue occurred because of economic considerations, or were due to restrictions and warnings related to the pandemic . . . ." Order, ECF No. 65, p.17.[3]

The cases United relies on are inapposite. In *Winniczek v. Nagelberg*, the Seventh Circuit merely observed that scienter "usually" is immaterial in the context of a breach of contract claim. 394 F.3d 505, 509 (7th Cir. 2005), *as amended* (Feb. 3, 2005). The court did ***not*** hold that

---

[3] Indeed, "whether the cancellations at issue occurred because of economic considerations," Order.p.17, directly implicates United's motivation for the flight changes and whether to provide refunds.

statements concerning a party's conduct, its own interpretation of ambiguous terms in a contract of adhesion, and whether it did or would breach a contract are *per se* irrelevant and not discoverable. Moreover, as noted above, the Court's dismissal order plainly puts United's financial motives at issue.

*Gemini Ins. Co. v. Pelican Gen. Ins. Agency, LLC* similarly is irrelevant. There, the plaintiff moved for summary judgment, and the court found for the plaintiff despite the defendant's claim that it "did not have knowledge it was breaching the [contracts.]" No. 16 C 2780, 2018 WL 2728499, at *56 (N.D. Ill. June 6, 2018). Here, however, the discovery sought bears on whether United breached its contracts with the class.[4] Indeed, the mere fact that United canceled or changed flights does not, alone, establish a breach of the contract. Instead, the reasons why United changed the flights governs whether the changes were Scheduled Changes/Irregular Operations, or Force Majeure Events. Unless United will admit that all flight cancellations and delays after March 1, 2020, were due to economic considerations, then its motivation in changing the flights is relevant.

Third, United argues that internal communications related to whether cancellations were Force Majeure Events are not relevant because the contract is not ambiguous as to what a Force Majeure Event is, or what Irregular Operations or Schedule Changes are. Response at p.13. Again, Plaintiffs are alleging that the cancellations were not Force Majeure Events, and that United knew they were not Force Majeure Events, but that it used Force Majeure Event as pretext for the cancellations to avoid providing refunds. CAC, ¶¶ 54-61. That is, Plaintiffs do not argue that those

---

[4] The plaintiff in *Mid-Am. Tile, Inc. v. Graniti Fiandre, S.P.A.*, brought a claim for the breach of good faith and fair dealing. No. 92 C 2309, 1992 WL 329460, at *3 (N.D. Ill. Nov. 4, 1992). On reply, plaintiff argued the claim was for "intentionally and willfully" breaching the contract at issue. The court ultimately dismissed the claim because "Illinois does not recognize a separate cause of action for breach of . . . [the] implied duty of good faith and fair dealing." *Id. Mid-Am Tile* is wholly irrelevant.

terms themselves are ambiguous, but instead how it is uncertain how United interpreted and applied those provisions both before and during the pandemic.

Further, documents and information produced by United demonstrate that United's interpretation of when it is obligated to provide a refund for schedule changes is inconsistent. Plaintiffs should be able to take discovery on the reasons for United's inconsistent interpretations of the contractual terms, and the internal communications about those changes are crucial. *See, e.g.*, Order, ECF No. 65, at p.17 (discovery is necessary to determine reason for flight cancellations); *Brantigan v. Depuy Spine, Inc.*, No. C08-0177RSL, 2008 WL 4279402, at *3 (W.D. Wash. Sept. 12, 2008) (holding defendant required to answer discovery on its interpretation of contract at issue); *Olin Hunt Specialty Prod., Inc. v. Advanced Delivery & Chem. Sys.*, No. 88 C 20364, 1989 WL 57769, at *2 (N.D. Ill. May 19, 1989) ("The underlying basis and facts of claims and defenses may be probed upon discovery and other pretrial procedures."); *see also* Defendant's Amended Answer and Additional Defenses, ECF No. 79, at p.34 (admitting the Contract of Carriage may entitle passengers to a refund for a significantly delayed flight).

United's belief that the data it will produce will allow Plaintiffs to "assess [whether] particular cancellations or delays should be classified under the [Contract of Carriage]," Response at p.13, is misguided. If the internal communications establish that United changed flights across the board to save costs (as Plaintiffs anticipate), or that before March 2020 United treated delays of more than a certain length as "Schedule Changes" that gave rise to a refund obligation, the parties and Court will not need to engage in a granular flight-by-flight analysis, as United will have essentially admitted the cancellations were not Force Majeure Events at all. Moreover, United's concessions about documents it is willing to produce does not change the relevance of RFP Nos.

5 and 6.[5] As such, the Court should compel United to produce internal communications responsive to RFP Nos. 5 and 6.

### D. United's Internal Communications Regarding Customer Complaints Are Relevant and Proportional to the Needs of the Case

Despite the obvious relevance of these documents, United refuses to search for or produce any internal communications regarding customer complaints. United notes it has agreed to produce customer complaints, refund policies and procedures, materials provided to customers, and training materials provided to United employees. Response at p.14. However, it is one thing for United to have a written policy to provide refunds when it cancels flights due to a Schedule Change, but, as Plaintiffs allege, United failed to do so despite requests from passengers for refunds. The internal communications concerning those materials are a necessary link—they will reflect changes in how United handled customer complaints and refund requests before and during the pandemic, and whether United complied with its written policies. Further, the internal communications may indicate that United failed to track all complaints and requests for refunds, which would demonstrate that producing the consumer complaints themselves undercounts the number of passengers who requested a refund. Those issues are relevant to both the merits of Plaintiffs claims, and establishing the claims on a class basis.

United argues some of the relevant internal communications will likely be privileged. Response at p.1. But that privilege potentially may apply does not preclude parties from taking discovery on a matter or render the requests uniquely burdensome. *See, e.g., Oxbow Carbon & Minerals LLC v. Union Pacific R.R. Co.,* 322 F.R.D. 1, 6-7 (D.D.C. 2017) (compelling additional, costly supplemental productions). Should United encounter privileged documents in responding

---

[5] Indeed, United's concession to produce certain documents about its decision making process for cancelling certain flights simply demonstrates that United should not be permitted to produce documents that may be helpful to its defenses, while refusing to produce documents that will undermine them.

to RFP No. 4, it need only include them in a privilege log. *See* Order Regarding the Disclosure of Privileged Info., ECF No. 97. It cannot, however, refuse to respond. Internal communications regarding customer complaints are relevant and discoverable.

**E.   United should be compelled to produce documents related to RFP Nos. 7-13**

United acknowledges that financial analyses responsive to RFP No. 27 (concerning potential revenue savings for cancelling flights) are discoverable, but, argues that RFP No. 27 obviates the need to produce documents in response to RFP Nos. 7-13. The basis of United's refusal is that, because RFP No. 7-13 relate to whether to provide credits or refunds for cancelled flights and not to whether to cancel or delay flights, they are not relevant. Response at pp.14-15. United is wrong.

First, these analyses relate to whether United cancelled flights to save on operating expenses. Specifically, RFP Nos. 7 and 10 seek financial analyses related to actual or projected losses from providing refunds to customers as a result of cancelled and/or significantly delayed flights as a result of the pandemic. Those analyses will be highly probative of whether any flights were cancelled due to a Force Majeure Event or a "desire to save on operating expenses." Indeed, the existence of such analyses—without even getting into the contents—are evidence that claims of a Force Majeure Event were merely a pretext for United's decision to cancel flights for economic considerations, and are plainly relevant to Plaintiffs' breach of contract claims.

Similarly, RFP Nos. 8-9 and 11-13 relate to United's decision to provide credits in lieu of refunds. United's decision to issue credits is directly related to its "desire to save on operating expenses" and undercuts any argument that certain flights were cancelled due to a Force Majeure Event. Moreover, RFP No. 13 seeks United's "analysis of the advantages and/or drawbacks to . . . providing a credit or voucher rather than a refund" directly bears on whether United breached the

Contract of Carriage, which obligated United to provide *refunds* and not credit. Responsive analyses will reveal that United recognized it had a refund obligation to Plaintiffs and the class, but decided against issuing refunds to protect United's bottom line.

Second, these requests are directly related to the elements of Fed. R. Civ. P. 23. Plaintiffs anticipate these documents will demonstrate that United cancelled flights across the board out of financial motivations, which would help establish that common issues related to United's treatment of cancellations predominate over any individual issues related to, for instance, a particular flight. United has asserted that the pandemic is a Force Majeure Event, *see* Amended Answer, ECF No. 79, at p.43 (asserting the class members' claims are barred by the force majeure provision of the Contract of Carriage), and Plaintiffs should be afforded the opportunity to test the merits of that defense. Indeed, if United's entire analysis of whether to cancel *all flights* because of COVID-19 was conducted through financial analyses, which is clearly not a Force Majeure Event, it demonstrates that *none* were cancelled due to a Force Majeure Event.

## CONCLUSION

United has failed to carry its burden and demonstrate that Plaintiffs' Requests are improper. It merely repeats the meritless arguments asserted in prior correspondence while conceding that certain documents and ESI are relevant and discoverable. Accordingly, Plaintiffs respectfully request that the Court grant this motion, compel United to provide documents, data, and ESI responsive to RFP Nos. 4-13, and 23, and for any other relief that is just under the circumstances.

Dated: March 21, 2022

Respectfully submitted,


By: *s/ Nickolas J. Hagman*

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
(206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski
Whitney K. Siehl
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
(708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

*Interim Co-Lead Counsel*

Daniel O. Herrera
Nickolas J. Hagman
CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP
135 South LaSalle Street, Suite 3210
Chicago, Illinois 60603
T: (312) 782-4880
F: (318) 782-4485
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

Bryan L. Clobes
CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP
205 N. Monroe St.
Media, Pennsylvania 19063
T: (215) 864-2800
bclobes@caffertyclobes.com
*Interim Co-Lead Counsel*

*-with-*
Joseph G. Sauder
Joseph B. Kenney
SAUDER SCHELKOPF LLC
1109 Lancaster Ave.
Berwyn, PA 19312
Telephone: (888)-711-9975
Facsimile: (610) 421-1326
jgs@sstriallawyers.com
jbk@sstriallawyers.com


*Additional Counsel for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I, Nickolas J. Hagman, an attorney, hereby certify that on March 21, 2022, service of the foregoing ***Plaintiffs' Reply in Support of Motion to Compel*** was accomplished pursuant to ECF as to Filing Users and I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User.

<u>*s/ Nickolas J. Hagman*</u>
Nickolas J. Hagman