**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| MARK HANSEN, and JASON BUFFER, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED AIRLINES, INC.,<br><br>Defendant. | Case No. 1:20-cv-02142<br><br>District Judge Thomas M. Durkin<br><br>Magistrate Judge Jeffrey T. Gilbert |

# PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

REDACTED VERSION FILED PUBLICLY
UNREDACTED VERSION FILED UNDER SEAL PER AGREED CONFIDENTIALITY ORDER (DKT. 96)

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ....... 1

II. FACTS COMMON TO THE CLASSES ....... 3

A. United's Contract of Carriage Uniformly Entitles Every Class Member to a Refund. ....... 3

B. United Cancels Thousands of Flights and Defies the Contract's Refund Provisions. ....... 6

C. United Cancelled Plaintiffs' Itineraries and Denied Their Requests for Refunds. ....... 11

D. Absent Class Members Can Be Identified through United's Records. ....... 11

III. STANDARD OF REVIEW ....... 14

IV. ARGUMENT ....... 14

A. Plaintiffs satisfy Rule 23(a)'s requirements. ....... 14

1. The classes satisfy the numerosity requirement. ....... 14

2. The Classes present common questions of law and fact. ....... 15

3. Plaintiffs' claims are typical of those of the Classes because they arise from the same course of conduct. ....... 16

4. Plaintiffs have, and will continue to, fairly and adequately represent the Classes because they have no conflicts of interest and are represented by experienced counsel. ....... 17

B. The Classes Meet the Requirements Rule 23(b)(3). ....... 18

1. Common issues predominate given the questions of law and fact at issue. ....... 19

2. A class action is superior to tens of thousands of individual actions arising out of United's policy of refund request denials. ....... 22

3. The proposed Classes also satisfy Rule 23(b)(2), because United has acted on grounds generally applicable to each Class. ....... 24

**V. CONCLUSION** ....... 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Phillips v. Sheriff of Cook Cnty.*,
828 F.3d 541 (7th Cir. 2016) ....................15

*In re Allstate Corp. Sec. Litig.*,
966 F.3d 595 (7th Cir. 2020) ....................14, 19

*Am. Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995)....................20

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)....................19, 23

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Fund*,
568 U.S. 455 (2013)....................19, 20

*Anderson v. Weinert Enterprises, Inc.*,
986 F.3d 773 (7th Cir. 2021) ....................15

*Barnes v. Air Line Pilots Ass'n, Int'l*,
310 F.R.D. 551 (N.D. Ill. 2015)....................15

*Beaton v. SpeedyPC Software*,
907 F.3d 1018 (7th Cir. 2018) ....................15, 16, 17

*Bell v. PNC Bank, Nat. Ass'n*,
800 F.3d 360 (7th Cir. 2015) ....................19

*Clay v. Dart*,
2021 WL 4264244 (N.D. Ill. Sept. 20, 2021) ....................15

*Eagle v. Vee Pak, Inc.*,
343 F.R.D. 552 (N.D. Ill. 2023)....................24

*In re Evanston Nw. Corp. Antitrust Litig.*,
No. 07-cv-04446, 2013 WL 6490152 (N.D. Ill. Dec. 10, 2013)....................24

*Flanagan v. Allstate Ins. Co.*,
242 F.R.D. 421 (N.D. Ill. 2007)....................16

*Howard v. Cook Cty. Sheriff's Off.*,
989 F.3d 587 (7th Cir. 2021) ....................14, 16

*Johnson v. Meriter Health Servs. Emp. Ret. Plan*,
702 F.3d 364 (7th Cir. 2012) ....................25

*Klay v. Humana*,
382 F.3d 1241 (11th Cir. 2004) ....................20

*Kleen Prod. LLC v. Int'l Paper Co.*,
831 F.3d 919 (7th Cir. 2016) ....................19

*Lewis v. City of Chicago*,
702 F.3d 958 (7th Cir.2012) ....................24

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ....................22

*Orr v. Shicker*,
953 F.3d 490 (7th Cir. 2020) ....................14, 15

*Pella Corp. v. Saltzman*,
606 F.3d 391 (7th Cir. 2010) ....................23, 25

*Ploss v. Kraft Foods Grp., Inc.*,
431 F. Supp. 3d 1003 (N.D. Ill. 2020) ....................18

*Rapp v. Green Tree Servicing, LLC*,
302 F.R.D. 505 (D. Minn. 2014)....................20

*In re Ready-Mixed Concrete Antitrust Litig.*,
261 F.R.D. 154 (S.D. Ind. 2009)....................17

*Smith v. Aon Corp.*,
238 F.R.D. 609 (N.D. Ill. 2006)....................16

*Suchanek v. Sturm Foods, Inc.*,
764 F.3d 750 (7th Cir. 2014) ....................25

*In re Sulfuric Acid Antitrust Litig.*,
No. 03 C 4576, 2007 WL 898600 (N.D. Ill. Mar. 21, 2007) ....................17

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016)....................19

*In re U.S. Foodservice Inc. Pricing Litig.*,
729 F.3d 108 (2d Cir. 2013)....................20

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011)....................15, 24

*Wigod v. Wells Fargo Bank, N.A.*,
673 F.3d 547 (7th Cir. 2012) ....................................................................................20

**OTHER AUTHORITIES**

Fed. R. Civ. P. 23(a)(1)..........................................................................................14

Fed. R. Civ. P. 23(a)(2)..........................................................................................15

Fed. R. Civ. P. 23(a)(3)..........................................................................................16

Fed. R. Civ. P. 23(a)(4)..........................................................................................17

# I. INTRODUCTION

In 2019, United Airlines operated over 1.7 million flights carrying over 162 million customers. But as passenger demand ebbed in 2020, United made an economic decision: it began to cancel tens of thousands of flights, slashing capacity by about 90% from 2019 levels. Meanwhile, United shifted the costs of the pandemic onto its customers by refusing to issue refunds requested after United voluntarily and unilaterally cancelled their flights, thereby breaching its Contract of Carriage ("Contract"). In March 2020, after the unprecedented $25 billion bailout Congress provided the airline industry, U.S. Senators recognized United's breach and unfair cost shifting onto customers. As they wrote in a letter to United's CEO: "[t]he [COVID-19] pandemic is placing enormous financial strain on millions of Americans, and families need cash to pay for essentials such as food, housing, and medical care…we believe your company has a moral responsibility to provide real refunds, not travel vouchers, to consumers."[1] United had more than a moral responsibility, it had a contractual obligation to provide refunds. Instead, United chose to play "hardball with travelers who should be eligible for a refund" and retained the funds.[2] Plaintiffs Mark Hansen and Jason Buffer are two such passengers. They now move to certify two respective Classes.

**<u>Plaintiff Buffer and the United Direct Booking Class</u>**

> All persons in the United States who purchased tickets before June 18, 2020, directly from United, for travel on United Airlines flights scheduled to operate to, from, or within the United States from March 1, 2020 through December 2020, and whom were not issued

[1] Declaration of Whitney K. Siehl in Support of Motion for Class Certification ("Siehl Decl.") Ex. 1, Letter to Oscar Munoz, CEO of United Airlines, Inc. from U.S. Senator Edward J. Markey, et al. (March 31, 2020).

[2] Siehl Decl. Ex. 2, Dawn Gilbertson, *Airlines owe you a refund when they cancel a flight. So why is United balking during coronavirus crisis?* USA Today, Mar. 26, 2020, available at https://www.usatoday.com/story/travel/airline-news/2020/03/26/united-airlines-blasted-refund-policy-during-coronavirus-crisis/2898509001/

> a refund upon request for monies paid in connection with an itinerary cancelled by United.

**Plaintiff Hansen and the Third-Party Booking Class**

> All persons in the United States who purchased tickets before June 18, 2020 from travel agencies, for travel on United Airlines flights scheduled to operate to, from, or within the United States from March 2020 through December 2020 and whom were not issued a refund upon request for monies paid in connection with an itinerary cancelled by United.

Excluded from the proposed Classes are individuals (1) who initiated changes to their travel, (2) purchased their tickets with miles or electronic certificates (*i.e.*, did not pay with cash or credit for their tickets), (3) portions of travel itineraries to or from countries that had closed their borders to U.S. residents; (4) Defendant and its employees, and (5) the Court and its staff. Plaintiffs reserve the right to subclass, modify, or amend the class definitions as appropriate.

The proposed Classes satisfy the requirements of Rule 23(a). The Classes are sufficiently numerous because each consists of thousands of injured and geographically dispersed purchasers. Commonality exists because United injured each Class member in the same way—United cancelled their flights and refused to issue refunds upon request, thereby breaching its Contract. Plaintiffs' claims are typical of the Classes' because they arise from the same unlawful course of conduct. And because Plaintiffs assert the same claims and seek the same relief on behalf of themselves and the Classes, they satisfy Rule 23(a)'s adequacy requirement.

The Classes likewise meet the requirements of Rule 23(b)(3). The issue central to each Class member's claim—whether they were entitled to a refund upon request after United cancelled their flights for reasons other than a force of majeure event—is susceptible to a common answer through common proof. That is particularly true of the Direct Booking Class, whose claims are governed solely by Illinois law. Class treatment also is superior to other available methods for fairly and efficiently adjudicating the controversy because (i) no Class

member has an interest in individually prosecuting claims against United, (ii) no related actions are pending against United, (iii) it is expedient to concentrate the litigation before this Court, where United is headquartered, and (iv) this action does not present manageability concerns.

The Court also should grant certification pursuant to Rule 23(b)(2) because declaratory and injunctive relief is appropriate for the Class as a whole. United's refusal to provide refunds for cancelled flights uniformly impacted and continues to impact each and every Class member. An order declaring that United breached its Contract will benefit all Class members equally.

The Classes easily satisfy the requirements of Rule 23. Plaintiffs respectfully request that the Court grant Plaintiffs' motion accordingly.

## II. FACTS COMMON TO THE CLASSES

### A. United's Contract of Carriage Uniformly Entitles Every Class Member to a Refund.

United's Contract applies to every ticket United issued, regardless of whether the purchaser bought the ticket directly from United or through a travel website or travel agency. The Contract expressly provides that "by purchasing a ticket or accepting transportation, the passenger agrees to be bound by these controlling terms of the Contract of Carriage."[3] Reflecting this reality, while Plaintiff Hansen purchased his ultimately-cancelled United flight on Expedia.com, Expedia's Terms of Use expressly indicate that purchasers are bound by the terms and conditions of the carrier's contract of Carriage—here, United's Contract.[4]

---

[3] *See* Siehl Decl. Ex. 3, UNITED 000014-UNITED000444; *see also* Siehl Decl. Ex. 4, Compilation of Contract of Carriage Definitions ("Compilation of COC") (collecting language in United's Contracts of Carriage adopted for tickets purchased on or after September 27, 2018 and tickets purchased on or after June 18, 2020).

[4] Siehl Decl. Ex. 5, Expedia's Terms of Use archived on March 14, 2020, publicly available at: https://web.archive.org/web/20200314224744/https://www.expedia.com/lp/lg-legal

While different versions of the Contract were promulgated over time, such variations in the Contract's terms are immaterial to this motion. This is because the only pertinent contractual provisions—those setting forth United's refund obligations—did not vary during the relevant time period.[5] The version of Rule 24 of the Contract in effect at all times prior to June 18, 2020 identifies three categories of flight disruptions initiated by United and the circumstances under which passengers are entitled to a refund.

- A ***Schedule Change*** is "an advance change in UA's schedule (including a change in operating carrier or itinerary) that is not a unique event such as Irregular Operations or Force Majeure Event . . . ." Rule 24.B.1 (emphasis added). A Schedule Change, according to Rule 24's plain terms, thus describes instances in which United modifies flight schedules in advance due to reasons other than unique (*i.e.*, one-off) events such as force majeure or Irregular Operations. Indeed, United implicitly concedes that any advance change in schedules **not due** to force majeure or Irregular Operations constitutes a Schedule Change as defined in Rule 24.B.1.[6]

- ***Force Majeure Events*** refer to unique occurrences that either (1) **physically prohibit** United from operating flights (*e.g.*, acts of God, governmental regulations, strikes, damaged aircraft etc…), (2) prohibit United from operating flights because doing so would **expose passengers to a substantial risk of bodily harm** (*e.g.*, "riots, terrorist activities, civil commotions, embargoes, wars, hostilities, disturbances, or unsettled international conditions[,]"), or (3) present an "emergency situation requiring **immediate** care or protection for a person or property . . . ."[7]

- ***Irregular Operations*** are "irregularities," including but not limited to "flight or service cancellation, omission of a scheduled stop, or any other delay or interruption in the scheduled operation of a carrier's flight," and cancellations by United pursuant to Rule 5, which addresses cancellations for reasons other than those set forth in Rule 27 (primarily customer malfeasance, overbooking, and a failure to pay for one's seat). Rule 24.B.7.

---

[5] Even if it were important to determine the specific contract terms that applied to a particular ticket, such a determination would be quickly and easily possible. Which version of the Contract applies to a particular purchase is "based on the date on which a ticket is purchased." Siehl Decl. Ex. 6, Rule 30(b)(6) Deposition of James Sumers ("Sumers Depo.") 27:8-9. "[E]very ticket is marked with the date on which it was issued, and would allow you to know the day the ticket was issued," and thus which Contract of Carriage applies to a particular ticket. Sumers Depo. 30:12-31:2.

[6] *See* Siehl Decl. Ex. 4, Compilation of COC.

[7] *Id.* at Rule 24.B.4 (emphasis added).

Again, per Rule 24.B.1, Irregular Operations explicitly refer to unique events, rather than extensive changes to United's schedules.

Accordingly, if a unique Force Majeure event caused United to cancel a flight, ticketed passengers were entitled only to travel credits. However, if United cancelled or delayed flights due to a Scheduling Change or Irregular Operations and did not rebook passengers on new flights departing within specified timeframes, the Contract **required** United to issue refunds "upon request"[8] for the unused portions of their itineraries, as well as baggage charges and upgrade fees.[9] The Contract's plain terms therefore entitle Class members to refunds upon request if United canceled their flight for reasons other than a force majeure event.[10/11] And, as the Court previously explained, any United-initiated cancellation **not** due to a force majeure event constitutes either a Schedule Change or Irregular Operation. *See* ECF 65 at 15 ("Certainly, there must be some point where a Force Majeure Event ends, and a Schedule Change or Irregular Operation begins.).

---

[8] *See id.* at Rule 24.C.4 (citing to Rule 27.A ("Involuntary Cancellations"); Rule 24.E.3 (same).

[9] *See id.* at Rule 27.A.1, 27.C.1, .3.

[10] *See* Siehl Decl. Ex. 3, UNITED 000014-UNITED000444; Siehl Decl. Ex. 4, Compilation of Contract of Carriage Definitions ("Compilation of COC") (collecting language in United's Contracts of Carriage adopted for tickets purchased on or after September 27, 2018 and tickets purchased on or after June 25, 2020). *See also* Siehl Decl. Ex. 7, UNITED121623 ([redacted]

[11] United's self-imposed obligation comports with the DOT's longstanding rules regarding refunds: "If your flight is cancelled and you choose to cancel your trip, you are ***entitled*** to a refund for the unused transportation—even for non-refundable tickets purchasers." Siehl Decl. Ex. 8, *Flight Delays & Cancellations*, U.S. Department of Transportation (Mar. 4, 2020), available at https://www.transportation.gov/individuals/aviation-consumer-protection/flight-delays-cancellations (emphasis added). Accordingly, on April 3, 2020, and May 12, 2020, the DOT released enforcement notices reiterating "airlines' obligations to refund passengers for cancelled or significantly delayed flights remains unchanged." Siehl Decl. Ex. 9-10. *See also* 14 CFR § 259.5(b)(5); Enhancing Airline Passenger Protections, 76 Fed. Reg. 23110-01, at 23129 (Apr. 25, 2011); Siehl Decl. Ex. 11.

In addition, purchasers who bought their tickets directly from United via its website or its phone app agreed to United's Terms, Conditions, and Legal Notices, also known as the Agreement Between User and United Airlines, Inc. ("Agreement").[12] The Agreement includes a choice of law provision providing that Illinois law applies to uniformly to all persons who utilize the United website,[13] including Plaintiff Buffer and members of the Direct Booking Class.

**B. United Cancels Thousands of Flights and Defies the Contract's Refund Provisions.**

United experienced an extensive decline in demand for air travel as COVID-19 spread, which in turn led United to cancel thousands of flights. As United explained  in SEC filings , due to decreased customer demand, it cut "approximately 88% of its scheduled capacity for the second quarter of 2020" compared to the same time in 2019.[14] United also cut approximately 70% of its scheduled capacity in the third quarter of 2020 compared to the prior year, and it expected scheduled capacity to be down about 55% year-over-year in the fourth quarter of 2020.[15] United later described the impact of COVID on flight operations:

> The Company began experiencing a significant decline in international and domestic demand related to COVID-19 during the

[12] Siehl Decl. Ex. 12, https://www.united.com/ual/en/us/fly/legal.html (last visited July 29, 2020). United's website's terms explicitly provide that "[t]ransportation of passengers, baggage and cargo by United and certain regional carriers d/b/a United Express® is subject to the terms and conditions contained in United's Contract of Carriage, *in addition to any terms and conditions specified on united.com*, printed on or in a ticket jacket, ticket receipt, or in any published schedule. . . . By purchasing a ticket and accepting transportation, the passenger agrees to be bound by such terms and conditions." (emphasis added). Only if "there is a conflict between United's Contract of Carriage and any terms and conditions specified on united.com" does "the Contract of Carriage govern[ ]."

[13] *Id.* ("This Agreement is governed by the laws of the State of Illinois, U.S.A., without reference to conflicts of laws provisions. User consents to the exclusive jurisdiction and venue of courts in Cook County, Illinois, U.S.A., in all disputes arising out of or relating to the use of this website.").

[14] Siehl Decl. Ex. 13; United, Form 10-Q for the Quarterly Period Ending June 30, 2020, available at https://ir.united.com/static-files/3f00bf9c-c073-4bd2-b90c-9fd7ff68ef0c

[15] *Id.*

> first quarter of 2020. The decline in demand caused a material deterioration in our revenues in the first nine months of 2020, resulting in a net loss of $5.2 billion for that period…[16]

[redacted]:

[redacted]

CONFIDENTIAL UNITED176246

Siehl Decl. Ex. 15, UNITED176246.

United cannot credibly claim that its system-wide capacity reductions were motivated by anything other than financial considerations, particularly as concerns its domestic operations. [redacted]

[16] Siehl Decl. Ex. 14, United, Form 10-Q for the Quarterly Period Ending September 30, 2020, available at https://ir.united.com/static-files/1a10f567-3678-421e-9d7a-b482d5820e04

[redacted]

United nevertheless refused to refund passengers for flights it cancelled. Plaintiffs were no outliers. [redacted]

[17] *See, e.g.*, Siehl Decl. Ex. 16, UNITED025985 [redacted]

[18] *Cf.* Siehl Decl. Ex. 17, UNITED098964-67 [redacted]

[19] Siehl Decl. Ex. 18, UNITED096648 ([redacted]).

[20] Siehl Decl. Ex. 19, UNITED149089 ([redacted].

[21] Siehl Decl. Ex. 20, UNITED170691.

[22] Siehl Decl. Ex. 21, UNITED063223 ([redacted]).

[redacted]

United also impeded, in a variety of ways, customers' efforts to request the refunds to which they are contractually entitled. Numerous news articles detailed customer's frustrations with "United playing hardball with travelers who should be eligible for a refund."[25] [redacted]:

[redacted]

[23] Siehl Decl. Ex. 22, UNITED118874 ([redacted]).

[24] *Id.* (emphasis added). *See also* Siehl Decl. Ex. 23, UNITED129256 ([redacted]

[25] Siehl Decl. Ex. 2, Gilbertson.

[26] Siehl Decl. Ex. 24, UNITED151057.

[27] Siehl Decl. Ex. 25, PLAINTIFFS_000012 (message from Plaintiff Buffer to United requesting refund without response).

[28] Siehl Decl. Ex. 23, UNITED129256.

[29] Siehl Decl. Ex. 26, UNITED151051.

[redacted].[30] Given the large volume of passenger complaints lodged against airlines, including United, on April 3, 2020, the United States Department of Transportation ("DOT") announced that it "is receiving an increasing number of complaints and inquiries from ticketed passengers, including many with non-refundable tickets, who describe having been denied refunds for flights that were cancelled or significantly delayed."[31] The DOT reminded carriers, including United, of their "longstanding obligation to provide a prompt refund to a ticketed passenger when the carrier cancels the passenger's flight or makes a significant change in the flight schedule and the passenger chooses not to accept the alternative offered by the carrier."[32] Despite the DOT's warning, United continued to ignore its contractual duties, prompting the DOT to release a second notice on May

[30] *See* Siehl Decl. Ex. 27, UNITED078563 [redacted]. *See also* Siehl Decl. Ex. 28, UNITED104012 [redacted]

[31] Siehl Decl. Ex. 9, Enforcement Notice Regarding Refunds by Carriers Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel, DOT (April 3, 2020), available at https://www.transportation.gov/sites/dot.gov/files/2020-04/Enforcement%20Notice%20Final%20April%203%202020.pdf ("First Enforcement Notice").

[32] *Id. See also* 14 CFR § 259.5(b)(5); Siehl Decl. Ex. 11, *Enhancing Airline Passenger Protections,* 76 Fed. Reg. 23110-01, at 23129 (Apr. 25, 2011).

12, 2020, reminding airlines of their obligation to provide refunds when they canceled flights.[33] Even members of the United States Senate urged United to provide full cash refunds to passengers whose flights United cancelled.[34]

**C. United Cancelled Plaintiffs' Itineraries and Denied Their Requests for Refunds.**

The two proposed class representatives, Mark Hansen and Jason Buffer, are among the many purchasers United harmed through its breach. Each Plaintiff was ticketed for travel on a United flight. Like their fellow Class members, United cancelled Plaintiffs' itineraries and/or portions thereof due to Schedule Changes and/or Irregular Operations. Plaintiffs then requested refunds from United, only for United to deny their request or ignore it entirely.[35/36]

**D. Absent Class Members Can Be Identified through United's Records.**

Plaintiffs retained Sean T. Malone, Ph.D., Associate Director of Analytics at Analytic Focus LLC., to develop a methodology to identify purchasers whose itineraries United cancelled using United's records.[37] As set forth in his Report, Dr. Malone leveraged his experience and expertise to analyze United's data and identify potential Class members.

---

[33] Siehl Decl. Ex. 10, *Frequently Asked Questions Regarding Airline Ticket Refunds Given the Unprecedented Impact of the COVID-19 Public Health Emergency on Air Travel*, DOT (May 12, 2020), available at https://www.transportation.gov/sites/dot.gov/files/2020-05/Refunds-%20Second%20Enforcement%20Notice%20FINAL%20%28May%2012%202020%29.pdf ("Second Enforcement Notice").

[34] Siehl Decl. Ex. 1, Letter to Oscar Munoz.

[35] *See* Siehl Decl. Ex. 25, PLAINTIFFS_000012 (message from Plaintiff Buffer to United requesting refund without response); Siehl Decl. Ex. 29, PLAINTIFFS_000033 (message from Plaintiff Hansen to Expedia advising that United refused to issue refund and instructed him to contact Expedia).

[36] After Plaintiffs initiated this action, United "refunded" Plaintiffs' tickets in an unsuccessful attempt to moot their claims.

[37] *See generally* Siehl Decl. Ex. 30, Expert Report of Sean T. Malone, Ph.D. ("Malone Report").

[redacted]

[38] Siehl Decl. Ex. 30, Malone Report ¶¶ 12-14.

[39] *Id.* ¶ 13.

[40] *Id.*

[41] *Id.* ¶ 20.

[42] *Id.* ¶ 14.

[43] *Id.* ¶¶ 3, 14.

[redacted]

[redacted].

[44] Siehl Decl. Ex. 30, Malone Report ¶¶ 17-18.

[45] *Id.* ¶ 25.

[46] *Id.* ¶ 26.

[47] *See* Siehl Decl. Ex. 16, UNITED025985 [redacted]

[48] *Cf.* Siehl Decl. Ex. 17, UNITED098964-67 [redacted]

[49] *See, e.g.,* Siehl Decl. Ex. 33, Petron Rebuttal ¶ 29. *See also* Siehl Decl. Ex. 32, Malone Rebuttal ¶ 33.

## III. STANDARD OF REVIEW

"To achieve certification, a proposed class under Rule 23(b) must meet the requirements of Rule 23(a)—numerosity, typicality, commonality, and adequacy of representation—and one of the alternatives listed in Rule 23(b)." *Howard v. Cook Cty. Sheriff's Off.*, 989 F.3d 587, 597 (7th Cir. 2021). A class may be certified under Rule 23(b)(3) if the court finds "that common questions of law or fact 'predominate' over individual ones and that a class action is 'superior' to other methods of adjudicating the case." *Id.* In evaluating the Rule 23 factors, "a court's preview of the merits must remain tethered to its Rule 23 analysis. The merits themselves are 'not on the table' at this early stage . . . . Rule 23 does not permit courts 'to engage in free-ranging merits inquiries at the certification stage.'" *Id.* at 597–98 (citations omitted). "[A] court weighing class certification must walk a balance between *evaluating* evidence to determine whether a common question exists and predominates, *without weighing* that evidence to determine whether the plaintiff class will ultimately prevail on the merits." *In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 603 (7th Cir. 2020) (citation omitted) (emphasis in original). At "class certification, the issue is not whether plaintiffs will be able to prove [the] elements on the merits, but only whether their proof will be common for all plaintiffs, win or lose." *Id*. at 604.

## IV. ARGUMENT

### A. Plaintiffs satisfy Rule 23(a)'s requirements.

#### 1. The classes satisfy the numerosity requirement.

Fed. R. Civ. P. 23(a)(1) requires that the "class is so numerous that joinder of all members is impracticable." "A 'class can be certified without determination of its size, so long as it's reasonable to believe it large enough to make joinder impracticable and thus justify a class action suit.'" *Orr v. Shicker*, 953 F.3d 490, 497 (7th Cir. 2020) (citation omitted). "[W]hile there is no magic number that applies to every case, a forty-member class is often regarded as

sufficient to meet the numerosity requirement." *Id*. at 498 (internal quotation marks omitted). Courts may rely on common sense assumptions or reasonable inferences based on the record. *Barnes v. Air Line Pilots Ass'n, Int'l*, 310 F.R.D. 551, 557 (N.D. Ill. 2015).

Here, numerosity is satisfied because the proposed classes consist of thousands of members, rendering joinder impracticable. [redacted] Siehl Decl. Ex. 30, Malone Report ¶ 25. [redacted]. Siehl Decl. Ex. 31, Petron Report ¶ 88. Courts routinely find that joinder of such a large number of class members would be impracticable. *See Anderson v. Weinert Enterprises, Inc*., 986 F.3d 773, 778 (7th Cir. 2021) ("Some classes may involve such large numbers of potential members that volume alone will make joinder impracticable."); *Clay v. Dart*, 2021 WL 4264244, at *4 (N.D. Ill. Sept. 20, 2021) ("The Court is satisfied from the evidence that there will be at least 40 members of the proposed class and that joinder of those members would be impracticable.").

**2. The Classes present common questions of law and fact.**

Commonality requires only that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "To satisfy the commonality requirement found in Rule 23(a)(2), there needs to be one or more common questions of law or fact that are capable of class-wide resolution and are central to the claims' validity." *Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1026 (7th Cir. 2018). The threshold for commonality is not high: "even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) (alterations omitted). "The critical point is the need for conduct common to members of the class." *Phillips v. Sheriff of Cook Cnty*., 828 F.3d 541, 553 (7th Cir. 2016) (internal quotation marks omitted).

The commonality "requirement has been characterized as a low hurdle, easily surmounted." *Smith v. Aon Corp.*, 238 F.R.D. 609, 61 (N.D. Ill. 2006).

Plaintiffs clear this low bar. Plaintiffs premise their breach of contract claims on United's uniform refusal to provide refunds for flights it cancelled during the COVID-19 pandemic. The claims of the Classes arise from identical conduct and rest on identical contract terms. *See* Siehl Decl. Ex. 4, Compilation of COC. United's conduct thus raises numerous common questions of law susceptible to common proof, including: (1) whether United cancelled a flight on which the Class member was a ticketed passenger for reasons other than a force majeure event; (2) whether the Contract of Carriage obligates United to provide Plaintiffs and Class members with refunds for flights that United cancelled; (3) whether United had in place a policy of denying refunds to Plaintiffs and Class members for flights United cancelled; (4) whether United breached the Contract of Carriage; and (5) whether Class members are entitled to damages. Where "the defendants are, as here, alleged to have directed standardized conduct toward the putative class members[,]" commonality is easily met. *Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 428 (N.D. Ill. 2007). So too here.

**3. Plaintiffs' claims are typical of those of the Classes because they arise from the same course of conduct.**

The third requirement is "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Rule 23(a)(3) requires courts to "evaluate whether [the plaintiffs'] claims arise from the same events or course of conduct that gives rise to the putative class members' claims." *Beaton*, 907 F.3d at 1026. "The individual claims may feature some factual variations as long as they 'have the same essential characteristics.'" *Id.* (citation omitted). The "'typicality inquiry focuses on the desired attributes of the class representative.'" *Howard*, 989 F.3d at 606 (quoting Newberg on Class Actions §

3:31). "'Factual distinctions between the claims of the named class members and those of other class members' do not necessarily defeat a finding of typicality." *In re Sulfuric Acid Antitrust Litig*., No. 03 C 4576, 2007 WL 898600, at *4 (N.D. Ill. Mar. 21, 2007). That some Class members bought tickets from United while some bought from third parties does not defeat typicality. *See In re Ready-Mixed Concrete Antitrust Litig.*, 261 F.R.D. 154, 168 (S.D. Ind. 2009) ("If the named class members' claims are based on the same legal theory or arise from the same course of conduct, factual differences in date, size, manner, or conditions of purchase, the type of purchaser, or other concerns do not make plaintiffs atypical.") (quotation omitted).

Here, Plaintiffs' claims are typical because they arise from the same events, course of conduct, contractual language and legal theories as those of the Classes: specifically, United's breach of identical contractual provisions across all Class members. While the extent of the harm Class members experienced may differ based on the price of the ticket they purchased, the nature of their claims and the conduct upon which they are based do not. *In re Ready-Mixed Concrete,* 261 F.R.D. at 168 (typicality does not require the products purchased, methods of purchase, or even damages be the same for all Class members) (citation omitted). Plaintiffs satisfy typicality.

#### 4. Plaintiffs have, and will continue to, fairly and adequately represent the Classes because they have no conflicts of interest and are represented by experienced counsel.

Finally, Rule 23 requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "A named plaintiff must be a member of the putative class and have the same interest and injury as other members . . . . A representative might be inadequate if he is subject to a *substantial* defense unique to him." *Beaton*, 907 F.3d at 1027 (emphasis added). Plaintiffs are members of the putative Classes and have the same interest and injury as other members. *See* Siehl Decl. Ex. 34, Deposition of Mark Jordan Hansen ("Hansen Tr."); Siehl Decl. Ex. 35, Deposition of Jason Buffer ("Buffer Tr."). Plaintiffs Hansen

and Buffer also have taken actives roles in this litigation. Siehl Decl. Ex. 34, Hansen Tr. 24:3-15; Siehl Decl. Ex. 35, Buffer Tr. 21:11-23. Each helped prepare the Amended Complaint, gathered documents, sat for their in-person depositions (following lengthy travel to Chicago from Hawaii and Washington, respectively), and answered discovery. Siehl Decl. Ex. 34, Hansen Tr. 19:13-18; Siehl Decl. Ex. 35, Buffer Tr.15:20-23. Plaintiffs understand this case is a class action and seek to serve as class representatives, having prosecuted their claims vigorously and in the best interests of all class members. Siehl Decl. Ex. 34, Hansen Tr. 21:10-16; Siehl Decl. Ex. 35, Buffer Tr. 21:11-23. Plaintiffs will continue to do so. Siehl Decl. Ex. 34, Hansen Tr. 25:11-20; Siehl Decl. Ex. 35, Buffer Tr. 22-23:21-5.

Plaintiffs also do not possess interests antagonistic to or in conflict with those of the Classes they seek to represent. Plaintiffs are pursuing the same claims and same relief on behalf of themselves and all Class members, and they can, have and will continue to do so. *See Ploss v. Kraft Foods Grp., Inc.*, 431 F. Supp. 3d 1003, 1011–12 (N.D. Ill. 2020) ("Plaintiffs are adequate class representatives [where] the claims of the named Plaintiffs are identical, both legally and factually, to those of the proposed class members.").

In addition, this Court found that proposed Class Counsel, Hagens Berman Sobol Shapiro LLP and Cafferty Clobes Meriwether & Sprengel LLP are adequate when it named them interim co-lead counsel. [ECF #27]. Counsel's continued zealous representation of the proposed Classes—best evidenced by the filing of the instant Motion—confirms their adequacy. Plaintiffs and proposed Class Counsel easily satisfy the adequacy requirement.

### B. The Classes Meet the Requirements Rule 23(b)(3).

Rule 23(b)(3) permits class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Predominance is satisfied when common questions represent a significant aspect of a case and … can be resolved for all members of a class in a single adjudication." *Kleen Prod. LLC v. Int'l Paper Co*., 831 F.3d 919, 925 (7th Cir. 2016) (quotation omitted).

The predominance inquiry "requires the court to engage with the merits of the case, yet without deciding the merits." *In re Allstate Corp. Sec. Litig*., 966 F.3d 595, 603 (7th Cir. 2020). A "'court weighing class certification must walk a balance between evaluating evidence to determine whether a common question exists and predominates, *without weighing* that evidence to determine whether the plaintiff class will ultimately prevail on the merits.'" *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 377 (7th Cir. 2015) (emphasis in original). "The Seventh Circuit has been as unequivocally clear as the Supreme Court in *Amgen*, warning that '[i]n conducting this analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits.'" *Amgen Inc. v. Connecticut Ret. Plans & Tr. Fund*, 568 U.S. 455, 376 (2013) (citation omitted).

**1. Common issues predominate given the questions of law and fact at issue.**

Predominance tests whether the proposed class is sufficiently cohesive for adjudication by representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). For a common issue, "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* at 453. Plaintiffs need not show

they will prevail on the predominantly common issues; rather, they need only show they can offer evidence common to the classes. *Amgen*, 568 U.S. at 459.

First, common questions of law predominate. Plaintiff Buffer and the Direct Booking Class base their breach of contract claims on United's Contract of Carriage, which the Court will interpret according to Illinois law as set forth in the Agreement. As a result, the claims of the Direct Booking Class are governed by the same law and require a showing of the same underlying elements—i.e., "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 560 (7th Cir. 2012).

Common questions of law also predominate for Plaintiff Hansen and the Third-Party Booking Class "[b]ecause contract law is not at its core diverse, nonuniform, and confusing," with "no large risk of nonuniform adjudication inherent in [s]tate-court enforcement of the terms of a uniform agreement prepared by an airline and entered into with its passengers nationwide." *Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 (1995). Indeed, "[a] breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey." *Klay v. Humana*, 382 F.3d 1241, 1263 (11th Cir. 2004). *See also In re U.S. Foodservice Inc. Pricing Litig.,* 729 F.3d 108, 127 (2d Cir. 2013) ("[T]he crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues. Here, they do not. As courts have noted, state contract law defines breach consistently such that the question will usually be the same in all jurisdictions.") (citations omitted); *Rapp v. Green Tree Servicing, LLC,* 302 F.R.D. 505, 509 (D. Minn. 2014) ("[T]he elements of breach of contract do not differ much from state to state."). As reflected in the accompanying spreadsheet, the elements of a breach of

contract claim are functionally identical regardless of the state law at issue. State contract laws do not differ materially, let alone differ to a degree sufficient to preclude predominance of common issues. *See* Siehl Decl. Ex. 36, Survey of Breach of Contract Claim Requirements.

Common issues of fact also predominate because the key common question is susceptible to common proof: did United cancel flights due to Schedule Changes or Irregular Operations without refunding Class members the purchase price of the ticket?

Here, Class members whose flights United cancelled are identifiable through United's own records. [redacted]

United may argue its data is insufficient to identify absent Class members. Not so. The conditions for Class membership are simple: a purchaser paid for flights; United cancelled their flights due to a Schedule Change or Irregular Operations; and United did not provide a refund. Plaintiffs also propose two distinct subclasses that cover, respectively, purchasers who bought

---

[50] [redacted]. *See* Siehl Decl. Ex. 33, Petron Rebuttal ¶ 88 [redacted]).

their tickets directly from United or through a third-party travel site. [redacted]. *See supra* Section II(D); *see also* Siehl Decl. Ex. 30, Malone Report ¶ 25. [redacted]. *Id.* ¶ 26. The proposed Classes thus are readily ascertainable. Likewise, to the extent United contends that whether a customer requested a refund cannot be determined from its records, its quibbles matter not: Class members who requested a refund may self-identify during the claims process in order to demonstrate their entitlement to a refund, the amount of which is reflected in United's records. *See, e.g., Mullins v. Direct Digital, LLC*, 795 F.3d 654, 672 (7th Cir. 2015) ("District courts should continue to insist that the class definition satisfy the established meaning of ascertainability by defining classes clearly and with objective criteria. If a class is ascertainable in this sense, courts should not decline certification merely because the plaintiff's proposed method for identifying class members relies on affidavits.").

Because Plaintiffs may establish through common evidence United's liability and individual Class members' entitlement to relief, common issues predominate.

**2. A class action is superior to tens of thousands of individual actions arising out of United's policy of refund request denials.**

Rule 23(b)(3) also requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b). Rule 23(b) provides a list of factors to be considered, and each supports certifying the Class:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

*Id.* This case satisfies each factor.

First, certification of the proposed Classes undoubtedly is superior to a multitude of individual actions. Class members are far too numerous and their claims too small for each to prosecute separate individual actions. *See Pella Corp. v. Saltzman*, 606 F.3d 391, 393 (7th Cir. 2010) ("[C]lass certification is a 'sensible and legally permissible alternative to ... individual suits each of which would cost orders of magnitude more to litigate than the claims would be worth to the plaintiffs.'"). Certifying the proposed Classes thus will "achieve [significant] economies of time, effort and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615.

Second, Plaintiffs' counsel is not aware of any other ongoing litigation about United's refund practices during the COVID-19 pandemic that would render such cases superior to the classwide resolution at issue here.[51]

Third, this Court is a desirable forum because the Northern District of Illinois is United's home, the applicable forum under United's Agreement, and is United's largest hub.[52] The Court also is well-suited to oversee this action because of its familiarity with Illinois law, which governs the claims of the Direct Booking Class.

---

[51] At best, United may cite to a handful of small claims cases that a few passengers brought.

[52] Siehl Decl. Ex. 37, https://www.united.com/en/us/newsroom/hub-airports/ord.html

Finally, this action does not present unique manageability concerns that preclude certification. As explained above, common issues predominate because the action arises from United's breach of identical contractual terms found in materially identical contracts United entered into with each Class member. *See Eagle v. Vee Pak, Inc.*, 343 F.R.D. 552, 579 (N.D. Ill. 2023) (finding manageability where all class members' claims involved the same practice by defendant, even if the court must conduct individualized damages inquiries). And "the more that common issues predominate, the more likely that a class action is the superior vehicle for deciding the controversy." *In re Evanston Nw. Corp. Antitrust Litig.*, No. 07-cv-04446, 2013 WL 6490152, at *3 (N.D. Ill. Dec. 10, 2013).

The key common question—whether Plaintiffs and the Class were entitled to refunds on demand when United cancelled their flights—is susceptible to common proof. Therefore, the superiority requirement is satisfied.

**3. The proposed Classes also satisfy Rule 23(b)(2), because United has acted on grounds generally applicable to each Class.**

The Classes also satisfy Rule 23(b)(2), which applies where a defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2); *Lewis v. City of Chicago*, 702 F.3d 958, 962 (7th Cir.2012). "The key to the (b)(2) class is the 'indivisible nature of the injunctive or declaratory remedy warranted—the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Wal-Mart*, 564 U.S. at 360. "In other words, Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Id*. at 360.

That the plaintiffs might require individualized relief does not prevent certification of a class for common equitable relief. *Pella*, 606 F.3d at 395. Once declaratory relief is ordered, all that is left to decide is the monetary relief to which absent Class members are entitled, and that is the type of proceeding for which (b)(3) is designed. *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 371 (7th Cir. 2012). *See also Suchanek v. Sturm Foods, Inc*., 764 F.3d 750, 756 (7th Cir. 2014) ("It is routine in class actions to have a final phase in which individualized proof must be submitted.").

Here, Plaintiffs seek a single injunction that stops United from withholding refunds requested in connection with flights it cancelled in breach of its Contract, which harmed Plaintiffs and the Class in the same way. The requested injunction would benefit all Class members equally, by requiring United to issue refunds on demand. Therefore, the monetary relief to which such a declaration would entitle Class members flows directly from a finding of liability on the Plaintiffs' claims for classwide injunctive and declaratory relief. While the amount of the refund owed to each Class member may not be identical, the amount owed will be determined from the same common evidence: United's records of ticket purchases and refunds issued. Finally, Plaintiffs seek specific injunctive relief: an order enjoining United from breaching its contract by refusing to refund passengers. Rule 23(b)(2) applies as well.

## V. CONCLUSION

For the foregoing reasons, the Court should certify the proposed Classes, appoint Plaintiffs as Class Representatives, and reappoint their counsel as Class Counsel. Plaintiffs further request the Court grant them all such other relief as deemed necessary and appropriate.

Dated: July 14, 2023

Respectfully submitted,

*/s/ Daniel J. Kurowski*
Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Ave, Suite 2000
Seattle, WA 98101
T: (206) 623-7292
steve@hbsslaw.com

Daniel J. Kurowski
Whitney K. Siehl
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite 2410
Chicago, IL 60611
T: (708) 628-4949
dank@hbsslaw.com
whitneys@hbsslaw.com

*Interim Co-Lead Counsel and proposed Class Counsel*

*/s/ Daniel O. Herrera (with permission)*
Daniel O. Herrera
Nickolas J. Hagman
CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
135 S. LaSalle Street, Suite 3210
Chicago, Illinois 60603
T: (312) 782-4880
F: (318) 782-4485
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

*Interim Co-Lead Counsel and proposed Class Counsel*

-with-

Joseph G. Sauder
Joseph B. Kenney
SAUDER SCHELKOPF LLC
1109 Lancaster Ave.
Berwyn, PA 19312
T: (888)-711-9975
F: (610) 421-1326
jgs@sstriallawyers.com
jbk@sstriallawyers.com

*Additional Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

The undersigned attorney of record hereby certifies that on July 14, 2023, a true and correct copy of the foregoing was filed electronically by the Court's CM/ECF system, which caused notice and a copy of same to be sent to all counsel of record.

Dated: July 14, 2023 *|s| Daniel J. Kurowski*