# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

MARK HANSEN, and JASON BUFFER,

      Plaintiffs,

      v.

UNITED AIRLINES, INC.,

      Defendant.

Case No. 1:20-cv-02142

Hon. Thomas M. Durkin

Magistrate Judge Jeffrey T. Gilbert

## UNITED AIRLINES, INC.'S REPLY IN SUPPORT OF ITS
## MOTION TO EXCLUDE THE EXPERT OPINIONS OF SEAN T. MALONE

REDACTED VERSION FILED PUBLICLY
UNREDACTED VERSION FILED UNDER SEAL PER AGREED CONFIDENTIALITY
ORDER (DKT. 96)

Patricia Brown Holmes
Sondra A. Hemeryck
Eli J. Litoff
Brendan J. Gerdes
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
Tel.    312-471-8700
Fax    312-471-8701
pholmes@rshc-law.com
shemeryck@rshc-law.com
elitoff@rshc-law.com
bgerdes@rshc-law.com

*Attorneys for Defendant United Airlines, Inc.*

## TABLE OF CONTENTS

Page

INTRODUCTION ............................................................................................................. 1

ARGUMENT .................................................................................................................... 1

I.     Plaintiffs' Argument That Dr. Malone's Unreliable Opinions Should Be Allowed Because of Supposed Deficiencies in United's Data is Meritless. .................................... 1

II.    Dr. Malone's Proposed Methodology for Identifying and Estimating the Number of Class Members Is Demonstrably Unreliable. ..................................................................... 3

       A.     Dr. Malone's Proposed Methodology to Identify Itineraries Cancelled by United is Unreliable. ........................................................................................ 3

       B.     Dr. Malone's Methodology to Exclude Itineraries Impacted by Travel Restrictions is Based Upon Pure Speculation. ....................................................... 6

III.    Dr. Malone's Additional Opinion That Other Data Could Theoretically Identify the Majority of Refund-Eligible Customers Should Be Excluded. .......................................... 8

CONCLUSION ................................................................................................................. 13

# <u>TABLE OF AUTHORITIES</u>

Page

CASES

*Bielskis v. Louisville Ladder, Inc.*,
  663 F.3d 887 (7th Cir. 2011) ...................................................................................2

*Burns v. Sherwin-Williams Co.*,
  No. 19-CV-5258, 2022 WL 4329417 (N.D. Ill. Sept. 18, 2022), *aff'd,* No. 22-2825, 2023 WL
  5210857 (7th Cir. Aug. 15, 2023)...........................................................................10

*Chapman v. Maytag Corp.*,
  297 F.2d 682 (7th Cir. 2002) .................................................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
  509 U.S. 579 (1993)....................................................................................... *passim*

*In re Dealer Management Systems Antitrust Litigation*,
  581 F. Supp. 3d 1029 (N.D. Ill. 2022) .................................................................2, 3

*Dhillon v. Crown Controls Corp.*,
  269 F.3d 865 (7th Cir. 2001) .................................................................................11

*Gravitt v. Mentor Worldwide LLC*,
  342 F.R.D. 130 (N.D. Ill. 2022)............................................................................8, 9

*Kirk v. Clark Equip. Co.*,
  991 F.3d 865 (7th Cir. 2021) ...................................................................................7

*Lang v. Progressive Exp. Ins. Co.*,
  No. 11-C-0188, 2012 WL 1409936 (E.D. Wis. Apr. 20, 2012) ............................11

*Manpower, Inc. v. Insurance Company of Pennsylvania*,
  732 F.3d 796 (7th Cir. 2013) ...................................................................................2

*Mister v. Illinois Cent. Gulf R. Co.*,
  639 F. Supp. 1560 (S.D. Ill. 1986)...........................................................................2

*Mister v. Illinois Central Gulf Railroad Co.*,
  832 F.2d 1427 (7th Cir. 1987) .................................................................................2

*Q Sales & Leasing, LLC. v. Quilt Protection, Inc.*,
  No. 01 C 1993, 2004 WL 2420640 (N.D. Ill. Oct. 26, 2004).................................12

*Smith v. Ford Motor Co.*,
  215 F.3d 713 (7th Cir. 2000) ...................................................................................2

*Smith v. Gen. Elec. Co.*,
    No. CIV.A.91-12912-RGS, 2004 WL 870832 (D. Mass. Apr. 23, 2004) ...............................13

*Southwire Co. v. J.P. Morgan Chase & Co.*,
    548 F. Supp. 2d 908 (W.D. Wisc. 2007)...................................................................................3

*Varlen Corp. v. Liberty Mut. Ins. Co.*,
    924 F.3d 456 (7th Cir. 2019) ...................................................................................................10

*Walden v. City of Chicago*,
    755 F. Supp. 2d 942 (N.D. Ill. 2010) .......................................................................................3

*In re Zurn Pex Plumbing Products Liability Litigation*,
    644 F.3d 604 (2011)............................................................................................................12, 13

## RULES

Fed. R. Civ. P. 23 ..........................................................................................................................9

Fed. R. of Evid. 702 ................................................................................................................1, 9, 13

## INTRODUCTION

United demonstrated through its Motion to Exclude the Opinions of Sean T. Malone (Dkt. 182, "Motion") and supporting Memorandum of Law (Dkt. 183, "Memorandum") that Dr. Malone's opinions are not admissible and should be excluded because they are based on an unreliable methodology and, in some cases, no methodology whatsoever. Plaintiffs' Opposition (Dkt. 204, "Opposition") sidesteps and mischaracterizes United's arguments and does not remotely satisfy Plaintiffs' burden to establish the admissibility of Dr. Malone's opinions. For the reasons stated below and in United's Memorandum, Dr. Malone's testimony should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## ARGUMENT

### I.    Plaintiffs' Argument That Dr. Malone's Unreliable Opinions Should Be Allowed Because of Supposed Deficiencies in United's Data is Meritless.

United's Memorandum described several ways in which Dr. Malone's methodology for identifying and estimating the number of class members is unreliable. Mem. at 5-10. Plaintiffs' principal response, which permeates their Opposition, is to argue that United cannot rely on "self-imposed deficiencies in United's data" to exclude Dr. Malone's opinions. *See, e.g.*, Opp. at 4-5. This argument is a complete red herring, because United's arguments do not rely on supposed data deficiencies. There is nothing wrong with United's data and United has not once suggested that the data Dr. Malone analyzed is inaccurate or defective. The problem lies in the way in which Dr. Malone seeks to utilize the data and the reliability of the conclusions he claims can be drawn from it. The data is fine, but Dr. Malone's *methodology* (or lack thereof) for identifying putative class members is flawed.

For these and other reasons, none of the Seventh Circuit cases cited by Plaintiffs in support of their "bad data" straw-man undercut United's arguments. In fact, each supports United's position that this Court should carefully scrutinize Dr. Malone's methodology and exclude his opinions because the methodology is unsound.

For example, in *Manpower, Inc. v. Insurance Company of Pennsylvania*, 732 F.3d 796 (7th Cir. 2013), the court simply acknowledged the unremarkable principle that reliability "is primarily a question of the *validity of the methodology employed* by an expert, not the quality of the data used in applying the methodology or the conclusions produced." *Id.* at 806 (emphasis added). In *Smith v. Ford Motor Co.*, 215 F.3d 713 (7th Cir. 2000), while the court held that the jury should ordinarily resolve disputes about "the factual underpinnings of the expert's analysis," it also "emphasized that the court's gatekeeping function focuses on an examination of the expert's methodology." *Id.* at 718.[1] In *Mister v. Illinois Central Gulf Railroad Co.*, 832 F.2d 1427 (7th Cir. 1987), the court affirmed a district court's findings of fact and conclusions of law, following a bench trial, that the data at issue was "good enough" to support the expert's conclusions. *Id.* at 1430. The opinion affirmed by the Seventh Circuit in *Mister* makes clear that even if data is inaccurate (which is not the case here), the pertinent inquiry "is whether these flaws affected [the expert's] analysis." *Mister v. Illinois Cent. Gulf R. Co.*, 639 F. Supp. 1560, 1574 (S.D. Ill. 1986). The *Mister* case thus confirms that the focus is on the expert's methodology, which is exactly what United addressed in its Motion and Memorandum.

Plaintiffs' other authority is inapposite. *In re Dealer Management Systems Antitrust Litigation*, 581 F. Supp. 3d 1029 (N.D. Ill. 2022), addressed a circumstance where the parties'

---

[1] Notably, the Seventh Circuit has rejected attempts to stretch *Smith* too far, noting that *Smith* explicitly stated courts are permitted to scrutinize whether "it was appropriate for the expert to rely on … the sources of information which he employed." *Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 896 (7th Cir. 2011) (quoting *Smith* and excluding expert opinion).

experts expressed competing views, but both of them had a "factual basis" for their opinions and a "rational connection between the data and the opinion." *Id.* at 1032. That is not the case here, as Dr. Malone's opinions are completely untethered to the data, consist of pure speculation, and in some cases, are flatly contradicted by the undisputed facts. *See generally* Mem. at 5-14. Plaintiffs also cite *Walden v. City of Chicago*, 755 F. Supp. 2d 942, 953 (N.D. Ill. 2010), for the proposition that "100% accuracy" of data reviewed by an expert is not required. Of course that is true. But the point of *Walden* is that the expert there employed a reliable methodology in searching and analyzing the data. *Id.* Specifically, the court found the methodology was designed "to mitigate the inaccuracies" in the data and was consistent with the methods applied by other experts in the field. *Id.* Finally, *Southwire Co. v. J.P. Morgan Chase & Co.*, 548 F. Supp. 2d 908 (W.D. Wisc. 2007), has no bearing on this case whatsoever because there, "Defendants d[id] not challenge the methods employed by plaintiffs' experts." *Id.* at 935.

Accordingly, the Court should disregard Plaintiffs' arguments about purported data deficiencies. As explained in more detail below, Plaintiffs have failed to rebut any of the arguments that United *actually made* in support of its Motion, which are not based deficiencies in the data, but rather on Dr. Malone employing a methodology that is contradicted by the undisputed facts or, in other instances, employing no methodology at all.

## II.  Dr. Malone's Proposed Methodology for Identifying and Estimating the Number of Class Members Is Demonstrably Unreliable.

### A.  Dr. Malone's Proposed Methodology to Identify Itineraries Cancelled by United is Unreliable.

As set forth in United's Memorandum, Dr. Malone's use of the ███████████████ ████ to exclude passengers who voluntarily cancelled their itineraries is not a reliable methodology because the undisputed facts demonstrate that ████████████████████████████ ████████ Mem. at 5-8. Indeed, as United showed and Plaintiffs do not dispute, Dr. Malone's

flawed methodology would exclude Plaintiff Buffer from the class even though the parties agree that he did not voluntarily cancel his itinerary. *Id*. at 7-8.

In response, Plaintiffs attempt to pivot: they contend that Dr. Malone used ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to identify passengers who *changed* their itineraries rather than those who *cancelled* them. That is not, however, what Dr. Malone said. In Paragraph 20 of his report, Dr. Malone states:



Mem., Ex. 2 ¶ 20 (emphasis added). In other words, the only "changes" to travel in which Dr. Malone was interested, and for which he used ▮▮▮▮▮▮▮▮▮▮▮▮▮▮, were *cancellations*. Dr. Malone confirmed in his deposition that this was the case. *See* Malone Dep. (Dkt. 182-5) at 63:24-64:6 (explaining that "the purpose of [analyzing this data field] was to focus on identifying ticketed passengers whose itineraries were ultimately *canceled* by United.") (emphasis added); *id.* at 111:23-112:4 ("I was focusing on ticketed passengers whose itineraries were ultimately *canceled* by United, who didn't make changes themselves.") (emphasis added). And perhaps most telling, Plaintiffs expressly relied on Dr. Malone's use of ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ to "exclude persons who *initiated the changes to their travel (i.e., cancelled their itinerary*)" in arguing that this Court should certify their proposed Classes. Plaintiffs' Mem. in Support of Mot. for Class Cert. (Dkt. 172, "Plfs. Class Cert. Br.") at 12-13 (citing Malone Report ¶¶ 17-18, 20) (emphasis added). Plaintiffs cannot avoid the fatal flaws in Dr. Malone's methodology by misstating what he did.

In any event, Plaintiffs' attempted pivot does nothing to salvage Dr. Malone's opinions. If Dr. Malone really made no effort to limit his identification of class members to itineraries **cancelled** by United, then his methodology is unsound, and his opinions are irrelevant, for **that** reason as well. Only customers whose itineraries were cancelled by United could possibly be members of the putative class (*see* Plfs. Class Cert. Br. at 1-2, proposed class definitions), so a methodology that does not exclude voluntarily cancellations could not possibly reliably identify or estimate the number of class members.

Next, Plaintiffs make a bizarre argument: they assert that because United's expert, Michael Petron, employed an appropriate methodology to exclude passengers who voluntarily cancelled their itineraries, "refund-eligible passengers can[] be identified using United's records." Opp. at 6. But the pertinent question for this Motion is not whether another expert using a reliable methodology can exclude voluntary cancellations from the purported class; the question is whether Dr. Malone can do so using *his* methodology. And the answer is a resounding no.

Plaintiffs' attempt to adopt Mr. Petron's methodology also fails because Plaintiffs fundamentally misunderstand or mischaracterize Mr. Petron's opinions. They contend that while he and Dr. Malone "may differ in the magnitude of their opinions on class size, each confirms that class members can be identified from United's records." Opp. at 7. What Mr. Petron actually concluded, however, is ███████████████████████████████████████████████ ████████████████████████████████████████. *See* Petron Rebuttal Report, Dkt. 183, Ex. 5, ¶¶ 29-90. Nothing about Mr. Petron's opinions supports Dr. Malone's flawed methodology.

Plaintiffs also make a futile attempt address the fact that Dr. Malone's methodology would exclude Buffer from the putative class. Plaintiffs concede that Dr. Malone's methodology does not

work when it comes to Buffer. But as they do throughout the Opposition, they attempt to blame this failure on supposed deficiencies in United's data, stating: "United's own expert highlighted United's data deficiencies, writing that Plaintiff Buffer's ███████████████████████████ ██████████████████████████████ Opp. at 4 (quoting Petron Report ¶ 42.m). Again, Plaintiffs fundamentally mischaracterize Mr. Petron's opinions and United's data. There is no problem with United's data. In fact, it *is* possible to determine from United's documents whether Plaintiff Buffer voluntarily cancelled his itinerary. It is undisputed that Plaintiff Buffer *did not* voluntarily cancel: SWISS International cancelled Buffer's flights on March 12, 2020, and United informed Buffer of the cancellation on March 14, 2020. *See* Reply in Support of Mot. for Summary Judgment, Dkt. 197 at 3-4.

The problem for Dr. Malone (and for Plaintiffs' class certification arguments) is that this information can only be determined by conducting a manual review of the individualized records related to Buffer. *See* Mem. in Support of Mot. for Summary Judgment, Dkt. 175 at 16-18. And that is precisely what Mr. Petron concluded: ██████████████████████████████ █████████████████████████████████████████. Petron Rebuttal Report, Dkt. 183, Ex. 5, ¶¶ 29-62.

In short, Plaintiffs have failed to establish the reliability of Dr. Malone's methodology for excluding passengers who voluntarily cancelled their own itineraries. Dr. Malone's proposed methodology is contrary to the undisputed facts, and, therefore, his opinion as to the identification and estimated number of class members should be excluded.

**B.** **Dr. Malone's Methodology to Exclude Itineraries Impacted by Travel Restrictions is Based Upon Pure Speculation.**

Next, United's Motion explained that Dr. Malone's proposed methodology to exclude itineraries impacted by travel restrictions was based on nothing more than his own untested

speculation. Mem. at 8-10. Dr. Malone opined that ████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████. *Id.* In fact, he did not attempt to

test his opinion at all, and instead simply speculated that unidentified and unreviewed documents

*could* somehow be used to systematically exclude these passengers. *Id.*

Plaintiffs' Opposition does not meaningfully engage with these arguments. Plaintiffs assert

only that ████████████ are just another data point," "the filtering process for United's data is

easy," and that Dr. Malone's ability to filter data should be "far from controversial" because it is

"basic data analysis." Opp. at 8-9. The problem with Dr. Malone's methodology is not with his

ability to filter the data ████████████. As United explained in its Memorandum, ████████

████████████████████████████████████████████████████████████████████████

████████████████████████████ Mem. at 8-9. But Dr. Malone made no

attempt to obtain or review any information on travel restrictions or otherwise test his assertion

that ████████████████████████████████████████████. *Id.* In fact, Dr.

Malone was not even aware of any documentation produced in this case regarding travel

restrictions, nor did he request any from Plaintiffs' counsel. *Id.* Instead, he speculated that ████

████████████████████████████, although he never endeavored to do so. *Id.* at

9. Nor did he ever attempt to test his theory that he could ████████████████████████

████████████████████████████████████████ a failure that

weighs heavily in the *Daubert* analysis. *Id.* at 10; *see also Kirk v. Clark Equip. Co.*, 991 F.3d 865,

877 (7th Cir. 2021) (holding an expert's failure to test his hypothesis supported exclusion where

the testing "may very well have provided [the expert] with additional, valuable information in

forming his causation opinion").

Case: 1:20-cv-02142 Document #: 205 Filed: 12/01/23 Page 12 of 18 PageID #:5063

The Opposition does not even attempt to address these fatal flaws in Dr. Malone's methodology and his opinions should, therefore, be excluded.

## III. Dr. Malone's Additional Opinion That Other Data Could Theoretically Identify the Majority of Refund-Eligible Customers Should Be Excluded.

As set forth in United's Memorandum, Dr. Malone's belated opinion that he could ███████ ████████████████████████████████████████████████████████████████████████ also should be excluded because (1) it is an improper rebuttal opinion, and (2) it is based on pure speculation. Mem. at 11-14.

In response to the first argument, Plaintiffs assert that Dr. Malone's new opinion merely flowed from his criticism of Mr. Petron's report, which argued that ██████████████████ ████████████████████████████████████████████████████████████████████████████ ██████████ Opp. at 10. This argument misses the mark and attempts to shift the burden of proof on Plaintiffs' claims.

"A plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief." *Gravitt v. Mentor Worldwide LLC*, 342 F.R.D. 130, 135 (N.D. Ill. 2022) (granting motion to strike improper expert rebuttal report). Therefore, "evidence for an argument that should have been made in the case in chief is improper on rebuttal. Otherwise, the plaintiff could reverse the order of proof, in effect requiring the defendants to put in their evidence before the plaintiff put in his." *Id.* (cleaned up). What flows from these basic principles is that if an expert's opinions "go directly to" an element on which the plaintiff bears the burden of proof, those opinions "belong[] in the opening expert reports." *Id.*

The circumstance described in *Gravitt* is exactly what has transpired here. Dr. Malone made no attempt to identify refund-eligible passengers in his opening report, even though

identification of refund-eligible passengers is a key and contested issue on which Plaintiffs have the burden. Mem. at 11-12. Then, after Mr. Petron predictably addressed those issues in his report, Dr. Malone proffered an entirely new opinion in rebuttal, speculating that ███████████████ ████████████████████████████████████████████████████, thereby depriving Mr. Petron the opportunity to rebut those opinions.

"[T]hose matters [on which Dr. Malone opined in his rebuttal report] go directly to" establishing elements on which Plaintiffs' bear the burden of proof. *Gravitt*, 342 F.R.D. at 135. Specifically, Plaintiffs must prove refund-eligibility to establish the breach element of their breach of contract claims, because if class members are not entitled to a refund under United's Contract of Carriage, then United's alleged failure to provide refunds was not a breach. Additionally, Plaintiffs bear the burden to establish that the putative class should be certified pursuant to Federal Rule of Civil Procedure 23, and Dr. Malone's (in)ability to systematically identify refund-eligible passengers goes directly to commonality, predominance, and other factors on which Plaintiffs bear the burden. Accordingly, Dr. Malone's opinions regarding refund-eligibility were required to be disclosed in his opening report. That Dr. Malone's rebuttal "report makes a few references to [United's] expert[] does not make it proper rebuttal." *Gravitt*, 342 F.R.D. at 135. Accordingly, the opinion should be stricken as improper rebuttal.

In any event, as United explained in its Memorandum, Dr. Malone's opinion should also be excluded under *Daubert* and Rule 702 because it relies on nothing more than his own speculation and say-so. Plaintiffs insist that the Court should not exclude Dr. Malone's opinions on this basis because doing so would impermissibly usurp the jury's role to examine the "underlying facts" of his opinion. Opp. at 11-12. But United's primary argument here is that there *are no* underlying facts or tests being relied upon. *See* Mem. at 13. Indeed, Plaintiffs and Dr.

Malone cannot even state—as is their burden—that these "unproduced relevant data" sets even exist, much less what they would show. Thus, Dr. Malone's opinion is nothing more than speculation layered on top of speculation.

For instance, although Dr. Malone opined that ███████████████████████ he offers no information on how that data is stored, what the forms supposedly contain, how many passengers used the forms, or, crucially, how the data (if it exists) could be used to identify customers who requested refunds. *Id.* Similarly, his opinion that ███████████████████

████████████████████████████████████████████████

███████████████████████████ is not based on any testing or tangible underlying facts. *Id.* Indeed, Dr. Malone has no information concerning the number or percentage of customers who request refunds via email, has not reviewed any United emails, has not run any searches for keywords in an effort to locate emails related to refund requests, and has no information about the number of hits his theoretical searches would return. Mem. at 14. Where, as here, the "underlying facts" being relied upon are just speculation and say-so, it absolutely within the Court's gatekeeping function to exclude the opinion. *See Daubert*, 509 U.S. at 590 (opinion cannot be based on "unsupported speculation"); *see also See Varlen Corp. v. Liberty Mut. Ins. Co*., 924 F.3d 456, 460 (7th Cir. 2019) (expert properly excluded where he failed "to articulate a justification for his inference … beyond a simple say-so."); *Burns v. Sherwin-Williams Co.,* No. 19-CV-5258, 2022 WL 4329417, at *25 (N.D. Ill. Sept. 18, 2022), *aff'd,* No. 22-2825, 2023 WL 5210857 (7th Cir. Aug. 15, 2023) ("An expert's opinion must rest on something, above and beyond the expert's say-so.").[2]

---

[2] Plaintiffs appear to suggest in passing that United was required to submit a "declaration or affidavit confirming that the data [which Dr. Malone speculates would support his opinion] does not exist." Opp. at 11. The Court should disregard this suggestion for two reasons. First, it again attempts to turn the burden of proof on its head. Plaintiffs bear the burden to establish the admissibility of their expert's opinions. If

Plaintiffs attempt to downplay Dr. Malone's failure to test any of his speculation about what unreviewed documents might show, contending that the "absence [of testing] alone is not fatal to an expert's testimony." Opp. at 12. But testing (and an expert's failure to conduct any tests) is an important factor in the *Daubert* analysis. Mem. at 10. Indeed, the cases Plaintiffs cite to show that it is an important factor. *See Dhillon v. Crown Controls Corp.*, 269 F.3d 865, 867 (7th Cir. 2001) ("When, as in this case, an expert has not engaged in any type of testing … it is not an abuse of discretion for the district court to refuse to allow such testimony."); *Lang v. Progressive Exp. Ins. Co.*, No. 11-C-0188, 2012 WL 1409936, at *4 (E.D. Wis. Apr. 20, 2012) ("The Seventh Circuit has recognized that a failure to test may render an opinion unreliable and inadmissible …") (citing *Chapman v. Maytag Corp.*, 297 F.2d 682, 688 (7th Cir. 2002).

This is precisely the type of case where a failure to test is so important. As discussed herein and in United's Memorandum, Dr. Malone did (to an extent) test his opinions that ███████████ ████████████████████████████████████████████████████████████████████ ██████████████. That he conducted that analysis and explained his hypotheses and conclusions has provided United with the opportunity to challenge his methodology. But by failing to conduct any analysis with respect to ██████████████████████████████████████████ ████████████████, he has prevented United from "testing [his hypotheses] to see if they can be falsified." *Daubert*, 509 U.S. at 593. That is precisely what *Daubert* and our adversarial

---

plaintiffs believed that additional, unproduced data in United's possession was required to support their class certification arguments, they should have propounded an appropriate request for production and brought an appropriate motion for the Court's consideration prior to the close of discovery. Second, whether or not the data exists is not at issue. The issue is Dr. Malone's speculative opinion that ██████████████ ████████████████. *See* Mot. at 11. Because he has never reviewed the data (whether it exists or not), his opinion is based on pure speculation.

system in general contemplate. Dr. Malone cannot be allowed to base his opinions on "unsupported speculation." *Id.* at 590.

Finally, Plaintiffs futilely attempt to address the fact that Dr. Malone's speculative theory is inconsistent with Plaintiffs' allegations, because none of the data sources he speculates could be searched for refund requests reflect any request made by Buffer or Hansen. *See* Mem. at 14; Opp. at 12-13. Once again, Plaintiffs blame this undisputed fact (*see* Reply in Support of Mot. for Summary Judgment, Dkt. 197 at 3) on purported deficiencies in United's recordkeeping. Opp. at 12-13. But Plaintiffs' own allegations confirm this is not a problem with United's data: neither Plaintiff alleges they made a refund request via email or a web ████████████████████ ████████████████████████████ There is no data issue here—the data shows exactly what Plaintiffs allege it would show.

Moreover, the cases Plaintiffs cite are irrelevant because in each of the cited cases, the expert *actually conducted testing and employed a methodology*, but was somewhat limited by the data at issue. Here, Malone has no methodology, *has not even reviewed the data at issue*, and the Plaintiffs own allegations confirm that the data, if searched by Dr. Malone, would not reflect refund requests from either of them. Thus, Plaintiffs' cited authority actually supports United. For example, *Q Sales & Leasing, LLC. v. Quilt Protection, Inc.* was a lost-profit case where the expert conducted extensive analysis of the defendant's financial statements, and determined it was impossible to distinguish between infringing and non-infringing revenues. No. 01 C 1993, 2004 WL 2420640, at *2 (N.D. Ill. Oct. 26, 2004). Notably, the court reserved ruling on whether to exclude the expert testimony until the Plaintiff explained its efforts to obtain the data it supposedly needed. *Id.* The Eighth Circuit's decision in *In re Zurn Pex Plumbing Products Liability Litigation* is wholly inapplicable because there, "[b]oth sides agree[d]" that the experts "used generally

recognized and reliable methodologies," and simply disagreed over the scope of the *Daubert* analysis to be conducted at the class certification stage. 644 F.3d 604, 611 (2011). Notably, the court distinguished applicable *Seventh Circuit* authority on the subject, and ultimately concluded that the expert's methodology was reliable for purposes of supporting class certification. *Id.* at 611-12. Lastly, Plaintiffs cite dicta from a footnote in an out-of-circuit trial court opinion. *See Smith v. Gen. Elec. Co.*, No. CIV.A.91-12912-RGS, 2004 WL 870832, at *1 n.2 (D. Mass. Apr. 23, 2004). But again, in that case, the expert had *actually performed calculations* from the data produced, not speculated about what unproduced data might show, and in any event, the defendants had "accepted" the expert's calculations. *Id.*

In sum, Dr. Malone's opinion regarding the identification of refund-eligible passengers should be stricken as improper rebuttal. And in any event, the opinion should be excluded because it is not based upon any methodology; it is instead based solely upon speculation about what unproduced data might show.

## **CONCLUSION**

For the foregoing reasons and the additional reasons set forth in United's Memorandum, Dr. Malone's proposed opinions are inadmissible under Rule 702 and *Daubert* and should be excluded.

Dated: December 1, 2023          /s/ Sondra A. Hemeryck

Patricia Brown Holmes
Sondra A. Hemeryck
Eli J. Litoff
Brendan J. Gerdes
RILEY SAFER HOLMES & CANCILA LLP
70 W. Madison Street, Suite 2900
Chicago, IL 60602
Tel.     312-471-8700
Fax     312-471-8701

pholmes@rshc-law.com
shemeryck@rshc-law.com
elitoff@rshc-law.com
bgerdes@rshc-law.com

*Attorneys for Defendant United Airlines, Inc.*