UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARK HANSEN and JASON BUFFER, | |
| Plaintiffs, | No. 20 CV 2142 |
| v. | Judge Thomas M. Durkin |
| UNITED AIRLINES, INC., | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Mark Hansen and Jason Buffer filed this putative nationwide class action alleging breach of contract by defendant United Airlines, Inc. ("United"). Plaintiffs now move for class certification. R. 171. For the reasons stated below, that motion is denied.

**Background**

This case arises out of United's many flight cancellations during the COVID-19 pandemic. Plaintiffs allege that United declined to refund their travel fares and contend that this breached United's Contract of Carriage ("COC").

***United's Contract of Carriage:*** The COC identifies two categories of cancellations: "Voluntary" cancellations initiated by consumers and "Involuntary" cancellations initiated by United. R. 41-2 at 82–87. For "Voluntary" cancellations, United provides flight credit for non-refundable tickets and refunds for refundable tickets. *Id.* at 85–87. "Involuntary" cancellations fall into three categories: 1) Force Majeure Events; 2) Schedule Changes; or 3) Irregular Operations. *Id.* at 71–74. If

1

United cancels a flight due to a Force Majeure Event, the impacted passengers are entitled to flight credit but not a refund. *Id.* at 73–74. If United cancels due to Schedule Changes or Irregular Operations, the impacted passengers are entitled to a refund "upon request" if not rebooked on another flight within the contractually required timeframe. *Id.* If passengers book tickets with United for travel on one of United's partner airlines, United is responsible for all obligations to those passengers as established in the COC. *Id.* at 38.

The COC defines a "Force Majeure Event" as "[a]ny condition beyond [United's] control" including, in relevant part, "[a]ny governmental regulation, demand or requirement." *Id.* at 72. The COC defines a "Schedule Change" as an "advance change in [United's] schedule (including a change in operating carrier or itinerary) that is not a unique event such as Irregular Operations or Force Majeure Event." *Id.* at 71. Finally, the COC defines "Irregular Operations", in relevant part, as "any other delay or interruption in the scheduled operation of a carrier's flight." *Id.* at 72–73.

***Mark Hansen:*** Hansen is a United States citizen who resides in the State of Washington. R. 189 ¶ 1 On March 3, 2020, Hansen purchased four round-trip tickets with United through third-party travel website Expedia. *Id.* ¶ 2. Hansen planned to travel from Vancouver, Canada to Costa Rica with transfers in Houston on the way and in Houston and Denver on the return, departing on March 28, 2020 and returning on April 5, 2020. *Id.* ¶¶ 2–3. The purpose of Hansen's trip was a spring break vacation with his family and he planned to drive across the United States-Canada border to catch the flight. *Id.* ¶¶ 4–5.

On March 16, 2020 and in response to the COVID-19 pandemic, the Costa Rican government announced that "only Costa Rican citizens, residents, and foreign diplomats will be able to enter Costa Rica" from March 18, 2020 through April 12, 2020. R. 45 at 14, n. 6. On March 20, 2020 and in response to the COVID-19 pandemic, the Canadian government banned entry from the United States by foreign nationals for "optional or discretionary purpose[s]" including "tourism, recreation and entertainment" from March 21, 2020 through April 21, 2020. R. 176-5.

Following March 16, United cancelled the flights between Houston and Costa Rica. R. 189 ¶ 15. On March 25, 2020, United cancelled the flight from Denver to Vancouver and cancelled Hansen's tickets on the flight from Houston to Denver. *Id.* ¶ 14. United did not, at that time, cancel the flight from Houston to Denver itself. *Id.* ¶ 15. On March 26, 2020, United informed Hansen that the entire itinerary was cancelled and issued a flight credit. *Id.* ¶ 15. On March 31, United cancelled the flight from Houston to Denver. R. 176-10 ¶ 5.

***Jason Buffer:*** Buffer is a United States citizen who resided in the State of New York during the relevant time for this case. R. 41 ¶ 28. On August 22, 2019, Buffer purchased two round-trip tickets on United's website. R. 189 ¶ 18. Buffer was set to travel from New York to Athens, Greece with transfers in Zurich, Switzerland on the way and in Frankfurt, Germany on the return, departing on March 19, 2020 and returning on March 27, 2020. *Id.* The March 19 flights were operated by Swiss International Airlines and the March 27 flights were operated by Lufthansa, both partner airlines of United. *Id.*

3

On March 11, the United States government announced a ban on travel effective March 13 to the United States by persons, other than American citizens or legal permanent residents, who had been in the Schengen region of Europe (which includes Germany, Greece, and Switzerland). R. 176-14. On March 12, 2020, Swiss International Airlines notified United that it had cancelled Buffer's March 19 flights. R. 189 ¶ 25. On March 14, 2020, United informed Buffer that his itinerary had been cancelled and later issued a flight credit. *Id.* ¶¶ 26, 34.

Also of note, on March 16, 2020, the European Commission recommended a thirty-day "travel restriction on non-essential travel from third countries into the EU+ area with immediate effect at all part of the Schengen external borders." R. 176-15. On March 17, 2020, the European Union (which includes Germany and Greece) accepted that recommendation and imposed "coordinated, temporary restrictions on non-essential travel to the EU for a period of 30 days." R. 176-16. On March 18, 2020, the Greek government announced that "from March 18 through April 18, non-EU citizens may not enter Greece." R. 176-17. Finally, on March 19, 2020, the Swiss government announced ban on all non-essential travel but specified that Swiss citizens or persons "traveling directly through Switzerland with the intent of going to a different country" may cross the border. R. 176-18.

***United's Motion to Dismiss:*** On February 12, 2021, the Court granted in part and denied in part United's motion to dismiss the complaint. R. 65. The Court stated that even if COVID-19 and the related travel restrictions qualify as Force Majeure Events, the "events also must have directly and proximately caused the

4

cancellations." *Id.* at 16 (citing *Glen Hollow P'ship v. Wal-Mart Stores, Inc.*, 139 F.3d 901, 1998 WL 84144, at *3 (7th Cir. 1998)). The Court denied United's motion to dismiss with respect to Buffer's claims. *Id.* at 17 ("Ultimately, whether the cancellations [of Buffer's flights] occurred because of economic considerations, or were due to restrictions and warnings related to the pandemic, can only be answered with discovery."). Regarding Hansen claims, the Court took judicial notice of the Costa Rican border closures.[1] *Id.* Based on this judicial notice, the Court explained:

> It is simply not plausible that [the Costa Rican border closures] were not a proximate cause of at least the cancellation of Mr. Hansen's travel in and out of Costa Rica in March and April 2020. Indeed, Costa Rica was Mr. Hansen's destination, not a layover, and no reasonable air carrier would agree to transport an American citizen and resident under those circumstances, where he would not be permitted entry on arrival. Such a government-ordered closure falls comfortably within the definition of a Force Majeure Event.

*Id.* at 17 (citing R. 41-2 at 72 (COC defining "Force Majeure Event" to include "Any governmental regulation, demand or requirement.")). The Court thus found that Hansen failed to state a plausible breach of contract claim as to the flights between Costa Rica and Houston but that Hansen's claim on the remainder of his itinerary may proceed to discovery for the same reasons as Buffer's claim. *Id.* at 18.

---

[1] Courts may take "judicial notice of information on official government websites that is not subject to reasonable dispute." *Fryman v. Atlas Fin. Holdings, Inc.*, 2022 WL 1136577, at *7 (N.D. Ill. Apr. 18, 2022) (citing *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003). When briefing its motion to dismiss, United provided sufficient information for the Court to take judicial notice of the Costa Rican border closures. *See* R. 45 at 14, n. 6. When briefing its motion for summary judgment and as described above, United provided sufficient information for the Court to take judicial notice of travel restrictions issued by Canada, the United States, the European Union, Greece, and Switzerland.

***Proposed Class Definition:*** Plaintiffs move to certify two classes, a third-party booking class with Hansen as the named representative and a direct booking class with Buffer as the named representative. The classes include "[a]ll persons in the United States who purchased tickets before June 18, 2020" either from travel agencies or directly from United "for travel on [United] flights scheduled to operate to, from, or within the United States from March 2020 through December 2020 and [who] were not issued a refund upon request for monies paid in connection with an itinerary cancelled by United." R. 171 at 1. Excluded from the proposed classes are 1) individuals who initiated changes to their travel; 2) individuals who purchased their tickets with miles or electronic certificates; 3) portions of travel itineraries to or from countries that had closed their borders to U.S. residents; 4) United and its employees; and 5) the Court and its staff. *Id.* at 2.

***Pending Motions:*** There are three pending motions before the Court. First, Plaintiffs move for class certification. R. 171. Second, United moves for summary judgment as to Plaintiffs' individual claims. R. 174. Third, United moves to exclude the opinions of Plaintiffs' expert Dr. Sean Malone. R. 182. Malone is a data analyst who reviewed the ticket data and refund data provided by United during discovery. R. 183-1 ¶¶ 6, 27. Based on his review, Malone estimates the size of the class at approximately 219, 286 people. *Id.* ¶ 27. In ruling on Plaintiffs' motion for class certification, the Court considers facts cited and arguments raised by the parties in these other pending motions but only to the extent those facts and arguments bear on class certification.

**Legal Standard**

To be certified, a putative class must satisfy the four requirements of Federal Rule of Civil Procedure 23(a): numerosity, commonality, typicality, and adequacy of representation. *Messner v. Northshore Univ. HealthSystem,* 669 F.3d 802, 811 (7th Cir. 2012). The class must also satisfy one of the three alternatives set forth in Rule 23(b). *Id.* Here, Plaintiffs move to certify under Rule 23(b)(2) and 23(b)(3). Rule 23(b)(2) requires that final injunctive relief be appropriate for the class a whole. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Rule 23(b)(3) requires that: 1) questions of law or fact common to class members predominate over questions affecting only individual members; and 2) a class action is superior to other available methods to adjudicate the controversy. *Messner*, 669 F.3d at 811.

Plaintiffs bear the burden to prove each Rule 23 requirement "by a preponderance of the evidence." *Id.* A Rule 23 analysis frequently entails "overlap with the merits of the plaintiff's underlying claim" because class determination "generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Comcast Corp. v. Behrend,* 569 U.S. 27, 33–34 (2013) (internal citations omitted). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds,* 568 U.S. 455, 466 (2013). District courts have "broad discretion" to determine whether a proposed class satisfies Rule 23. *Howland v. First Am. Title Ins. Co.*, 672 F.3d 525, 528 (7th Cir. 2012).

## Analysis

### I. Rule 23(b)(2)

Plaintiffs seek "a single injunction that stops United from withholding refunds requested in connection with flights it cancelled in breach of [the COC]." R. 172 at 30. But Rule 23(b)(2) does "not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*, 564 U.S. at 360–61. Plaintiffs contend that *Johnson* supports their position, *see* R. 199 at 23, but *Johnson* clearly explains that "individualized awards of monetary damages" means "awards based on evidence specific to particular class members." *Johnson v. Meriter Health Servs. Emp. Ret. Plan*, 702 F.3d 364, 370 (7th Cir. 2012). Here, each class member seeks an individualized award of monetary damages accounting for their total ticket price and adjusted to exclude portions of travel itineraries to or from countries that closed their borders to U.S. residents. Such a calculation is necessarily based on evidence specific to each class member. Class certification is denied under Rule 23(b)(2).

### II. Rule 23(b)(3)

In this case, certification under Rule 23(b)(3) turns on commonality and predominance. The Court addresses these issues together because questions of "commonality and predominance overlap in ways that make them difficult to analyze separately." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015). Commonality is met when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). But "superficial common questions" are insufficient to satisfy commonality. *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012). To

8

satisfy commonality, the "claims must depend upon a common contention that is capable of class-wide resolution." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015). Determining the truth or falsity of the common contention must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. 338 at 350. Commonality is not met by simply raising common questions "but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal citations omitted). Where resolution of the claims requires "an inherently particularized inquiry into the circumstances" of each class member, commonality is not met. *Jamie S.*, 668 F.3d at 498.

Predominance is a more demanding standard than commonality. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 624 (1997). It tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623. A "common question predominates over individual claims if a failure of proof on the common question would end the case and the whole class will prevail or fail in unison." *Bell*, 800 F.3d at 378 (internal citations omitted). "Predominance is not satisfied where liability determinations are individual and fact-intensive." *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 415 (N.D. Ill. 2012) (citing *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 891 (7th Cir. 2011)).

Considering whether "questions of law or fact common to class members predominate begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011) (internal

9

citations omitted). Under Illinois law, the elements for breach of contract are: 1) the existence of a valid and enforceable contract; 2) substantial performance by the plaintiff; 3) breach of contract by the defendant; and 4) resultant damages. *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007). There is no dispute that the COC is a valid and enforceable contract, that Plaintiffs substantially performed by paying for their tickets, and that Plaintiffs were damaged to the extent United breached. The element in dispute is breach and thus, the common question of law to which Plaintiffs must demonstrate a common answer is whether United breached the COC by issuing flight credits instead of refunds. *See Erica P. John Fund*, 563 U.S. at 810 (explaining that the predominance analysis may turn on a single, key element). Critically, to establish breach of the COC, Plaintiffs must demonstrate that Force Majeure Events were not the proximate cause of the flight cancellations. This analysis requires a particularized inquiry into the circumstances of each class member's itinerary, and facts related to Hansen and Buffer's itineraries provide examples of why a particularized inquiry is necessary.

Regarding Hansen's flight from and to Canada, respectively set for March 28 and April 5, the Canadian government banned entry from the United States by foreign nationals effective March 21 through April 21.[2] As the Court articulated in its motion to dismiss opinion, the Costa Rican border closures proximately caused

---

[2] Though the class definition excludes portions of travel itineraries to or from countries that had closed their borders to U.S. residents, Plaintiffs contend that these flights were not excluded from the class because Hansen would have been allowed to return to Canada. *See* R. 199 at 12 n. 6; *see also* R. 188 at 20–21.

United to cancel Hansen's travel to Costa Rica because "no reasonable air carrier would agree to transport an American citizen . . . where he would not be permitted entry on arrival." R. 65 at 17. At the surface level, the same logic appears to apply for Hansen's return flight to Canada. Plaintiffs argue, however, that Hansen would have been permitted to enter Canada because Hansen was passing through Canada to return to the United States, not vacationing there, and thus Hansen's trip was permitted as "essential travel." R. 188 at 20–21. To support this assertion, Plaintiffs cite a travel restriction from the United States Department of Homeland Security effective March 20 through April 20, which allowed "essential travel" across the United States-Canada border and defined "essential travel" to include "U.S. citizens . . . returning to the United States." R. 176-7. Plaintiffs' argument demonstrates, by way of example, that a particularized analysis of the language and exceptions in the travel restrictions for both the origin and destination countries may be necessary to determine whether a Force Majeure Event proximately caused the cancellation.

Regarding Hansen's connection flight from Houston to Denver set for April 5, it would have been nonsensical for United to maintain Hansen's tickets on a connection flight from Houston to Denver when all other flights in the itinerary had already been cancelled. Here, a particularized inquiry would be necessary to consider the itinerary as a whole and evaluate 1) whether the Costa Rican and Canadian border closures proximately caused United to cancel the flights to Costa Rica and Canada and 2) whether, in turn, the border closures proximately caused United to cancel Hansen's tickets on the connection flight. Also, for the connection flight, United

11

cancelled Hansen's tickets on March 25, cancelled Hansen's itinerary on March 26, and cancelled the flight itself on March 31. Here, a particularized inquiry would be necessary to consider the timeline of the cancellations to determine whether the March 25 ticket cancellation was proximately caused by border closures even if the March 31 flight cancellation was not.

Regarding Buffer's March 19 itinerary from New York to Zurich to Athens, Swiss International Airlines cancelled these flights on March 12, the day after the United States issued a travel ban to the Schengen region of Europe. Here, a particularized inquiry would be necessary to determine whether Swiss International Airlines cancelled these flights as a proximate cause of the United States travel ban. Additionally, United cancelled the itinerary on March 14, before the European Union, Greece, and Switzerland announced border closures, respectively, on March 17, 18 and 19.[3] Here, a particularized inquiry would be necessary to consider the timeline of the cancellations as compared with the border closures. Whether United cancelled flights before or after the border closures impacts the proximate cause analysis.

Plaintiffs contend that they can use "common evidence to show that United cancelled flights to save on operating costs, not because of Force Majeure Events." R. 199 at 17; *see also* R. 172 at 11–13. Plaintiffs identify, for example, a draft press release where United states: "We continue to adjust our schedule to reduce costs and

---

[3] Again, though the class excludes portions of travel itineraries to or from countries that had closed their borders to U.S. residents, Plaintiffs contend that these flights were not excluded from the class because United cancelled the flights prior to the border closures. *See* R. 199 at 12–13; *see also* R. 188 at 22–23.

12

address the significant decrease in demand resulting from the COVID-19 crisis." R. 173-6. And an internal United email stating that "[t]ravel demand is essentially zero" and that in response, United "slashed [its] schedule by 90%." R. 173-7. Indeed, it may be true that United cancelled a large percentage of flights to save on operating costs. But as shown above regarding Hansen and Buffer's itineraries, it is impossible to generalize across all flights. A particularized review of the circumstances for each flight is required to determine whether a Force Majeure Event proximately caused the cancellations.

Plaintiffs allege five common questions as to both classes: 1) whether United cancelled a flight on which the class member was a ticketed passenger for reasons other than a Force Majeure Event; 2) whether the COC obligates United to provide class members with refunds for flights that United cancelled; 3) whether United had in place a policy of denying refunds to class members for flights United cancelled; 4) whether United breached the COC; and 5) whether class members are entitled to damages. R. 172 at 21. Questions 1, 2, 4, and 5 all require an answer to whether a Force Majeure Event proximately caused the cancellations. If a Force Majeure Event proximately caused the cancellations, the COC would not obligate United to provide a refund, United would not be in breach, and the class members would not be entitled to damages. These questions thus fail to satisfy commonality because they require a particularized inquiry into circumstances of each class member. Question 3 is superficial common question. *See Jamie S.*, 668 F.3d at 497. As stated above, a question only satisfies commonality when "determination of its truth or falsity will

13

resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. 338 at 350. Commonality is not met by showing that all class members suffered a violation of the same policy. *McFields v. Dart*, 982 F.3d 511, 515–17 (7th Cir. 2020) (The "mere existence of a policy" left the court "far from resolving the litigation on a classwide basis."). Here, the mere existence of a United policy has no bearing on the resolution of the class member's claims. The claims do not depend on whether United had a *policy* of denying refunds but on whether United was *obligated* to provide refunds. Question 3 thus fails to satisfy commonality.

This case is analogous to *Pumputiena v. Deutsche Lufthansa, AG*, 2017 WL 66823 (N.D. Ill. Jan. 6, 2017). In *Pumputiena*, the plaintiff sought to certify a class of passengers on United flights that had been delayed under certain conditions and United's liability depended on whether United had complied with the Montreal Convention by taking "all measures that could reasonably be required to avoid the damage." *Id.* at *10. Though the provisions and requirements of the Montreal Convention applied to all class members, the court still denied class certification finding it "impossible to imagine that the reasonableness of an airline's efforts could be the same for the hundreds or thousands of delayed flights that occur in any given year." *Id.* Similarly, in this case, though the provisions and requirements of the COC apply to all class members, it is impossible to imagine that the hundreds or thousands of cancelled flights during the COVID-19 pandemic were all cancelled for the same reason.

In conclusion, determining United's liability to the class members is not subject to a common answer and requires individualized factual inquiries as to each class member's itinerary, which could include over 200,000 such inquiries. Plaintiffs failed to establish commonality and predominance. *See Jamie S.*, 668 F.3d at 498 (Commonality is not met where resolution of the claims requires "an inherently particularized inquiry into the circumstances" of each class member.); *Boundas*, 280 F.R.D. at 415 ("Predominance is not satisfied where liability determinations are individual and fact-intensive."). Class certification is denied under Rule 23(b)(3).

## Conclusion

The Court denies Plaintiffs' motion for class certification (R. 171) for the reasons stated above. Because Dr. Malone's testimony as offered by Plaintiffs is relevant to class certification and not to Plaintiffs' individual claims, the Court denies United's motion to exclude Malone's expert opinions (R. 182) as moot. The parties shall file a joint status report by April 17, 2024 setting forth how they intend to proceed, including whether they want the Court to consider the pending motion for summary judgment.

ENTERED:

*Thomas M Durkin*
_____
Honorable Thomas M. Durkin
United States District Judge

Dated: March 27, 2024

15